**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, *et al.*,<br><br>                              Plaintiffs,<br><br>v.<br><br>MARINER FINANCE, LLC,<br><br>                              Defendant. | Case No. 2:22-cv-03253-MAK<br><br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT MARINER FINANCE, LLC'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

<table>
<tr><td>

**HUDSON COOK LLP**

Lucy E. Morris
  (admitted *pro hac vice*)
A. James Chareq
  (admitted *pro hac vice*)
Julia K. Whitelock
  (admitted *pro hac vice*)
Robert D. Tilley
  (admitted *pro hac vice*)
1909 K Street, NW, 4th Floor
Washington, DC 20006

</td><td>

**BALLARD SPAHR LLP**

Daniel JT McKenna
1735 Market Street
51st Floor
Philadelphia, PA 19103-7599

</td></tr>
</table>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ................................................................................................................... 4

    A.  Mariner and its Business. ..................................................................................... 4

    B.  Mariner's Disclosures. .......................................................................................... 5

    C.  Plaintiffs' Factual Allegations. ............................................................................. 6

LEGAL STANDARD ........................................................................................................... 8

ARGUMENT ........................................................................................................................ 9

I.  Plaintiffs' Multistate Lawsuit Violates Federal Law and Fails to Comply with the
    Federal Venue Statute. ................................................................................................... 9

II.  Plaintiffs' Overreaching and Unconstitutional CFPA Claims, Counts 1 through 6,
    Should be Dismissed for Failure to State a Claim Upon Which Relief Can Be
    Granted........................................................................................................................... 11

    A.  The CFPA's structure and the States' limited enforcement authority under the
        Act.......................................................................................................................... 11

    B.  Plaintiffs' attempted enforcement of the CFPA violates the Constitution's
        separation of powers requirement and the 10th Amendment. ........................................ 13

        1.  The Plaintiff States violate the Constitution's separation of powers
            requirement in attempting to impose their collective view of what constitutes
            an unfair, deceptive, or abusive act or practice under the CFPA on a
            nationwide basis................................................................................................... 13

        2.  Plaintiff States violate the federalism principles embodied in the 10th
            Amendment in attempting to impose their enforcement determinations on
            other States.......................................................................................................... 15

    C.  Plaintiffs have no statutory authority to enforce all of Federal consumer financial
        law or to obtain the civil penalties available only to the Bureau. ...................................... 17

        1.  Counts 5 and 6 of the Amended Complaint should be dismissed because
            Plaintiffs have no authority to enforce all of Federal consumer financial law,
            which includes enumerated laws like TILA. ............................................................. 17

        2.  The Bureau's recent unconstitutional interpretive rule on State CFPA
            enforcement authority cannot grant to States the enforcement authority denied
            to them by Congress and is entitled to no deference by the Court. ............................ 19

        3.  Plaintiff States have no authority to seek civil penalties under the CFPA. ............... 20

i

III. Even if Plaintiffs Could Enforce TILA, Counts 5 and 6 Fail to State a Claim for Relief that Can Be Granted. .......................................................................................... 22

IV. Plaintiffs' State Law Claims Should Be Dismissed. ........................................................ 23

    A. Counts 8 through 11 and 13 should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction. ................................................................................................ 23

    B. Counts 12 and 14 are duplicative of Plaintiffs' TILA claims and should be dismissed for the same reasons. ........................................................................... 24

    C. The Court should decline to exercise pendant jurisdiction to the extent it dismisses Plaintiffs' federal claims. ................................................................................... 25

CONCLUSION ........................................................................................................................ 25

## **TABLE OF AUTHORITIES**

**Cases**

*Alaska Airlines, Inc. v. Brock*, 480 U.S. 678 (1987) ........................................................ 4

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tx.*, 571 U.S. 49 (2013) .......................... 8

*Bell Atl. Corp. v. Twombley*, 550 U.S. 544 (2007) .......................................................... 9

*Benton v. Bank of Am. Corp.*, 159 F. Supp. 3d 89 (D.D.C. 2016) ................................................ 9

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773 (2017) ...................................... 24

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) ................................................ 9

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) ........................................................ 25

*Cmty. Fin. Servs. Ass'n of Am. v. CFPB*, No. 21-50826, 22 U.S. App. LEXIS 29060
    (5th Cir. Oct. 19, 2022) .............................................................. 3, 15, 20

*Coyle v. Smith*, 221 U.S. 559 (1869) ....................................................................... 16

*Fischer v. Fed. Express Corp.*, 42 F.4th 366 (3d Cir. 2022) ................................................. 24

*NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267 (1974) ...................................... 14

*Northwest Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193 (2009) ................................... 16

*Pennsylvania v. Navient Corp.*, 967 F.3d 273 (3d Cir. 2020) ............................................ 16, 18

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015) ......................................................... 20

*Printz v. United States*, 521 U.S. 898 (1997) .............................................................. 16

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976) ................................................... 8, 10

*Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001) ........................................................... 24

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405 (3d Cir. 1997) ........................ 22

*Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) ................................... 3, 11, 12, 13, 15, 19

*Shelby County, Ala. v. Holder*, 570 U.S. 529 (2013) ........................................................ 16

*Vorchheimer v. Philadelphian Owners Assoc.*, 903 F.3d 100 (3d Cir. 2018) ................................... 22

*Watson v. Emps. Liab. Assurance Corp.*, 348 U.S. 66 (1999) ................................................. 16

**Constitutional Provisions**

U.S. Const. amend. X ....................................................................................... 15

U.S. Const. art. I, §.9 .................................................................................... 3

U.S. Const. art. II ........................................................................................... 3

**Statutes**

12 U.S.C. § 5481 ............................................................................. 12, 18, 20

12 U.S.C. § 5497 ......................................................................................... 21

12 U.S.C. § 5511 ......................................................................................... 11

12 U.S.C. § 5531 ................................................................................... 13, 15

12 U.S.C. § 5536 ............................................................................. 11, 17, 18

12 U.S.C. § 5552 ......................................... 4, 9, 10, 11, 12, 15, 18, 20

12 U.S.C. § 5562 ......................................................................................... 11

12 U.S.C. § 5563 ................................................................................... 19, 20

12 U.S.C. § 5564 ........................................................................ 9, 11, 19, 20

12 U.S.C. § 5565 ................................................................................... 12, 21

15 U.S.C. § 1638 ......................................................................................... 23

15 U.S.C. § 1640 ......................................................................................... 19

15 U.S.C. § 1681 ......................................................................................... 18

15 U.S.C. §§ 1601 *et seq.* ..................................................................... 1, 17

15 U.S.C. §§ 41 *et seq.* ............................................................................. 12

28 U.S.C. § 1367 ..................................................................................... 4, 25

28 U.S.C. § 1391 ........................................................................................... 9

28 U.S.C. § 1406 ........................................................................................... 8

31 Pa. Code § 73.104-13 ............................................................................. 5

31 Pa. Code § 73.121-125 ........................................................................... 5

31 Pa. Code §§ 73.101 *et seq.* ................................................................... 1

40 Pa. Cons. Stat. § 1007.6 ........................................................................ 5

40 Pa. Cons. Stat. § 1007.7 ........................................................................ 5

D.C. Code § 31–5103 ................................................................................... 5

D.C. Code § 31–5106 ................................................................................... 5

