IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, BY ATTORNEY GENERAL MICHELLE A. HENRY; DISTRICT OF COLUMBIA, THROUGH THE OFFICE OF THE ATTORNEY GENERAL; PEOPLE OF THE STATE OF ILLINOIS BY KWAME RAOUL; STATE OF INDIANA, BY ATTORNEY GENERAL TODD ROKITA; MATTHEW J. PLATKIN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY; THE PEOPLE OF THE STATE OF NEW YORK, BY ATTORNEY GENERAL LETITIA JAMES; STATE OF NORTH CAROLINA, EX REL. JOSHUA H. STEIN, ATTORNEY GENERAL; STATE OF OREGON, EX REL. ELLEN F. ROSENBLUM, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL; STATE OF TENNESSEE, EX REL. JONATHAN SKRMETTI, ATTORNEY GENERAL AND REPORTER; STATE OF WASHINGTON; AND STATE OF WISCONSIN,<br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>MARINER FINANCE, LLC,<br>　　　　　　Defendant. | CIVIL ACTION<br><br>NO. 22-3253 |

## <u>MEMORANDUM</u>

**HODGE, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　**NOVEMBER 20, 2024**

Plaintiffs Commonwealth of Pennsylvania, District of Columbia, and the States of Illinois, Indiana, New Jersey, New York, North Carolina, Oregon, Tennessee, Washington, and Wisconsin (collectively, "States" or "Plaintiffs") bring this case against Mariner Finance, LLC ("Mariner" or "Defendant"), alleging numerous violations of the Consumer Financial Protection Act of 2010

("Dodd-Frank Act" or "CFPA"), as well as under several states' respective consumer protection law. (ECF No. 86 ¶¶ 37-39). Plaintiffs allege that Mariner engages in deceptive and predatory lending practices. (*Id.* ¶ 1). Before the Court now is Plaintiffs' Motion to Strike Defendant's Affirmative Defenses.

### I. PROCEDURAL HISTORY[1]

The Court will briefly summarize the procedural history of the case, which is relevant to the present Motion.[2] Plaintiffs commenced this lawsuit on August 16, 2022, following a multi-state investigation of Defendant, seeking injunctive and other relief. (ECF Nos. 1, 13, 86). Prior to filing this lawsuit, Plaintiffs provided notice to the Consumer Financial Protection Bureau ("CFPB") of its intent to file this lawsuit, pursuant to the Consumer Financial Protection Act ("CFPA"). (*See* ECF No. 86 ¶ 43). Plaintiffs filed an Amended Complaint September 6, 2022, setting forth allegations detailing Mariner's practices and policies. (ECF No. 13). On October 25, 2022, Mariner filed a Motion to Dismiss Plaintiffs' complaint arguing, *inter alia*, 1) Plaintiffs' enforcement authority is unconstitutional under the Tenth Amendment; 2) the CFPA is unenforceable because the CFPB receives unconstitutional funding; 3) statutorily, Plaintiffs cannot collectively bring a single lawsuit in this District; and 4) Plaintiffs lack authority to assert claims under the Truth in Lending Act ("TILA"). After hearing oral argument, the Court denied Defendants' Motion to Dismiss in its entirety on January 12, 2024. (ECF No. 62).

On March 22, 2024, six additional states, Illinois, Indiana, New York, North Carolina, Tennessee, and Wisconsin filed a Motion to Intervene, together with a proposed Second Amended Complaint. (ECF No. 80). On April 1, 2024, the Court granted the Motion to Intervene, and all

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.
[2] To avoid repetition, the Court incorporates by reference the summary of the allegations in the Amended Complaint set forth in our Memorandum of January 12, 2024 (ECF No. 61).

eleven Plaintiffs filed the Second Amended Complaint. (ECF Nos. 85, 86). In all respects material to the present Motion to Strike, the allegations in the Amended Complaint and the Second Amended Complaint are the same. (ECF Nos. 13, 86). On April 15, 2024, Mariner filed its Answer to the Second Amended Complaint ("SAC Answer"), in which Mariner set forth the Affirmative Defenses at issue before the Court. (ECF No. 89). Plaintiffs now move to strike Affirmative Defenses One, Two, Three, Five, Six, Seven, and Fourteen.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Rule 12(f) is the 'primary procedure' for objecting to an insufficient affirmative defense." *United States v. Geppert Bros.*, 638 F. Supp. 996, 998 (E.D. Pa. 1986) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1380 at 782). Motions to Strike are generally disfavored "because of their potential to be used as a dilatory tactic," however, "they do serve a useful purpose in eliminating insufficient defenses . . . ." *Id.* (internal citation omitted).