D.C. CODE § 31–5107 ................................................................................. 5

D.C. CODE §§ 31-5101 *et seq.* ................................................................. 5

N.J. ADMIN. CODE § 11:2-3.14 ................................................................. 5

N.J. ADMIN. CODE § 11:2-3.16 ................................................................. 5

N.J. ADMIN. CODE § 11:2-3.17 ................................................................. 5

N.J. ADMIN. CODE § 11:2-3.3 ................................................................... 5

N.J. ADMIN. CODE § 11:2-3.6 ................................................................... 5

N.J. ADMIN. CODE §§ 11:2-3.1 *et. seq.* ................................................. 5

OR. REV. STAT. § 742.005 ......................................................................... 5

OR. REV. STAT. § 743.015 ......................................................................... 5

OR. REV. STAT. § 743.371 *et seq.* ......................................................... 5

OR. REV. STAT. § 743.373 ......................................................................... 5

OR. REV. STAT. § 743.377 ......................................................................... 5

Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010,
Pub. L. 111-203, 124 Stat. 1376 (2010) ...................................... 11, 12, 14

WASH. REV. CODE § 48.18.110 ................................................................. 5

WASH. REV. CODE § 48.34.010 *et seq.* .................................................. 5

WASH. REV. CODE § 48.34.040 ................................................................. 5

WASH. REV. CODE § 48.34.090 ................................................................. 5

WASH. REV. CODE § 48.34.100 ................................................................. 5

**Regulations**

12 C.F.R. § 1026.18 ................................................................................. 23

12 C.F.R. § 1026.4 ................................................................................. 1, 22

**Legislative Material**

156 CONG. REC. S3869-72 (daily ed. May 18, 2010) ................ 10, 14, 17, 20

S. REP. 111-176 ......................................................................................... 14

**Other Authorities**

CFPB Interpretive Rule, *Authority of States to Enforce the Consumer Financial Protection Act of 2010*, 12 C.F.R. Chapter X (May 19, 2022).................................................. 19

CFPB, *CFPB Bolsters Enforcement Efforts by States* (May 19, 2022) ........................................ 19

CFPB, *Director Chopra Remarks – December NAAG Meeting* (Dec. 7, 2021)........................... 19

Lemos, *State Enforcement of Federal Law*, 86 N.Y.U. L. REV. 698 (2011) ................................ 10

THE FEDERALIST NO. 39 at 245 (James Madison) ........................................................ 16

Totten, *Credit Reform and the States: The Vital Role of Attorneys General After Dodd-Frank*, 99 IOWA L. REV.115 (2013)............................................................................. 10

Widman & Cox, *State Attorneys General's Use of Concurrent Public Enforcement Authority in Federal Consumer Protection Laws*, 33 CARDOZO L. REV.53 (2011)................. 10

## PRELIMINARY STATEMENT

Defendant Mariner Finance, LLC ("Mariner" or the "Company") provides lawful financial products to typical American consumers who may have limited access to credit— individuals who need that credit to pay for their everyday needs, whether planned (*e.g.*, a home improvement) or unplanned (*e.g.*, a car repair). Traditional installment lenders like Mariner have been providing consumers with responsible, regulated access to credit for over 100 years. The Company's core product is a personal loan, averaging over $4,500, with a three-year term and an interest rate in the range of 14.99% to 35.99%, subject to state law restrictions. Am. Compl. ¶ 57; ECF No. 13. As an adjunct to loans, Mariner also offers borrowers various insurance and other products to help protect borrowers from the risk of default. These products include life insurance, disability insurance, and involuntary unemployment insurance. *See id*. Ex. A at 29. The offering of these "credit insurance" products is subject to extensive licensing and regulation under state insurance law, *see, e.g.*, 31 PA. CODE §§ 73.101 *et seq.*, and is expressly recognized in the federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq. See, e.g.*, 12 C.F.R. § 1026.4(d) (describing certain requirements for "[p]remiums for credit life, accident, health, or loss-of-income insurance"). As TILA requires, Mariner provides borrowers with written disclosures of the terms of their loans and any associated credit insurance products. *See* Am. Compl. Ex. A at 29. It is no wonder that the Federal Trade Commission ("FTC"), after a thorough investigation, closed its nationwide review of the Company with no action in September 2020.[1]

---

[1] Other state agencies, including a number of state attorneys general in the states where Mariner operates, have closed similar investigations of Mariner with no action.

For all the overheated allegations of the Amended Complaint, Plaintiffs do not seriously dispute any of this. In fact, the allegations expressly acknowledge Mariner's written disclosures, *e.g.*, *id.* ¶¶ 78, 117, and even observe that "Mariner's stated policies discourage employees from hiding the add-ons from consumers," *id.* ¶ 25. The Amended Complaint instead focuses on a narrower set of allegations—for example, the claim that, on certain occasions, written disclosures were "rushed," *e.g.*, *id.* ¶ 155, or employees did not explain the disclosure documents orally, *id.* ¶¶ 77-78. While Mariner takes serious issue with those claims, they are far more limited and individualized than Plaintiffs' trumpeting of a "nationwide scheme," *id.* ¶ 1, suggests.

Flaws in the allegations aside, Plaintiffs' suit should be dismissed because it is an extreme instance of government overreach: the attorneys general of a mere four states and the District of Columbia (collectively, the "States") claim to arrogate to themselves an essentially unrestrained power to use <u>federal</u> law to impose—on a nationwide basis—their policy objectives on businesses and consumers. Plaintiffs seek to enforce the federal Consumer Financial Protection Act of 2010 ("CFPA") as if, collectively, they are the federal agency created by the Act with the sole authority to engage in such nationwide enforcement. But that federal agency is the Consumer Financial Protection Bureau ("CFPB" or "Bureau"), not Plaintiffs acting collectively. Plaintiffs have no authority under the CFPA to: (1) bring a consolidated, multistate enforcement action; (2) seek nationwide relief for the alleged CFPA violations; (3) seek civil penalties of any kind under the CFPA, much less $1 million per day; or (4) enforce Federal consumer financial law and the provisions of TILA identified in the Amended Complaint.

If Plaintiffs are allowed to enforce the CFPA in this multistate, nationwide fashion, they will be acting as the Bureau's proxy, but without the Constitutional checks and balances required

for the Bureau itself. The Supreme Court's decision in *Seila Law LLC v. CFPB*, makes clear that Plaintiffs cannot lawfully enforce federal law as they assert in this lawsuit. 140 S. Ct. 2183 (2020). In *Seila Law*, the Supreme Court declared the Bureau's structure unconstitutional because it vested core components of the President's Article II "executive Power" (including "the power to seek daunting monetary penalties against private parties on behalf of the United States in federal court—a quintessentially executive power") in an independent Director whom the President could not remove from office at will. *Id.* at 2200, 2204 (citing U.S. CONST. ART. II). To cure this Constitutional defect, the Supreme Court severed the "for cause" removal clause from the CFPA, making the Director removable at will by the President. *Id.* at 2211.

But *Seila Law* did not address the Constitutional defect arising in this lawsuit. Just as, before *Seila Law*, the President could not remove the Bureau Director at will, the President cannot remove a State attorney general at will. And just as Congress cannot lawfully evade Article II by transferring the President's executive power to an independent federal law enforcement official, it assuredly can't do so by transferring that same unchecked executive power to sovereign state law enforcement officials. Article II thus forecloses Plaintiffs' attempt, acting as a proxy for the Bureau, to bring a federal action for nationwide enforcement of the CFPA and Federal consumer financial law.