An affirmative defense may be stricken "when it is legally insufficient to prevent recovery under any state of facts reasonably able to be inferred from the well pleaded allegations of the answer." *Warner/Chappel Disc, Inc. v. Pilz Compact Disc, Inc.*, No. CIV. A. 99-293, 1999 WL 999332, at *3 (E.D. Pa. Oct. 26, 1999). However, "the Third Circuit has cautioned that courts 'should not grant a motion to strike a defense unless the insufficiency of the defense is "clearly apparent."'" *United States ex rel. Salomon v. Wolff*, No. CV 17-5456 (JLL), 2018 WL 3377170, at *5 (D.N.J. July 11, 2018) (quoting *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986)). "Even when facts are not in dispute, a motion to strike is not the appropriate procedure to

3

determine disputed or unclear questions of law." *U.S. ex rel. Spay v. CVS Caremark Corp.*, No. CIV.A. 09-4672, 2013 WL 1755214, at *1 (E.D. Pa. Apr. 24, 2013).

### III.   DISCUSSION

The States move to strike seven (7) of Defendant's fifteen (15) Affirmative Defenses. (ECF No. 92-1 at 6). Plaintiffs argue that the law of the case doctrine compels the Court to strike Mariner's First, Third, Seventh, and Fourteenth Affirmative Defenses because, according to the States, the Court has already rejected those defenses. (*Id.*). Plaintiffs also ask the Court to strike Mariner's Second Affirmative Defense because it is "a bare bones, conclusory allegation that does not meet even minimal pleading requirements for affirmative defenses." (*Id.*). Lastly, Plaintiffs argue that Affirmative Defenses Five and Six should be stricken because they are conclusory and are unavailable against the government. (*Id.*). Defendants contend that its Affirmative Defenses are valid and should not be stricken. (*See generally* ECF No. 99). The Court now considers each of these arguments.

#### A.   Issues Already Decided by the Court

Plaintiffs argue that this Court has already considered and decided, either explicitly or implicitly, Affirmative Defenses One, Three, Seven, and Fourteen. (ECF No. 92-1 at 8). Plaintiffs state that the law of the case doctrine, which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," governs here, and thus the Court should not reconsider issues it has already adjudicated. (*Id.*) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988)).

##### 1.   Affirmative Defenses One and Fourteen

Plaintiffs argue that the Court should strike Mariner's First and Fourteenth Affirmative Defenses because the Court has explicitly rejected those arguments. (ECF No. 92-1 at 9). Mariner's

4

Affirmative Defense One is that "Plaintiffs fail to state a claim upon which relief can be granted." (ECF No. 89 at 114). Affirmative Defense Fourteen states, "Plaintiffs' claims are barred, in whole or in part, because they are not susceptible to adjudication on a collective basis." (*Id.* at 115). The States contend that the Court rejected these defenses when it denied Mariner's Motion to Dismiss, thus they may not be relitigated. (ECF No. 92-1 at 9). The Court agrees.

Mariner does not address the States' assertion that Affirmative Defenses One and Fourteen have already been considered and rejected in Mariner's Motion to Dismiss; Mariner only states that the Affirmative Defenses "comply with Rule 12(b)'s requirement that '[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required,' and therefore should not be struck." (ECF No. 99 at 29).