Moreover, the Fifth Circuit recently held that the CFPA suffers from another constitutional defect: the Act provides for the CFPB to be funded directly by the Federal Reserve System, not through congressional appropriation, in violation of the Appropriations Clause. *See Cmty. Fin. Servs. Ass'n of Am. v. CFPB* ("*CFSA*"), No. 21-50826, 22 U.S. App. LEXIS 29060 (5th Cir. Oct. 19, 2022). That defect is fatal to the CFPA because Congress plainly "would not have enacted" the law without an independent CFPB insulated from the political whims of

congressional appropriation. *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987). More specifically, this defect means that the Bureau could not receive or act upon Plaintiffs' required notification of its intent to file suit under the CFPA. Plaintiffs therefore cannot rely on the CFPA to pursue their claims.

These Constitutional and statutory defects dispose of Plaintiffs' federal law claims and thus also Plaintiffs' state law claims, for which they rely on this Court's supplemental jurisdiction under 28 U.S.C. § 1367. Am. Comp. ¶ 47. Even if Plaintiffs could proceed under the CFPA, several of their federal counts and all their state counts fail for other reasons. In particular, Counts 5 and 6 fail because Plaintiffs have no authority to bring TILA claims against Mariner; the CFPA does not permit states to pursue claims under "enumerated consumer laws" like TILA. *See* 12 U.S.C. § 5552. For these reasons and others, the Amended Complaint should be dismissed.

## **BACKGROUND**

### A.    **Mariner and its Business.**

Mariner is a traditional installment lender operating in nearly 500 branch locations in 28 states. Am. Compl. ¶¶ 1, 7. Its business is focused on extending personal loans to typical American consumers, some of whom may have limited access to credit. *Id.* ¶ 12. Along with its direct loans, Mariner offers its customers the option to purchase certain additional products from third parties. *Id.* ¶ 30. These products include, among other things, insurance that pays off some or all of the customer's loan balance if the customer dies, becomes disabled, or loses his or her job. *See id.* These products help customers avoid defaulting on loans or otherwise protect themselves in the event of unpredictable and adverse events.

None of the additional products offered to Mariner customers are novel or unusual. These products are sold and financed by many companies and are heavily regulated. Indeed, the

Plaintiff States all have laws regulating the sale of credit insurance products[2] that govern, among other things, the types of policies that can be sold,[3] the rates that can be charged,[4] and the content of the required certificates.[5] Insurance commissioners or equivalent offices in each of the Plaintiff States are also tasked with receiving and reviewing insurance products before they can be marketed to consumers.[6] For example, in Pennsylvania, the Insurance Commissioner is obligated to review the form used to offer credit insurance products, as well as the premiums charged, and reject them if they are found to be "unjust, unfair, inequitable" or otherwise "contrary to any provision of the insurance laws or of any rule or regulation promulgated thereunder." 40 PA. CONS. STAT. § 1007.7(b).[7] Critically, the Amended Complaint does not allege that the products Mariner offers violate any of these regulations.

### B.    Mariner's Disclosures.

As reflected in form contracts and insurance certificates included in the Amended Complaint, Mariner itemizes the cost associated with insurance products for its customers and expressly discloses that these products are <u>optional</u>. For example, a Pennsylvania loan agreement included with the Amended Complaint lists the costs that the customer is required to pay for

---

[2] *See, e.g.*, 31 PA. CODE §§ 73.101 *et seq.*; D.C. CODE §§ 31-5101 *et seq.*; N.J. ADMIN. CODE §§ 11:2-3.1 *et. seq.*; OR. REV. STAT. § 743.371 *et seq.*; WASH. REV. CODE § 48.34.010 *et seq.*

[3] *E.g.*, 31 PA. CODE § 73.104-13; D.C. CODE § 31–5103; N.J. ADMIN. CODE § 11:2-3.3; OR. REV. STAT. § 743.373; WASH. REV. CODE § 48.34.040.

[4] *E.g.*, 31 PA. CODE § 73.121-125; N.J. ADMIN. CODE § 11:2-3.17.

[5] *E.g.*, 40 PA. CONS. STAT.  § 1007.6; D.C. CODE § 31–5106; N.J. ADMIN. CODE § 11:2-3.6; OR. REV. STAT. § 743.377; WASH. REV. CODE § 48.34.090.

[6] 40 PA. CONS. STAT.  § 1007.7(a) (requiring all policies, certificates of insurance, applications for insurance, among other things to be filed with the insurance commissioner); D.C. CODE § 31–5107(a) (similar); N.J. ADMIN. CODE § 11:2-3.14 (similar); OR. REV. STAT. § 743.015 (similar); WASH. REV. CODE § 48.34.100 (similar).

[7] The other Plaintiffs' jurisdictions have equivalent frameworks. *See* D.C. CODE § 31–5107 (granting the commissioner the power to "disapprove any such form if the premium rates charged . . . appear by reasonable assumptions to be excessive in relation to benefits paid or to be paid," among other things); N.J. ADMIN. CODE § 11:2-3.16 (similar); OR. REV. STAT. § 742.005 (similar); WASH. REV. CODE § 48.18.110 (similar).

optional life, disability, and involuntary unemployment products; requires the customer to sign, indicating that he or she accepts those costs; and provides, in bolded text, that such policies "**are not required to get credit**." Am. Compl. Ex. A at 29 (bolding in original).

| Credit life, credit disability and involuntary unemployment insurance are not required to get credit, and won't be provided unless you sign and agree to pay the additional cost. | | | |
|---|---|---|---|
| Credit Life | | You want credit life insurance. | Signature �885 |
| ☒ Single ☐ Joint Coverage | $ 126.45 | You also want joint credit life insurance. | Signature |
| Credit Disability | | You want credit disability insurance. | Signature |
| ☒ Single ☐ Joint Coverage | $ 308.56 | You also want joint credit disability insurance. | Signature |
| Involuntary Unemployment | $ 384.14 | You want involuntary unemployment insurance. | Signature �885 |

The fact that insurance products are optional and not required to obtain a loan is then re-emphasized throughout the paperwork for each insurance product. For example, the schedule for life insurance explicitly states:

> I (We) understand that the insurance applied for herein <u>is not compulsory, nor a condition precedent to any loan or credit transaction</u>. I (We) hereby state that I (we) have been given the option to purchase such credit insurance or other insurance from any insurer or agent of my (our) choice and that I (we) freely choose Life of the South Insurance Company and I (we) understand that commissions may be paid to someone or some entity who is connected to this credit transaction and who is acting as an agent for the Company.

*Id.* at 32 (emphasis added). Likewise, the application for accidental death, dismemberment, and loss of sight insurance states immediately above the signature line that the customer "acknowledge[s] and declare[s]" that he or she has "voluntarily purchased this insurance," that "said purchase has not been compulsory," and that "this insurance is offered neither as a condition nor as a part of the credit transaction." *Id.* at 46; *see also id.* at 38 (application for involuntary unemployment insurance providing, in bolded text, "**The purchase of this insurance is completely voluntary and has not been made a condition of debt**.").