In cases where the Court has already denied a motion to dismiss for failure to state a claim, Courts have stricken affirmative defenses asserting a failure to state a claim. *See U.S. ex rel. Spay v. CVS Caremark Corp.*, No. CIV.A. 09-4672, 2013 WL 1755214, at *3 (E.D. Pa. Apr. 24, 2013); *Nupro Indus. Corp. v. Lexington Ins. Co.*, No. Civ.A.08–4809, 2010 WL 2553698, at *3 (E.D.Pa. June 21, 2010); *Trustees of Local 464A United Food & Comm. Workers Union Pension Fund v. Wachovia Bank, N.A.*, No. Civ.A.09–668, 2009 WL 4138516, at *2 (D.N.J. Nov.24, 2009); *In re Modern Creative Serv., Inc. v. Dell, Inc.*, No. Civ.A.08–3591, 2008 WL 305747, at *3–4 (D.N.J. Jan.28, 2008). In denying Defendant's Motion to Dismiss, this Court already rejected Defendant's arguments that Plaintiff's complaint did not state a claim upon which relief can be granted. (ECF No. 62). The Court also already denied Mariner's claim that "Plaintiffs cannot proceed collectively in a single lawsuit in this District." (ECF No. 61 at 7, 25). Yet Mariner attempts to offer that same defense in Affirmative Defense Fourteen. (ECF No. 89 at 115). Because these arguments have

5

been previously addressed and rejected by this Court, Defendant's Affirmative Defenses One and Fourteen shall be stricken.

### 2. Affirmative Defenses Three and Seven

Plaintiffs move to strike Mariner's Affirmative Defense Three, which posits "Plaintiffs' claims are barred, in whole or in part, because Plaintiffs lack Article III or statutory standing to assert their claims," and Seven, "Plaintiffs' claims are barred, in whole or in part, by the doctrine of primary jurisdiction." (ECF No. 89 at 114; ECF No. 92-1 at 10). Plaintiffs argue that the Court implicitly rejected these Affirmative Defenses in denying Mariner's Motion to Dismiss and state that the Defenses lack merit. (ECF No. 92-1 at 10).

With respect to Mariner's standing argument in Affirmative Defense Three, Plaintiffs make the case that by denying the Motion to Dismiss, the Court "necessarily presumed that: (1) Plaintiffs had proper standing to bring those claims; and (2) the Court had jurisdiction to hear them." (*Id.*). Mariner responds that because subject matter jurisdiction is unwaivable, and Defendants could at any point during litigation raise a lack of subject matter jurisdiction defense, it is illogical that the Court would strike the Affirmative Defense. (ECF No. 99 at 21). The Court agrees. Both parties have correctly identified courts' "independent" and "continuing obligation" to ensure standing. (*Id.*). Because lack of standing can be raised at any point during litigation, the Court sees no prejudice to Plaintiffs in allowing the Affirmative Defense to stand; Plaintiff's motion to strike Affirmative Defense Three is therefore denied.

Plaintiffs also move to strike Affirmative Defense Seven in which Defendant asserts that Plaintiff's claims are barred under the doctrine of primary jurisdiction, a doctrine requiring courts to stay proceedings while parties seek in an administrative ruling in cases "that contain some issue within the special competence of an administrative agency." (ECF No. 92-1 at 11 (citing *Reiter v.*

*Cooper*, 507 U.S. 258, 268 (1993)). The States note that Mariner has not identified any administrative agency it believes to have primary jurisdiction to hear this case and point to caselaw stating that primary jurisdiction "is not a doctrine of exclusivity," and that even if some issues are within an agency's jurisdiction, it "does not foreclose a civil action" on related issues. (ECF No. 92-1 at 11 (citing *North Penn Transfer, Inc. v. Victaulic Co. of America*, 859 F. Supp. 154, 164 (E.D. Pa. 1994)). Mariner does not address Plaintiffs' arguments in support of striking Affirmative Defense Seven; Mariner only argues that it complies with the requirements of Rule 12(b). (ECF No. 99 at 29). The Court is persuaded that the States are authorized to pursue their case in this Court, thus, the Motion to Strike Affirmative Defense Seven is granted.

### B. "Bare Bones and Conclusory" Affirmative Defenses

Plaintiffs next move to strike Affirmative Defense Two, which states "Plaintiffs' claims are barred, in whole or in part, because some or all of the acts alleged against Mariner are expressly permitted by state or federal statute, regulation, or other law." Plaintiffs argue this Affirmative Defense is so bare bones and conclusory that it is "exceptionally void of legal or factual substance." (ECF No. 92-1 at 12). Plaintiffs claim that because Mariner fails to identify specific authority for its conduct, they "are left to speculate about the nature of this defense." (*Id.*). Mariner responds that Plaintiffs may explore this Affirmative Defense in the discovery process, stating, "the need for factual development through discovery is not prejudice." (ECF No. 99 at 14). Mariner further asserts that it is not required to detail the factual bases for its Affirmative Defenses; it is only required to "provide knowledge that the issue exists." (*Id.* (internal citations omitted)).