### C.   Plaintiffs' Factual Allegations.

Plaintiffs' Amended Complaint includes fifteen Counts. Counts 1 through 6 are alleged by all Plaintiffs and are the federal CFPA claims upon which the Court's original jurisdiction is

premised. Am. Compl. ¶ 46. Three States—New Jersey, Pennsylvania, and Washington—also allege violations of state law. *See id.* at Counts 7 through 15. The other two States—the District of Columbia and Oregon—are Plaintiffs only for purposes of the federal claims in Counts 1 through 6. Plaintiffs allege that they have complied with the CFPA requirement that they provide a pre-filing notice to the Bureau of their intended suit. *Id.* ¶ 43.

Although only five States bring this lawsuit, it is clear from Plaintiffs' Prayer for Relief that Plaintiffs seek to enforce the CFPA nationwide. Several of the requests seek such nationwide relief implicitly. *See Id.* at 100-101 ¶¶ A-B, K, O. Others do so explicitly and refer to "all borrowers," "any portion of a loan," "any judgments," "any loans that included charges for add-on products," "all money that is derived as a result of the conduct alleged herein," or "any loans with add-ons." *Id.* at 100-101 ¶¶ C-I, L, N. Plaintiffs also seek civil penalties, under federal law, of up to $1 million per day for the violations they allege. *Id.* ¶¶ 352-53, at 101 ¶ K. That Plaintiffs seek nationwide enforcement of federal law is also repeatedly made clear throughout the factual allegations preceding the identified federal claims. Plaintiffs repeatedly allege that Mariner is "engaged in a nationwide scheme" and allege various attributes of this "nationwide scheme." *Id.* ¶¶ 1, 27, 34, 64, 66, 93-94.

According to Plaintiffs, Mariner violates the CFPA—Counts 1 through 4—by: (i) including optional products in consumer loans without the customers' knowledge or consent; and (ii) "inducing" customers to refinance their loans without advising the customers that such refinancing "is often more expensive" than making a payment or taking out a second, new loan; and/or that such refinancing is "not in their best interest" or not in their "interest." *Id.* ¶¶ 345, 258, 366, 380.

In support of their TILA-based CFPA claim in Count 5, Plaintiffs allege that Mariner violates TILA by requiring borrowers to purchase optional products as a condition of the extension of credit without including the cost of those products in the calculation of the disclosed loan Finance Charge and resulting APR. *Id*. at Count 5, ¶¶ 383-391. In support of their TILA-based CFPA claim in Count 6, Plaintiffs allege that Mariner violates TILA by failing to disclose to customers the portion of the disclosed credit insurance premium Mariner receives as a commission for the sale of the optional products the consumer elects to purchase. *Id*. at Count 6, ¶ 397. According to Plaintiffs, these TILA violations constitute CFPA violations. *Id*. ¶¶ 391, 398.

Finally, the Amended Complaint includes nine Counts under different state laws in Pennsylvania, New Jersey, and Washington. Two of the state law claims—Counts 12 and 14— allege violations of Pennsylvania law premised on the TILA violations alleged in Counts 5 and 6.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(3), the Court has authority to dismiss a complaint where venue is "wrong" or "improper." *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 158 (1976) (applying statutory venue provision and affirming dismissal for improper venue); *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tx.*, 571 U.S. 49, 55 (2013). "Whether venue is 'wrong' or improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue law." *Id.* When a case is filed in "the wrong division or district" and a party interposes a timely and sufficient objection to venue, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a), (b) (emphasis added).

The Court must grant a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts sufficient to state a claim for relief that is plausible on its face. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007)).

## ARGUMENT

**I.  Plaintiffs' Multistate Lawsuit Violates Federal Law and Fails to Comply with the Federal Venue Statute.**

Plaintiffs filed their lawsuit in this District under the general venue statute and under the CFPA provision that governs venue for <u>lawsuits filed by the Bureau</u>. Am. Compl. ¶ 48 (citing 28 U.S.C. § 1391(b), and 12 U.S.C. § 5564(f)). Section 5564 describes the litigation authority of the Bureau. And while Section 5564(f) of the CFPA authorizes suit anywhere "the defendant is located or resides or is doing business," that provision "speaks only to suits brought by the Consumer Financial Protection Bureau." *Benton v. Bank of Am. Corp.*, 159 F. Supp. 3d 89, 92 (D.D.C. 2016). For <u>CFPA lawsuits filed by States</u>, the CFPA "otherwise provides" for the only proper venue. Section 5552 of the CFPA, prescribing the enforcement powers of States, is clear:

> (1) <u>Action by State</u>. Except as provided in paragraph (2) [governing actions against national banks or Federal savings associations], <u>the attorney general</u> (or the equivalent thereof) <u>of any State may bring a civil action</u> in the name of such State <u>in any district court</u> of the United States <u>in that State</u> or in a State court that is located <u>in that State</u> and that has jurisdiction over the defendant, <u>to enforce provisions of this title</u> or regulations issued under this title, <u>or to secure remedies under provisions of this title</u> or remedies otherwise provided by other law….

12 U.S.C. § 5552(a)(1) (emphasis added).

The only Plaintiff State that complied with this requirement is Pennsylvania, but it did so using an Amended Complaint which inextricably commingles activities alleged to have occurred in <u>four other States</u> (and "nationwide") with activities alleged to have occurred in Pennsylvania. The remaining Plaintiffs—the District of Columbia, New Jersey, Oregon and Washington—

failed to comply with the CFPA's express limitation on where they may bring their lawsuits to enforce the CFPA, in a district or state court <u>within each State's borders</u>. 12 U.S.C. § 5552(a)(1).

The Court must give effect to the CFPA's specific limitation for the filing of State enforcement actions. Conflicts between specific and general federal venue rules must be resolved in favor of the narrower provision that Congress wrote to apply to the particular circumstances of the case. *Radzanower*, 426 U.S. at 158 (the "specific venue provision of the National Bank Act must prevail over the broader, more generally applicable venue provision of the Securities Exchange Act"). Indeed, ignoring the CFPA's explicit venue requirement and permitting the States to collectively pursue CFPA enforcement in a single district court would undermine the clearly expressed intent of Congress, which tailored the CFPA to prohibit exactly this sort of multistate CFPA enforcement action by States. *See* 156 CONG. REC. S3869 (daily ed. May 18, 2010) (statements of Sen. Carper) ("Can [State AGs] conduct class action lawsuits against [sic] with respect to the rules and regulations? They can't do that. Can they go across State lines?... The AGs can't do that."), https://www.congress.gov/congressional-record/volume-156/issue-75/senate-section/article/S3864-2.[8]

---

[8] *See also* Widman & Cox, *State Attorneys General's Use of Concurrent Public Enforcement Authority in Federal Consumer Protection Laws*, 33 CARDOZO L. REV. 53, 60-61 (2011) (analyzing legislative history and concluding that certain senators "were successful in restricting the Dodd-Frank authority in a manner that precludes multiple states from joining litigation in a single federal court"); Totten, *Credit Reform and the States: The Vital Role of Attorneys General After Dodd-Frank*, 99 IOWA L. REV. 115, 148-49 (2013) (Title X's grant of concurrent-enforcement powers precludes multiple attorneys general from pooling their resources as joint plaintiffs in federal court, since state attorneys general can only bring a civil action in state court or "in any district court of the United States in that State" (internal citations omitted)); Lemos, *State Enforcement of Federal Law*, 86 N.Y.U. L. REV. 698, 763 (2011) (identifying the language in Section 1042 [12 U.S.C. § 5552] as an example that "Congress can adopt measures that further reduce the risk of overenforcement by states" because it "effectively precludes states from pooling their resources in multistate actions").