The Court agrees with Mariner that it has satisfied the Rule 8(c) pleading requirement, which is merely a notice pleading standard. *See Tyco Fire Prod. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 897 (E.D. Pa. 2011). This Court has held that the notice requirement for affirmative

7

defenses does not rise to the level required by *Twombly* and *Iqbal*, rather, "the requisite notice is provided where the affirmative defense in question alerts the adversary to the existence of the issue for trial." *Id.* at 900-01. While the Defendant's Affirmative Defense offers Plaintiffs little insight into what legal authority Mariner believes permits its challenged activity, the Court nonetheless finds that Mariner has met the notice standard. Plaintiffs are free to gather more detailed information about this Affirmative Defense and Mariner's positions more generally throughout the discovery process. Plaintiff's Motion to Strike Affirmative Defense Two is denied.

### C. Defenses Unavailable Against the Government

Lastly, Plaintiffs move to strike Mariner's Fifth and Sixth Affirmative Defenses, stating these Defenses do not meet Rule 8's notice pleading requirement, much less the heightened pleading requirements applicable to equitable defenses asserted against the Government. (ECF No. 92-1 at 13). According to the States, Mariner may not raise any of these equitable defenses in a suit against the government. (*Id.*).

Mariner's Affirmative Defense Five asserts that "Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel, unclean hands, or laches." (ECF 89 at 114). Affirmative Defense Six invokes waiver as well, stating "Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have consented to or waived any right to object to Defendants' alleged conduct." (*Id.*). The States argue that "equitable defenses may not be used to prevent the government from enforcing its laws to protect the public interest." (ECF No. 92-1 at 13 (citing *United States v. Shaner*, No. 85-1372, 1990 WL 115085, at *9 (E.D. Pa. June 25, 1990)). Plaintiffs cite to numerous cases supporting the proposition that equitable defenses including unclean hands, laches, estoppel, and waiver are rarely appropriately raised against a government entity. (*See* ECF No. 92-1 at 13-15).

Mariner disputes Plaintiffs' proposition that equitable defenses are unavailable against the government, pointing to cases in which Courts have acknowledged that such defenses may be permitted. *See, e.g.*, *U.S. ex rel. Spay v. CVS Caremark Corp.*, No. CIV.A. 09-4672, 2013 WL 1755214, at *10 (E.D. Pa. Apr. 24, 2013) (noting that "there is no such outright prohibition on the application of equitable estoppel against the government."); *United States v. Gilead Scis., Inc.*, 515 F. Supp. 3d 241, 250 (D. Del. 2021) ("Even when the government acts in its sovereign capacity, courts have suggested that equitable defenses may be permitted when authorized by a clear expression of Congress.").

Both parties acknowledge that equitable defenses are rarely available against government entities. "The general rule is that when the United States brings suit in its sovereign capacity, it is not subject to equitable defenses . . . . When the government acts in its proprietary capacity, however, equitable defenses may be asserted . . . . Even when the government acts in its sovereign capacity, courts have suggested that equitable defenses may be permitted when authorized by a clear expression of Congress . . . or when supported by proof of the traditional elements of estoppel as well as affirmative misconduct by the United States." *Gilead Scis., Inc.*, 515 F. Supp. 3d at 249–50. *Gilead* makes clear that the bar for pleading an equitable defense against the government is high. However, the standard for striking an equitable defense requires a showing that Plaintiff's defense could not succeed under any circumstances. *See United States ex rel. Salomon v. Wolff*, No. CV 17-5456 (JLL), 2018 WL 3377170, at *5 (D.N.J. July 11, 2018). Despite the high bar that Defendants must clear to actually establish these defenses at later points in litigation, at this time Plaintiffs have not shown that these defenses are unequivocally unavailable to Defendants. Thus, the Court denies Plaintiffs' Motion to Strike Affirmative Defenses Five and Six.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion is granted in part and denied in part. An appropriate Order will follow.

BY THE COURT:

/s/ Hon. Kelley B. Hodge
_____
**HODGE, KELLEY B., J.**