Because 12 U.S.C. § 5552(a)(1) provides the exclusive venue for State CFPA enforcement actions and does not permit the Plaintiff States to bring this consolidated, multistate enforcement action against Mariner in this Court, Plaintiffs' Amended Complaint, Counts 1 through 6, must be dismissed for violating the CFPA and for improper venue. At a minimum, the District of Columbia, New Jersey, Oregon and Washington must be dismissed for improper venue.

## II.     Plaintiffs' Overreaching and Unconstitutional CFPA Claims, Counts 1 through 6, Should be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted.

### A.     The CFPA's structure and the States' limited enforcement authority under the Act.

The CFPA was enacted as Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank"), Pub. L. 111-203, 124 Stat. 1376, 1955-2113 (2010).[9] In Dodd-Frank, Congress established the Bureau as an independent agency to "implement and... enforce Federal consumer financial law." 12 U.S.C. § 5511(a). "Congress transferred the administration of 18 existing federal statutes to the CFPB, including the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, and the Truth in Lending Act." *Seila Law*, 140 S. Ct. at 2193. Congress also made it unlawful for entities "to engage in any unfair, deceptive, or abusive act or practice." 12 U.S.C. § 5536(a)(1)(B).

Among other powers, Congress gave the Bureau authority to "conduct investigations, issue subpoenas and civil investigative demands, initiate administrative adjudications, and prosecute civil actions in federal court." *Seila Law*, 140 S. Ct. at 2193 (citing 12 U.S.C. §§ 5562, 5564(a), (f)). Through these processes, the Bureau can seek civil penalties, restitution, rescission

---

[9] Section 1001 of Dodd-Frank explains that Title X of the Act "may be cited as the Consumer Financial Protection Act of 2010."

of contracts, disgorgement, and injunctive relief. 12 U.S.C. § 5565. In short, the Bureau is an agency with "vast authority," including the authority to "levy[] knee-buckling penalties against private citizens." *Seila Law*, 140 S. Ct. at 2202 n.8, 2210.

In Dodd-Frank, Congress recognized the difference in roles between the Bureau and the States, and provided States with <u>limited</u> enforcement authority. In describing the enforcement authority available to the Bureau and to States under Title X, the CFPA uses very specific terms. The term "enumerated consumer laws," for example, is defined in 12 U.S.C. § 5481(12) to mean the eighteen federal laws that transferred to the Bureau. The term "Federal consumer financial law," is defined to mean:

> [T]he provisions of this title [Title X], the enumerated consumer laws, the laws for which authorities are transferred under subtitles F and H, and any rule or order prescribed by the Bureau under this title, an enumerated consumer law, or pursuant to the authorities transferred under subtitles F and H. The term does not include the Federal Trade Commission Act [15 U.S.C. §§ 41 *et seq.*].

12 U.S.C. § 5481(14) (emphasis added).

Plaintiffs rely on 12 U.S.C. § 5552(a) for their authority to "bring this action." Am. Compl. ¶ 37. But that section authorizes States only to "enforce <u>this title</u> or regulations issued under <u>this title</u>, and to secure <u>remedies</u> under provisions of <u>this title</u> or remedies otherwise provided under other law." 12 U.S.C. § 5552(a) (emphasis added). It provides no authority to States to enforce Federal consumer financial law generally or to enforce the enumerated consumer laws such as TILA. 12 U.S.C. § 5481(12)(O). Moreover, it provides no authority to States to seek the extraordinary civil penalties available only to the Bureau. 12 U.S.C. § 5565(c).

Plaintiffs ignore the explicit limitations on their enforcement authority found in the very CFPA they claim to be enforcing. Acting collectively and unlawfully in a single district court, the States claim the enforcement authority that belongs only to the Bureau—the authority to

enforce (a) all of Federal consumer financial law (b) on a nationwide basis and (c) to seek daunting civil penalties—all while Plaintiffs are unaccountable in any way to the federal executive.

**B.      Plaintiffs' attempted enforcement of the CFPA violates the Constitution's separation of powers requirement and the 10th Amendment.**

Plaintiffs seek to enforce the CFPA nationwide and seek remedies and penalties for alleged CFPA violations occurring anywhere in the country. Am. Compl. at 100-101. But States have no authority to enforce the CFPA beyond their own boundaries.[10]

Only the Bureau may enforce the CFPA nationwide, subject to Presidential oversight. In crafting the CFPA, Congress carefully limited State enforcement authority only to lawsuits involving single State plaintiffs, brought within the single State plaintiff's borders, and then only to obtain remedies, not the civil penalties available only to the Bureau. Acting collectively, Plaintiffs have overreached the Constitutional limits of their authority.

**1.      The Plaintiff States violate the Constitution's separation of powers requirement in attempting to impose their collective view of what constitutes an unfair, deceptive, or abusive act or practice under the CFPA on a nationwide basis.**

The Supreme Court's decision in *Seila Law* makes clear that the delegation of nationwide enforcement to a collection of State attorneys general who are unaccountable to the President violates the Constitution's separation of powers. *Seila Law,* 140 S. Ct. at 2200-04.

Only the Bureau—subject to Presidential oversight—may declare under the CFPA what constitutes an "unfair" or "abusive" practice on a nationwide basis. 12 U.S.C. § 5531(c), (d). States, acting within the limited scope of their enforcement authority in section 5552(a), may enforce Title X's prohibition against unfair, deceptive, or abusive acts or practices in their own

---

[10] As noted, the FTC completed its federal nationwide investigation of the alleged practices and closed the investigation with no action.

states, but they cannot create ("declare") new law in doing so. Plaintiffs impermissibly seek to do more. They seek to step into the Bureau's shoes and establish, nationwide, what is an unfair, deceptive, or abusive act or practice in connection with state-regulated lawful lending practices. *See* Am. Compl. at 100-101 ¶¶ C-I, L, N.

For example, Plaintiffs allege that it is an abusive act or practice for a lender to fail to disclose when a loan is not in a borrower's "best interests," a vague and overreaching claim the Bureau has never asserted against a lender. *Id.* ¶¶ 14, 366. Only the Bureau Director, answerable to the President, wields the nationwide enforcement authority necessary to maintain the CFPA claims alleged in the Amended Complaint. That ability of the Bureau alone to establish, or pursue through enforcement, nationally uniform standards is an essential element of the Bureau's purpose. *See* 12 U.S.C. § 5511(a); S. REP. 111-176, at *174 ("A strong and independent Bureau with a clear mission to keep consumer protections up-to-date with the changing marketplace will reduce the incentive for State action and increase uniformity."); *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 293 (1974) ("[T]he choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency.").[11]

Plaintiffs' overreaching Amended Complaint makes clear they believe they have the Bureau's expansive authority, unchecked by the federal executive. Plaintiffs assert novel theories for what constitutes unfair, deceptive, or abusive acts or practices under the CFPA (*e.g.*, loan "packing" and "flipping") and they also assert nationwide authority to enforce an enumerated

---

[11] Dodd-Frank's legislative history makes clear that Congress intended to preserve a State attorney general's role in protecting its own citizens, but not to enforce rules across State lines. *See* 156 CONG. REC. S3869-72 (daily ed. May 18, 2010) (statements of Sen. Dodd, Carper, Corker).

consumer law, TILA. *See* Am. Compl. Counts 1-6. The Bureau has neither prescribed rules

concerning such conduct under 12 U.S.C. § 5531(b), nor has the Bureau litigated similar facts to

establish, on a nationwide basis, that these theories constitute unfair, deceptive, or abusive acts

and practices under the CFPA.

Plaintiffs acknowledge that providing a pre-filing notice to the Bureau of their intent to

sue Mariner is a prerequisite to the filing of their complaint. Am. Compl. ¶ 43. The notice

requirement allows the Bureau to intervene and participate in the action. 12 U.S.C. § 5552(b)(2).

But the Bureau is unconstitutionally funded and, therefore, could not have lawfully received

Plaintiffs' pre-suit notice, nor can the Bureau lawfully intervene and participate in this lawsuit as

a representative of the executive branch of government. *CFSA*, 2022 U.S. App. LEXIS 29060, at

*57. The Fifth Circuit's recent decision in *CFSA* makes clear that any Bureau effort to oversee a

State attorney general's enforcement of the CFPA pursuant to section 5552 would be

unconstitutional because "without its unconstitutional funding, the Bureau lack[s] any other

means" of fulfilling its responsibilities. *Id.*

In attempting to enforce the CFPA nationwide, Plaintiffs are unaccountable to the

President either directly or through the Bureau. Because their enforcement effort

unconstitutionally infringes on the separation of powers embodied in Article II, it must be

rejected. *Seila Law*, 140 S. Ct. at 2197.

### 2.    Plaintiff States violate the federalism principles embodied in the 10th Amendment in attempting to impose their enforcement determinations on other States.

Plaintiffs' effort to impose their views concerning what constitutes an unfair, deceptive,

or abusive act or practice under the CFPA on nationwide basis violates the 10th Amendment of

the Constitution by infringing on the equal sovereignty of every other State where Mariner does

business. Through the 10th Amendment, the States delegated certain powers to the Federal

government and retained all powers that were not so delegated; but the States delegated no powers to one another and retained their equal sovereignty. *Printz v. United States*, 521 U.S. 898, 919 (1997) ("Although the States surrendered many of their powers to the new Federal Government, they retained a 'residuary and inviolable sovereignty.'") (quoting THE FEDERALIST No. 39 at 245 (James Madison)).[12]

The CFPA's State territorial limitation, in 12 U.S.C. § 5552(a)(1), expressly limits on whose behalf a State may bring an enforcement action—in the State's name—and where a State may bring the enforcement action—only in a district or state court within the State's borders. *See* 12 U.S.C. § 5552(a)(1). The CFPA does not confer extraterritorial enforcement authority on any State. Rather, it allows States to vindicate their "fundamental right to protect their citizens and prevent harmful conduct from occurring in their jurisdictions." *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 286 (3d Cir. 2020) (emphasis added).

States have equal sovereignty with one another such that one State may not impose its policies, or enforcement decisions, on another State. The United States "'was and is a union of states, equal in power, dignity and authority.'" *Shelby County, Ala. v. Holder*, 570 U.S. 529, 544 (2013) (quoting *Coyle v. Smith*, 221 U.S. 559, 567 (1869)). "Not only do States retain sovereignty under the Constitution, there is also a 'fundamental principle of equal sovereignty' among the States." *Shelby County, Ala.*, 570 U.S. at 544) (quoting *Northwest Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 203 (2009)) (emphasis in original). "[A] state is without power to exercise 'extra territorial jurisdiction,' that is, to regulate and control activities wholly beyond its boundaries." *Watson v. Emps. Liab. Assurance Corp.*, 348 U.S. 66, 70 (1999).

---

[12] THE FEDERALIST No. 39 provides, in part: "Each State, in ratifying the Constitution, is considered a sovereign body, independent of all others, and only to be bound by its own voluntary act."

The only interpretation of the territorial limitation found in section 5552(a)(1) consistent with the equal respect for State sovereignty required by the Constitution should prohibit a collection of States from attempting to exercise the enforcement authority that belongs to other States, each of which may reach different conclusions or make different policy decisions concerning activities that occur within their States or that affect their residents. In fact, Congress limited State attorney general enforcement authority to prevent the very overreaching demonstrated by the Plaintiff States in this case and to preclude multistate enforcement actions. *See* 156 CONG. REC. S3869 (daily ed. May 18, 2010) (statements of Sen. Carper) ("Can the attorney general from Alabama go into Florida and try to enforce the rules across State lines? The AGs can't do that.").[13]

**C.    Plaintiffs have no statutory authority to enforce all of Federal consumer financial law or to obtain the civil penalties available only to the Bureau.**

**1.    Counts 5 and 6 of the Amended Complaint should be dismissed because Plaintiffs have no authority to enforce all of Federal consumer financial law, which includes enumerated laws like TILA.**

Plaintiffs claim for themselves the broad authority to enforce Federal consumer financial laws, specifically TILA:

> Plaintiffs also bring this action pursuant to Section 1036(a)(1)(A), 12 U.S.C. § <u>5536 (a)(1)(A), which authorizes Plaintiffs to seek</u>, and the Court to order, permanent injunctive relief, monetary relief, and other relief from Defendant's acts or practices that violate <u>other Federal consumer financial laws set forth in the CFPA, including the Truth in Lending Act</u>, 15 U.S.C. § 1601 et seq. (TILA).

Am. Compl. ¶ 38 (emphasis added). Plaintiffs are simply wrong about what section 5536(a)(1)(A) authorizes. Section 5536(a)(1)(A) grants no enforcement authority to the States, but rather defines "Prohibited Acts" as follows:

> It shall be unlawful for –
>      (1) any covered person or service provider –

---

[13] *See also* fn. 8, *supra*.

> (A) to offer or provide to a consumer any financial product or service not in conformity with <u>Federal consumer financial law</u>, or otherwise commit any act or omission in violation of a <u>Federal consumer financial law</u>; or
> (B) <u>to engage in any unfair, deceptive, or abusive act or practice</u>.

12 U.S.C. § 5536(a) (emphasis added).

State CFPA enforcement authority is found in section 5552, which provides that a State "may bring a civil action ... to enforce provisions <u>of this title</u> or regulations issued <u>under this title</u>," Title X, *see* 12 U.S.C. § 5552(a)(1). "This title" is only <u>part of</u> "Federal consumer financial law," *see* 12 U.S.C. § 5481(14), but includes the CFPB's prohibition against unfair, deceptive, or abusive acts or practices. *See Pennsylvania v. Navient Corp.*, 967 F.3d at 284.

States have no statutory authority under the CFPA to enforce all of "Federal consumer financial law," that includes "enumerated consumer laws" like TILA. 12 U.S.C. § 5481(12), (14). The CFPA's definition of "Federal consumer financial law" makes clear that "this title" does not include "Federal consumer financial law" generally or the enumerated consumer laws that predated the CFPA.

> The term "Federal consumer financial law" means <u>the provisions of this title</u>, <u>the enumerated consumer laws</u>, the laws for which authorities are transferred under subtitles F and H, and <u>any rule or order prescribed by the Bureau under this title</u>, <u>an enumerated consumer law</u>, or pursuant to the authorities transferred under subtitles F and H. The term does not include the Federal Trade Commission Act.

12 U.S.C. § 5481(14) (emphasis added).

The CFPA separately defines the term "enumerated consumer laws" by reference to eighteen pre-existing federal statutes, including TILA. 12 U.S.C. § 5481(12)(O). Some of the "enumerated consumer laws" separately provide for State enforcement. *See, e.g.,* 15 U.S.C. § 1681(s)(c)(1) (Fair Credit Reporting Act). The CFPA's Rule of Construction preserves this <u>separately provided authority</u> where it exists. 12 U.S.C. § 5552(a)(3) ("No provision of this title shall be construed as modifying, limiting, or superseding the operation of any provision of an

enumerated consumer law [*e.g.*, TILA] that relates to the authority of a State attorney general or State regulator to enforce such Federal law.").

The CFPA does not give any State the authority to enforce an enumerated consumer law the State did not already have before the CFPA. It most certainly does not give States the authority to enforce the "enumerated consumer laws" by way of the CFPA and "its daunting monetary penalties." *Seila Law*, 140 S. Ct. at 2200. Only the Bureau has the authority to enforce all "Federal consumer financial law," which includes the enumerated consumer laws. 12 U.S.C. §§ 5563(a) and 5564(a). Because Plaintiffs have no authority under the CFPA to enforce the federal TILA provisions upon which they rely,[14] Plaintiffs can state no claim for relief under Counts 5 and 6 of their Amended Complaint.

> **2.    The Bureau's recent unconstitutional interpretive rule on State CFPA enforcement authority cannot grant to States the enforcement authority denied to them by Congress and is entitled to no deference by the Court.**

The Bureau, without Constitutionally appropriated funds—and therefore in violation of the separation of powers requirements—recently announced an "interpretive rule" to bolster State enforcement efforts.[15] CFPB Interpretive Rule, *Authority of States to Enforce the Consumer Financial Protection Act of 2010*, 12 C.F.R. Chapter X (May 19, 2022).[16] For the first time, the Bureau opined that States have the authority to enforce not only the CFPA itself (*i.e.*, "this title") but all "Federal consumer financial law" including the eighteen enumerated consumer laws.

---

[14] *See* 15 U.S.C. § 1640(e) (identifying the limited areas of TILA, involving mortgage loans, where States have enforcement authority).

[15] CFPB, *CFPB Bolsters Enforcement Efforts by States* (May 19, 2022), https://www.consumerfinance.gov/about-us/newsroom/cfpb-bolsters-enforcement-efforts-by-states/; *see also* CFPB, *Director Chopra Remarks – December NAAG Meeting* (Dec. 7, 2021), https://www.consumerfinance.gov/about-us/newsroom/director-chopra-remarks-december-naag-meeting/.

[16] Available at: https://files.consumerfinance.gov/f/documents/cfpb_section_1042_interpretive-rule_2022-05.pdf.

Because the interpretive rule was the result of unconstitutional funding, it should be ignored. *CFSA*, 2022 U.S. App. LEXIS 29060, at *58 (the appropriate remedy to an action with unconstitutional funding is "a rewinding of [the Bureau's] action."). Even if the Court were to consider the interpretation, it is not persuasive and is entitled to no deference. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96-97 (2015).

The CFPA speaks for itself and clearly distinguishes between what may be enforced by the States (*i.e.*, "this title,"), 12 U.S.C. § 5552(a)(1),[17] and what may be enforced by the Bureau (*i.e.*, "Federal consumer financial law"), 12 U.S.C. § 5564(a). The CFPA's definitions make clear that "this title," and the "enumerated consumer laws" like TILA, are each <u>separate</u> elements of "Federal consumer financial law." *See* 12 U.S.C. § 5481(12), (14). Clearly, then, the term "this title" cannot include all of "Federal consumer financial law"—covered by section 5536 (a)(1)(A)—or, indeed, any of the "enumerated consumers laws." *Id.*

### 3.    Plaintiff States have no authority to seek civil penalties under the CFPA.

The Amended Complaint asserts that:

> [T]he evidence will likely show that Mariner knowingly violated a Federal consumer financial law when it engaged in the acts and practices described herein. Accordingly, the Plaintiffs seek the imposition of third tier civil penalties of up to One Million Dollars ($1,000,000) for each day during which such violation continues.

Am. Compl. ¶¶ 353, at 101 ¶ K.

States do not have civil penalty authority under the CFPA. When enforcing "this title," the States may "secure remedies under provisions of this title," 12 U.S.C. § 5552(a)(1). The

---

[17] The legislative history illustrates this limitation. *See* 156 CONG. REC. S3869 (daily ed. May 18, 2010) (statements of Sen. Carper) ("[W]hat they can do under our compromise is, the State AGs in all 50 states can look at the rules and regulations promulgated by the consumer bureau and enforce those in their own State.").

relief available in an enforcement action under the CFPA is described in section 12 U.S.C.

§ 5565. The relief described in section 5565(a)(2)(A)-(G) may be sought by a State in a court

action to enforce "this title"—but section 5565(a)(2)(H) makes clear that civil penalties are only

available "as set forth more fully in subsection (c)" [*i.e.*, § 5565(c)].

Section 5565(c) provides: "Any person that violates, through any act or omission, any

provision of Federal consumer financial law shall forfeit and pay <u>a civil penalty pursuant to this

subsection</u>." 12 U.S.C. § 5565(c)(1). The civil penalty tiers, including the $1 million per day

penalty sought by the Plaintiffs, Am. Compl. ¶ 353, at 101 ¶ K , are described in section 5565

(c)(2) (available for any violation imposed in writing "by the Bureau"). That civil penalties are

relief limited only to the Bureau is further made clear in section 5565(c)(5) :

> Notice and hearing. <u>No civil penalty may be assessed under this subsection</u>
> [5565(c)] with respect to a <u>violation of any Federal consumer financial law, unless</u>-
>> (A) <u>the Bureau gives notice</u> and an opportunity for a hearing to the person
>> accused of the violation; <u>or</u>
>> (B) <u>the appropriate court</u> has ordered such assessment and <u>entered a judgment
>> in favor the Bureau</u>.

12 U.S.C. § 5565(c)(5) (emphasis added). Neither of the above two preconditions to the award of

a civil penalty under the CFPA can be met in this State action. *See also* 12 U.S.C. § 5497(d)(1),

(2) (establishing the Civil Penalty Fund for penalties obtained by the "Bureau" and which shall

be available to the "Bureau" for payment to victims of activities for which civil penalties have

been imposed under the Federal consumer financial laws.). Even the Bureau's new interpretive

rule, discussed above, does not assert that the States have civil penalty authority under the CFPA,

because they plainly do not.

Because Counts 1 through 6 of Plaintiffs' Amended Complaint impermissibly overreach

the States' limited enforcement authority under the CFPA in an attempt to enforce the CFPA and

Federal consumer financial law nationwide, and to obtain the extraordinary penalties available

only to the Bureau, Counts 1 through 6 should be dismissed as unconstitutional and for failure to state a claim upon which relief may be granted.

**III.     Even if Plaintiffs Could Enforce TILA, Counts 5 and 6 Fail to State a Claim for Relief that Can Be Granted.**

Count 5 should be dismissed also because Plaintiffs' own allegations and exhibits contradict their claim of a TILA violation. Plaintiffs assert that Mariner fails to make accurate disclosures regarding finance charges and annual percentage rates (APRs) for its loan products whenever additional products are purchased. Am. Compl. ¶ 390. They claim that "Mariner requires the consumer to pay for [additional products] as a condition of or an incident to the extension of credit," *id.* ¶ 387, and that the cost of the additional products must accordingly be included in the "finance charge" disclosure under Regulation Z. But Plaintiffs' own allegations and exhibits show that these insurance products are <u>not</u> "an incident to or a condition of the extension of credit" and therefore that such costs do not qualify as "finance charges" under Regulation Z and that APR is not understated. *See* 12 C.F.R. § 1026.4(a).

Mariner's loan paperwork, *see* Am. Compl. Ex. A and *supra* at pp. 5-6, repeatedly discloses the optional nature of the additional products in conspicuous, often bolded text, contrary to Plaintiffs' assertion that purchasing such products is a condition of the extension of credit. *See Vorchheimer v. Philadelphian Owners Assoc.*, 903 F.3d 100, 111–12 (3d Cir. 2018) (exhibits attached to a complaint may be considered by the court and treated as controlling). Further, Plaintiffs' allegations concede that many borrowers do not purchase any additional products at all. *See* Am. Compl. ¶ 69 (50% of New Jersey customers), ¶ 67 (25% of Pennsylvania customers). Together with the loan documents themselves, these allegations demonstrate that the additional products are not mandatory. *See Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (rejecting factual assertions that were

contradicted by other allegations in the same complaint). Because these products are optional, the relevant costs are not part of the "finance charge" under Regulation Z, and Count 5 fails to state a claim under TILA.

Count 6 should also be dismissed under Rule 12(b)(6). Plaintiffs allege that Mariner violates TILA by failing to disclose that it receives commissions on sales of additional products. Am. Compl. ¶ 397. They claim that not disclosing commissions violates 15 U.S.C. § 1638 (a)(2)(B)(iii),[18] which obligates lenders upon request to provide customers with "a written itemization of the amount financed" listing "each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person[.]" Am. Compl. ¶ 395. But again, the agreements attached to the Amended Complaint show clearly that Mariner made these disclosures. The loan agreement includes an asterisk next to each additional product and explicitly notes: "We or our affiliates may receive benefits from your purchase of these items." *Id.* Ex. A at 29. This type of disclosure is explicitly endorsed by the CFPB's Official Commentary on Regulation Z.[19] Count 6 therefore fails to state a claim and must be dismissed.

**IV.     Plaintiffs' State Law Claims Should Be Dismissed.**

**A.     Counts 8 through 11 and 13 should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.**

---

[18] For clarity, Plaintiffs allege that Mariner violated 15 U.S.C. § 1638 (a)(2)(A)(iii), as opposed to § 1638 (a)(2)(B)(iii), but Mariner believes this to be a typographical error because § 1638 (a)(2)(A)(iii) does not contain the statutory text quoted in the complaint, but § 1638 (a)(2)(B)(iii) does include such language.

[19] *See* 12 C.F.R. § 1026.18(c)(1)(iii), cmt. 2, which states: "Given the flexibility permitted in meeting the requirements of the amount financed itemization (see the commentary to § 1026.18(c)), the creditor in such cases may reflect that the creditor has retained a portion of the amount paid to others. For example, the creditor could add to the category "amount paid to others" language such as "(we may be retaining a portion of this amount)."

Counts 8 through 11 and Count 13, which allege violations of New Jersey and Washington law, should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), because this Court lacks personal jurisdiction over Mariner with respect to those claims. This Court does not have general personal jurisdiction over Mariner.[20] Therefore, Plaintiffs must show that this Court has specific personal jurisdiction, which is a claim-specific determination. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) ("[A] conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim . . . does not necessarily mean that it has personal jurisdiction over that same defendant as to [the plaintiff's] other claims.").

Here, Washington, Oregon, and New Jersey are asserting claims under the laws of their respective States against Mariner, a nonresident defendant, for conduct or harms that are alleged to have occurred outside of Pennsylvania. This is improper: as the Supreme Court explained in *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773 (2017), there is no specific jurisdiction where a nonresident plaintiff asserts state law claims against a nonresident defendant in a forum that has no connection to the state laws at issue. *See Fischer v. Fed. Express Corp.*, 42 F.4th 366, 380 (3d Cir. 2022) ("Here, because the out-of-state plaintiffs' claims do not arise out of or relate to [defendant's] minimum contacts with Pennsylvania, the District Court did not have personal jurisdiction[.]").

**B.     Counts 12 and 14 are duplicative of Plaintiffs' TILA claims and should be dismissed for the same reasons.**

Counts 12 and 14, which allege violations of Pennsylvania law, should be dismissed for the same reasons that the Plaintiffs' TILA claims should be dismissed. In Count 12,

---

[20] *See* Am. Compl. ¶ 55 (alleging that Mariner is a Maryland limited liability corporation with a principal place of business in Maryland).

Pennsylvania restates the allegation from Count 5 that Mariner's Finance Charge and APR disclosures are inaccurate under TILA because Mariner requires the purchase of optional products as a condition of the extension of credit but does not include those products' costs in the disclosed Finance Charge or APR. Am. Compl. ¶¶ 437-438, 443. In Count 14, Pennsylvania similarly alleges that because the APR is understated for the reasons alleged in Count 5, Mariner's loan interest rates violate Pennsylvania's usury limits and constitute a violation of state law prohibiting "unfair methods of competition" and unfair acts or practices. *Id.* ¶¶ 456-459.

Because Plaintiffs' TILA claims in Counts 5 and 6 fail to state a claim upon which relief can be granted, Pennsylvania's state law claims—Counts 12 and 14—alleging violations of state law based on those same alleged TILA violations also fail and should be dismissed.

### C. The Court should decline to exercise pendant jurisdiction to the extent it dismisses Plaintiffs' federal claims.

Finally, the Court should dismiss the entirety of the Amended Complaint to the extent it dismisses Plaintiffs' CFPA claims. Plaintiffs rely on supplemental jurisdiction under 28 U.S.C. § 1367 for Counts 7 through 15, the state law claims. *See* Am. Compl. ¶ 47. If the Court dismisses all claims over which it has original jurisdiction, however, the Court should, under section 1367(c)(3), decline to exercise its supplemental jurisdiction over state law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case with prejudice.").

## <u>CONCLUSION</u>

For these reasons, the Court should dismiss the Amended Complaint with prejudice.

October 25, 2022                    Respectfully submitted,


**HUDSON COOK, LLP**

BY: _____

    Lucy E. Morris (admitted *pro hac vice*)
    A. James Chareq (admitted *pro hac vice*)
    Julia K. Whitelock (admitted *pro hac vice*)
    Robert D. Tilley (admitted *pro hac vice*)
    1909 K Street, NW, 4th Floor
    Washington, DC 20006
    202.327.9710 / 202.327.9711
    lmorris@hudco.com
    jchareq@hudco.com
    jwhitelock@hudco.com
    rtilley@hudco.com


**BALLARD SPAHR LLP**

BY: _____

    Daniel JT McKenna
    1735 Market Street
    51st Floor
    Philadelphia, PA 19103-7599
    215.864.8321
    mckennad@ballardspahr.com


Attorneys for Defendant Mariner Finance, LLC