# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br> MARINER FINANCE, LLC, <br> Defendant. | Case No. 2:22-cv-03253-KBH <br><br> Hon. Kelley Brisbon Hodge <br><br> **ECF Case** |

## [PROPOSED] CONSENT JUDGMENT AND ORDER BETWEEN PLAINITFF STATE OF TENNESSEE AND MARINER FINANCE, LLC RESOLVING ALL CLAIMS BROUGHT BY STATE OF TENNESSEE

WHEREAS, Plaintiff State of Tennessee, *ex rel.* Jonathan Skrmetti, Attorney General and Reporter, along with ten other State Attorneys General, filed their Second Amended Complaint on April 1, 2024, alleging that Defendant Mariner Finance, LLC ("Mariner") violated, among other laws, the Consumer Financial Protection Act of 2010;

WHEREAS, Plaintiff State of Tennessee, *ex rel.* Johnathan Skrmetti, Attorney General and Reporter ("Attorney General") and Mariner (collectively, the "Parties") have agreed to resolve their claims without the need for litigation by entering into this Consent Judgment;

WHEREAS, the Attorney General and Mariner recognize and state this Consent Judgment is entered into voluntarily and without any degree of duress or compulsion;

WHEREAS, Mariner waives any right it may have to move to set aside this Consent Judgment through any collateral attack, and further waives its right to appeal from this Consent Judgment;

AND WHEREAS, Mariner, by entering into this Consent Judgment, does not admit any allegations of wrongdoing or violations of applicable laws, regulations, or with respect to any persons identified for redress or remediation in connection with this Consent Judgment, other than

1

those facts of the Complaint deemed necessary to establish the jurisdiction of this Court with respect to claims between the Attorney General and Mariner;

NOW THEREFORE, without trial or adjudication of issues of fact or law, without this Consent Judgment constituting evidence against Mariner except as otherwise noted, and upon consent of Mariner, the Court finds that there is good and sufficient cause to enter this Consent Judgment and that it is therefore ORDERED, ADJUDGED, and DECREED that:

## I.    DEFINITIONS

**A.**    "60-Day Full Refund Period" means the 60-day period after a Consumer purchases an Optional Product after the Effective Date, during which the Consumer can cancel the Optional Product for a refund of the full premium of the product and the interest attributable to the financing of the premium.

**B.**    "APR" means the Annual Percentage Rate as defined by the Truth in Lending Act, 15 U.S.C. § 1606.

**C.**    "Attorney General" and any variation thereof means the Plaintiff, the State of Tennessee, ex rel. Jonathan Skrmetti.

**D.**    "Consumer" means any person who took out or is interested in taking out a loan with Mariner while residing in Tennessee or who otherwise provided or provides Mariner with a Tennessee address at the time they take out or express interest in a loan with Mariner.

**E.**    "Consumer Protection Law" and any variation thereof means Tenn. Code Ann. § 47-18-104, the CFPA, the TILA, and its implementing Regulation Z, 12 C.F.R. § 1026.17.

**F.**    "Covered Consumer Debt" means the loans identified by Mariner in a March 27, 2026 email to the Attorney General. The amount of a Covered Consumer Debt includes any

2

outstanding unpaid principal balance and accumulated interest as it appears on Mariner's books as of the date of forgiveness.

**G.**     "Effective Date" of settlement means 180 days after the Consent Judgment is approved by the Court.

**H.**     "Disclosure" shall refer to the disclosures referred to as Disclosures A, B, C, D, and E in Section III below, sent by Mariner to the Attorney General in a March 27, 2026 email. These Disclosures are incorporated as Mariner's obligations under this Order.

**I.**     "Mariner" and any variation thereof means the Defendant, Mariner Finance, LLC.

**J.**     "Optional Product" means any product or service that Mariner markets, sells, or offers to Consumers as an optional product supplementary to the credit provided by Mariner, including but not limited to credit insurance, Accidental Death & Dismemberment insurance, home and auto membership products, and GAP-related products.

**K.**     "Refinance" and any variation thereof means an existing Mariner installment loan is paid off with the proceeds of a new Mariner installment loan.

**L.**     "Unclaimed Optional Product" and any variation thereof means an Optional Product for which no claim has been paid.

## II.    GENERAL PROVISIONS

**A.**     This Court has jurisdiction over the subject matter hereof and the parties hereto.

**B.**     Venue is proper in this Court.

**C.**     This Consent Judgment is intended to be for the benefit of the Attorney General and Mariner and does not create any other third-party beneficiary rights or give rise to or support any right of action by any Consumer or group of Consumers or confer upon any person other than the parties hereto any rights or remedies. This document and its contents are not intended for use by

3

any third party for any purpose, including submission to any court for any purpose, unless otherwise ordered by a court of competent jurisdiction.

D.      To the extent Mariner determines that the terms herein conflict with a requirement of any applicable state or federal law, rule, regulation, guidance from an applicable state regulator, or consent order or agreed final judgment with a government agency such that Mariner cannot comply with this Consent Judgment without violating such a requirement, Mariner shall document and notify the Attorney General that it intends to comply with the requirement to the extent necessary to eliminate the conflict with this Consent Judgment.

E.      Mariner is entering this Consent Judgment solely for the purpose of settlement, and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, regulation, other matter of fact or law, or of any liability or wrongdoing. No part of this Consent Judgment, including its statements and commitments, shall constitute evidence of any liability, fault, or wrongdoing by Mariner.

F.      This Consent Judgment shall not be construed or used as a waiver or limitation of any defense or claim otherwise available to Mariner in any other action, or of its right to defend against, or make any arguments in, any private individual action, class claims or suits, or any other governmental or regulatory action relating to the subject matter or terms of this Consent Judgment, except as specifically provided in Section VIII of this Consent Judgment.

G.      This Consent Judgment shall not be construed or used as a waiver or limitation of any claim or defense that a Consumer may have against Mariner in any other action, except that Mariner may argue, to the extent permitted by law, that amounts otherwise recoverable in such actions might be set off by amounts remitted to such Consumer in connection with this Consent Judgment.

4

**H.**     This Consent Judgment, except as provided for and incorporated in sections I.F and I.H, embodies the entire agreement and understanding between and among the Parties relating to the subject matter hereof and supersedes (1) all prior agreements and understandings relating to such subject matter, whether written or oral, and (2) all purportedly contemporaneous oral agreements and understandings relating to such subject matter.

**I.**     Mariner shall not participate, directly or indirectly, in any activity or form a separate entity or corporation either for the purpose of engaging in acts or practices in whole or in part that are prohibited in this Consent Judgment or for the purpose of circumventing any part of this Consent Judgment.

**J.**     Nothing contained in this Consent Judgment, and no act required to be performed pursuant to this Consent Judgment, is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection, or common interest/joint defense privilege, and each Party agrees that it shall not make or cause to be made in any forum any assertion to the contrary.

**K.**     In the event that any one or more of the provisions contained in this Consent Judgment shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Consent Judgment, and this Consent Judgment shall be construed and enforced as if such illegal, invalid or unenforceable clause, section or other provision had not been contained herein.

**L.**     Any failure by the Attorney General to insist upon Mariner's strict performance of any of the provisions of this Consent Judgment shall not be deemed a waiver of any of the provisions of this Consent Judgment.

**M.**    Entering into this Consent Judgment does not constitute approval by the Attorney General of Mariner's business acts and practices, and Mariner shall not represent this Consent Judgment as such approval.

**N.**    Unless otherwise prohibited by law, this Consent Judgment may be executed at different times and locations in counterparts, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

**O.**    Nothing in this Consent Judgment waives or affects any claims of sovereign immunity by the Attorney General.

**P.**    Mariner's obligations under this Consent Judgment shall cease five years after the Effective Date, except that: Mariner's obligations under Section VI.A.1 shall cease when Mariner makes the payment required by Section VI.A.1; Mariner's obligations under Section VI.A.2 and VI.B shall cease when Mariner submits the signed declaration required by Section VI.B.6; Mariner's obligations under Section VIII.A shall cease when Mariner makes the payment required by Section VIII.A; and Mariner's obligations under Section VIII.B shall cease the earlier of (i) when Mariner makes the payment(s) required by Section VIII.B or (ii) two years after the Effective Date if the Attorney General does not make a request for costs described in Section VIII.B within two years of the Effective Date.

**Q.**    The terms of this Consent Judgment shall apply only with respect to Mariner's operations in Tennessee.

**R.**    Unless otherwise indicated, Mariner's obligations under this Consent Judgment shall not begin until the Effective Date.

S.    Any notice or other communication required or permitted under this Consent Judgment shall be in writing and delivered to the following persons or any person subsequently designated by the parties:

Tennessee:

Deputy of the Consumer Protection Division
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202

Mariner:

Joshua Johnson
CEO
Mariner Finance, LLC
8110 Corporate Dr
Nottingham, MD 21236

With a copy to:

John Morton
Chief Legal Officer
Mariner Finance, LLC
8110 Corporate Dr
Nottingham, MD 21236

## III.    CONDUCT PROVISIONS RELATED TO OPTIONAL PRODUCTS

### A.    Limits on Discussing and Underwriting for Optional Products

1.    Unless and until a Consumer has been provided Disclosure A, as provided in Section III(B) below:

a.    Mariner shall not initiate an effort to sell Optional Products to the Consumer.

b.    For the avoidance of doubt, prior to providing Disclosure A:

i.    Mariner *may* discuss different loan amounts and monthly payments with the Consumer.

7

ii.       Mariner *may* respond to a Consumer inquiry about Optional Products to inform the Consumer that Optional Products will be discussed after the loan approval is finalized.

iii.      However, Mariner shall not disclose a loan amount or other loan details that factor in the sale or potential sale of Optional Products when discussing loan terms with the Consumer.

2.      Unless and until a Consumer who is Refinancing a loan the Consumer obtained from Mariner has been provided Disclosure B, as provided in Section III(B) below:

a.      Mariner shall not initiate an effort to sell Optional Products to the Consumer.

b.      For the avoidance of doubt, prior to providing Disclosure B:

i.      Mariner *may* discuss different loan amounts and monthly payments with the Consumer.

ii.      Mariner *may* respond to a Consumer inquiry about Optional Products to inform the Consumer that Optional Products will be discussed after the loan approval is finalized.

iii.      However, Mariner shall not disclose a loan amount or other loan details that factor in the sale or potential sale of Optional Products when discussing loan terms with the Consumer.

**B.    Approval Discussion (Disclosures A and B)**

1.      After the necessary Consumer information has been verified and Mariner has determined what loan can be offered to the Consumer, Mariner shall provide the

8

Consumer with the Loan Approval Disclosure (electronically or, if the Consumer is in person and requests a hard copy, in hard copy), which is a written disclosure of the terms of the loan <u>without</u> any Optional Products (the "Approved Loan") using the model form agreed to in Disclosure A.

2. Mariner shall give the Consumer time to review Disclosure A.

3. After the Consumer has been provided with Disclosure A:

    a. Mariner shall orally disclose the following key terms listed on Disclosure A:

        i. The loan amount;

        ii. The loan term;

        iii. The monthly payment for the loan; and

        iv. The APR.

    b. Mariner may renegotiate the above key terms with Consumers.

4. After orally disclosing the key loan terms, Mariner shall state that the Consumer is approved for these loan terms and may accept these loan terms.

5. *Only after* all the steps above are complete, Mariner may ask the Consumer to acknowledge receipt of the Loan Approval Disclosure by signing Disclosure A (in writing or electronically). The Consumer must acknowledge receipt (in writing or electronically) of Disclosure A before Mariner can proceed with the transaction (i.e., proceed with the discussion about the Optional Products as described in Section III(C)).

6. If the new loan is a Refinance, Mariner shall provide the Consumer with the Refinancing Disclosure (electronically or, if the Consumer is in person and requests a

9

hard copy, in hard copy), which is a written disclosure describing the costs and benefits of Refinancing, using the model form agreed to in Disclosure B.

a. Mariner shall give the Consumer time to review Disclosure B before asking the Consumer to acknowledge receipt of Disclosure B by signing it (in writing or electronically).

b. If the new loan is a Refinance, the Consumer shall acknowledge receipt of the Refinancing Disclosure by signing Disclosure B (in writing or electronically) before proceeding with the transaction (i.e., proceed with the discussion about the Optional Products as described in Section III(C)).

**C.** **Optional Product Choices Disclosure (Disclosure C)**

1. After completing all steps required in Section III(B), Mariner shall provide the Consumer with the Optional Product Choices Disclosure (electronically or, if the Consumer is in person and requests a hard copy, in hard copy) using the model form agreed to in Disclosure C, as modified to reflect the Optional Products available under Tennessee law.

2. Mariner shall disclose that additional information about the Optional Products can be found via hyperlinks viewable either on Mariner devices (i.e., the loan closing table) or on the Consumer's own device.

3. Upon request, Mariner shall make available to the Consumer blank versions of the certificates for any Optional Product if the Consumer would like to review those documents in hard copy.

4. Mariner shall give the Consumer time to review Disclosure C and access the hyperlinks (if they so choose) before proceeding with the oral disclosure below.

5. Mariner shall orally disclose that Optional Products are not required to be purchased to obtain a loan and that the Consumer's decision to purchase (or not to purchase) an Optional Product will not affect the Consumer's ability to qualify for or receive the Approved Loan shown on Disclosure A. Mariner is not prohibited from disclosing changes in interest rate that would apply under state law depending on a loan's amount financed.

6. Mariner shall also inform the Consumer that the cost of any Optional Product purchased will be financed as part of the loan.

7. Mariner shall orally disclose that if the Consumer wishes to decline all Optional Products, they may simply sign the bottom of Disclosure C, indicating that they are declining all Optional Products.

8. Mariner shall give the Consumer time to review and complete the form (if the Consumer chooses).

9. Mariner may then ask the Consumer to sign Disclosure C (in writing or electronically).

**D.    Optional Products Pre-Closing Disclosure (Disclosure D)**

1. If the Consumer indicates an interest in purchasing any Optional Products by completing and signing Disclosure C, Mariner shall verbally quote to the Consumer the terms of the Approved Loan with the selected Optional Products included.

2. If the Consumer requests any different terms, *e.g.*, lowering the monthly payment, Mariner may work with the Consumer to arrive at loan terms acceptable to the Consumer.

11

3.      Mariner shall not market to any Consumer a lower interest rate as a benefit of purchasing Optional Products. This restriction will not, however, prohibit Mariner from disclosing changes in interest rate that would apply under state law, depending on a loan's amount financed.

4.      Mariner shall not offer additional cash out to the Consumer for the purpose of incentivizing the purchase of Optional Products. This provision shall not prohibit Mariner from distributing the premium payment in the form of cash to borrower.

5.      Once the Consumer is comfortable with the loan terms that factor in the purchase of Optional Products, Mariner shall provide the Consumer with the Optional Products Pre-Closing Disclosure (electronically or, if the Consumer is in person and requests a hard copy, in hard copy), using the model form agreed to in Disclosure D (including any revised Disclosure D if the Consumer requests different loan terms or Optional Products after receiving Disclosure D).

6.      After the Consumer has reviewed Disclosure D, if the Consumer expresses an interest in removing any products or adjusting the loan, the Consumer shall execute a new version of Disclosure C reflecting their updated product choices, and Mariner shall provide a new version of Disclosure D corresponding to the Consumer's request.

**E.      Loan Closing**

1.      After the Consumer receives the finalized Disclosure D, Mariner shall provide a copy (electronically or, if the Consumer is in person and requests a hard copy, in hard copy) of the Consumer's loan note. If the Consumer has elected to purchase Optional Products, the Consumer will sign Disclosure D before being asked to sign the loan note or other documents as part of the loan closing.

12

2.    Mariner shall orally inform the Consumer that they are borrowing additional money to pay for the Optional Products they selected, and explain where in the loan note each financed premium is disclosed.

**F.    Optional Products Post-Sale Disclosures (Disclosure E)**

1.    Within three business days of the Optional Products sale, Mariner shall provide the Consumer(s) with the Optional Products Post-Sale Disclosures (electronically, if the Consumer has agreed to receive documents by email, or otherwise a hard copy via mail) using the model form agreed to in Disclosure E.

**G.    Sales Process Monitoring / Audit**

1.    Training. Mariner shall enhance and maintain policies and procedures to comply with this Order, including:

a.    Updating training for employees' disclosures of Optional Products to include exemplar talk-off language to guide employees' discussions when:

i.    Offering and completing the sale of Optional Products to Consumers;

ii.    Discussing Optional Products with Consumers during the loan closing; and

iii.    Receiving and responding to Consumers' requests to cancel Optional Products.

b.    Training employees not to use scripts unless those scripts are centrally approved and consistent with the requirements of this Order.

2.    Monitoring. Mariner shall enhance its monitoring and audit processes to:

13

a.  Record all telephone calls with Consumers consisting of consumer complaints and cancellation requests using Mariner's centralized Consumer Relations function, which calls will be audited;

b.  Monitor employees' offering and sale of Optional Products to incorporate the enhanced policies and procedures, including auditing call records according to Mariner's standard auditing practices;

c.  Retain all audits of recorded calls in accordance with Mariner's record retention policies and make such audits and recorded calls available to the Attorney General upon reasonable written request;

d.  For loans in which the Consumer closes the loan, retain all versions of disclosures that Consumers are required to execute for the Optional Product under Section III;

e.  Track and address compliance with this Order;

f.  Ensure appropriate handling of Consumer inquiries or complaints regarding compliance with this Order;

g.  Complete performance reviews for employees that include consideration of whether employee conduct has risked or engaged in noncompliance with this Order; and

h.  For loan closings (including Refinancings) that are not recorded and that involve a sale of Optional Products, on the same schedule Mariner is performing branch audits, conduct a survey of a statistically significant random sample of Consumers who have recently purchased Optional Products to confirm that those Consumers understood: (1) the specific Optional Products that they

14

purchased, (2) whether those Optional Products were financed, (3) the premium costs for the Optional Products, and (4) that they were not required to purchase the Optional Products. Mariner may conduct this survey by phone, online, or in person. Mariner shall document and track the survey results and shall provide a copy of the results to the Attorney General upon reasonable written request.

3.    Resources.    Mariner shall develop policies and procedures that ensure sufficient personnel and resources are devoted to monitoring Optional Product sales.

## H.    Cancellation / Refunds

1.    All Optional Products offered by Mariner may be canceled at any time.

2.    All Optional Products offered by Mariner after the Effective Date of the settlement ("Effective Date") shall be subject to a 60-Day Full Refund Period during which the Consumer can cancel the Unclaimed Optional Product without cost (meaning Mariner shall refund the premium of the Optional Product(s) plus all interest, if any, attributable to the refunded premium of the Optional Product(s)).

3.    After the 60-Day Full Refund Period, Consumers can cancel Optional Product(s) for a refund (as applicable) of the (a) unearned premium as of the date of the cancellation request or (b) prorated product cost based on the amount of time remaining in the loan term, plus (c) the interest attributable to the amount of the premium of the Optional Product being refunded.

4.    Mariner shall not increase the interest rate of any Consumer's loan due to the cancellation of any Optional Product after origination, nor shall  Mariner suggest to any Consumer that cancellation of an Optional Product will result in an increase of the interest rate after origination.

5.    Any Optional Product cancellation resulting from a determination that the Consumer is ineligible for the product shall be treated as a cancellation made during the 60-Day Full Refund Period, regardless of when in the term it occurs.

6.    If, through monitoring of Optional Products, Mariner determines that the Consumer was unaware or misinformed about the sale of the Optional Products (*e.g.*, unaware they were not required to purchase the Optional Product, or about the approximate expense associated with purchasing the Optional Products), Mariner shall immediately offer the Consumer the option to cancel and any such cancellation shall be treated as a cancellation made during the 60-Day Full Refund Period, regardless of when in the term it occurs.

7.    Where permitted by law, the refunds described above shall be made through credits to the Consumer's underlying loan with Mariner.

8.    Cancellation Procedure:

a.    Mariner shall implement a centralized cancellation team to receive, respond to, and resolve all Optional Product cancellations;

b.    Mariner shall permit Consumers to contact Mariner in person, by phone, by letter, by email, or through Mariner's website or mobile application, where Consumers access their account information, to inquire about cancelling Optional Products and, through its centralized cancellation team, allow them to submit their request to cancel their Optional Products;

c.    Mariner's referral process to the centralized cancellation team should not cause unreasonable delays to the Consumer being able to submit their request for cancelling the Optional Products;

16

d. Mariner shall disclose on Mariner's website how Optional Products may be cancelled (see Section III(I), "Website Disclosures" below);

e. Within three business days of a request to cancel an Optional Product, Mariner shall process the cancellation, issue the refund, and send the Consumer a refund confirmation letter or email. The letter/email shall:

i. Confirm the cancellation; and

ii. Provide the amount of the refund, separately identifying the premium(s) of the Optional Product(s) being refunded and the attributable interest being refunded/credited to the Consumer's underlying loan.

f. The cancellation and refund/credit shall be effective as of the date of the request;

g. If state law requires Optional Product refunds by check, the letter will explain that, within 60 days of the date of the letter, the Consumer can apply the refund to their loan by contacting Mariner and remitting the check proceeds to Mariner or by taking the refund check to a branch, where branch employees will assist the Consumer with making the request to have the check proceeds applied to their loan; and

h. All employees who may interact with Consumers concerning cancellations shall receive training on Optional Product cancellation handling.

9. When a Consumer requests to cancel one or more Optional Products sold after the Effective Date:

a. Mariner shall refrain from making a "save" offer or otherwise attempting to convince the Consumer not to cancel the Optional Product(s).

17

        i.        However, Mariner *may* educate a Consumer who wishes to cancel one or more Optional Products that the coverage being cancelled will mean the cessation of all benefits the Optional Product provides, and that the Optional Product will no longer be available post-cancellation.

      b.      Mariner shall also disclose all Optional Products still active on the Consumer's account.

## I.    Website Disclosures

1.    Mariner shall provide information on its website about Optional Products on a dedicated page, including:

      a.      That the products are optional and that a Consumer's decision to purchase them will not impact the Consumer's chances of approval for a loan from Mariner;

      b.      The cancellation policy and methods of cancellation;

      c.      That Mariner will receive a commission in connection with the sale of Optional Products; and

      d.      Relevant product information regarding Optional Products and a statement that that Mariner will provide specific cost information related to Optional Products before the Consumer makes the decision to purchase Optional Products.

## IV.    LOAN REFINANCING

### A.    Collection

1.    When speaking with a Consumer who is one day or more past due:

18

a.      Mariner shall attempt to collect a payment before presenting Refinancing as a potential option; and

b.      Whenever Mariner presents Refinancing as a potential option, Mariner shall only do so alongside other delinquency resolution options available to the Consumer (*e.g.*, making a payment, any voluntary repayment plans, deferment, and other delinquency resolution options required under state law).

2.      Mariner shall update its online and mobile customer account center to:

a.      Prominently display loan payoff balances;

b.      Allow Consumers to automatically receive reminders regarding the date and amount due for periodic payments; and

c.      Include information regarding the Optional Product(s), if any, that Consumers had purchased and information regarding how to cancel.

**B.    Finance Charges**

1.      Mariner shall not charge origination fees on any Refinance between the same products within three months of origination of the loan being refinanced.

**C.    Training**

1.      Mariner shall update its training regarding Refinancing to include exemplar talk-off language for discussing payoff balances with Consumers.

2.      Mariner will update its training regarding Refinancing to include exemplar talk-off language to inform Consumers that the transaction would involve a Refinance of an existing Mariner loan.

**V.    MISCELLANEOUS**

**A.    Licensing**

19

1.      Mariner shall track and retain data about which of its employees offer, negotiate, and sell each Optional Product on each loan, and it shall provide that information to the Attorney General upon reasonable written request.

2.      Mariner will continue to comply with all applicable Tennessee licensing laws with respect to the sale of Optional Products.

## B.      Time Stamp

1.      Mariner shall ensure that all disclosure forms and loan closing documents signed electronically (including Optional Product applications) are stamped with the date and time that the Consumer signs or initials each form.

2.      In the event that any documents listed in this provision are signed by the Consumer with a wet signature, the date need only be recorded once, provided everything is signed on the same day.

## C.      E-Signature

1.      Mariner shall comply with applicable federal and state law regarding e-signatures, including but not limited to 15 U.S.C. § 7001(c)(1)(C)(ii), which requires that "if a statute, regulation, or other rule of law requires that information relating to a transaction or transactions in or affecting interstate or foreign commerce be provided or made available to a consumer in writing, the use of an electronic record to provide or make available (whichever is required) such information satisfies the requirement that such information be in writing if, among other things," Mariner obtains Consumer consent to receive such documents electronically, and it does so "in a manner that reasonably demonstrates that the Consumer can access information in the electronic form that will be used to provide the information that is the subject of the consent."

20

**D.    Settlement Compliance**

1.    Mariner shall update policies to enhance safeguards to employees who report probable breaches of any term of this Consent Judgment or compliance with Mariner's policies. The employee-protection policies shall:

    a.    Protect against any retaliatory actions; and

    b.    Provide a reporting mechanism or hotline for anonymous disclosure.

**E.    Employee Performance / Compensation**

1.    Mariner shall develop performance management and sales goals for its employees that are reasonably designed not to conflict with the requirements of this Order.

2.    Mariner shall not:

    a.    Compensate employees (including executives and managers) based on the number (or dollar value) of Optional Products sold by the employee; and

    b.    To the extent that Mariner bases incentive compensation on loan size, the premium or purchase price of any Optional Product financed as part of a loan shall be deducted from the loan size for the purpose of determining the loan size metric for employee compensation purposes.

**F.    References**

1.    Mariner shall cease taking references from Consumers in their loan applications.

2.    For any loans where Mariner obtained references prior to the Effective Date, Mariner shall not contact those references for any purpose, and Mariner shall not suggest or imply in any way that it will contact those references for any purpose.

**G.      Other Relief**

1.      The injunctive relief takes effect on the Effective Date.

## VI.    CONSUMER REDRESS

**A.**      Mariner shall pay consumer redress in the amount of eleven million, one hundred thousand dollars ($11,100,000.00) as follows:

1.      Mariner shall make a cash payment of one million dollars ($1,000,000.00) to the Attorney General. This cash payment shall go first to restitution for past and existing Tennessee-based Mariner consumers at the time this Order is entered by the Court, but amounts unclaimed following the claims process may be used for any lawful purpose at the Attorney General's sole discretion. Such cash payment must be made to the Attorney General within 30 days of entry of this Order in accordance with instructions provided by a representative of the Attorney General.

2.      Ten million, one hundred thousand dollars ($10,100,000.00) of the consumer redress payment will be in the form of cancellation of Covered Consumer Debt in accordance with section VI.B. of this Consent Judgment.

**B.**      For cancellation of Covered Consumer Debt identified in Section VI(A)(2), Mariner will cease collection of the Covered Consumer Debt as follows:

1.      Mariner, its officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently enjoined from attempting to collect, collecting, or assigning any right to collect all Covered Consumer Debt. Where any action involves the conduct of a third party, Mariner shall have discharged this obligation by making the appropriate request to the third party.

22

2.      Within 30 business days after the entry of this Order, Mariner shall cease collecting on all Covered Consumer Debt. Where any action involves the conduct of a third party, Mariner shall have discharged this obligation by making the appropriate request to the third party.

3.      If the cancellation of any Covered Consumer Debt results in certain Consumer accounts having no outstanding balance and Mariner previously reported a balance for those accounts to a Consumer Reporting Agency, Mariner shall, within 30 business days of entry of this Order, request that each Consumer Reporting Agency delete the outstanding balance from the Consumer's credit reporting file. For those Consumer accounts that maintain an outstanding balance after Mariner cancels any Covered Consumer Debt, Mariner shall request that each Consumer Reporting Agency modify the Consumer's credit report file to reflect the new outstanding balance following Mariner's cancellation of the Covered Consumer Debt. Mariner shall have discharged this obligation by making the appropriate request to the relevant Consumer Reporting Agency within the applicable time period.

4.      If the cancellation of any Covered Consumer Debt results in certain Consumer accounts having no outstanding balance and Mariner has recorded, or caused to be recorded, a Uniform Commercial Code fixture filing or financing statements for any secured property for that account, Mariner shall cause to be filed, within 30 business days of entry of this Order, a termination statement with the register's office where each fixture filing or financing statements is recorded. Mariner shall have satisfied this obligation by making the request to the appropriate authority. To the extent that Mariner is informed that any additional action is necessary to effectuate the termination of all such fixture

23

filings, including but not limited to additional information requested by the agency with which the termination statement has been filed, Mariner will take such additional action as necessary and as soon as practicable, but within 14 business days of learning that additional action is necessary. Within 30 business days of filing these termination statements, Mariner shall provide the Attorney General with a list of all Consumers for whom it has filed fixture filing and financing termination statements.

5.      To the extent Mariner receives any payments for Covered Consumer Debt after the effective date of this Order, Mariner shall, within 30 days of receipt, refund any such payments.

6.      Mariner shall, within 60 business days after entry of this Order, provide a signed declaration to the Attorney General attesting that it has ceased collecting on all Covered Consumer Debt as required by this Section VI(B).

C.      For the avoidance of doubt, the monetary payment to the Attorney General pursuant to Section VI(A)(1) does not include costs incurred or expenditures made by Mariner to effectuate any remedial relief the Attorney General, in its sole discretion, instructs Mariner to transmit to Consumers.

D.      For the avoidance of doubt, the monetary payment to the Attorney General pursuant to this Section does not include costs incurred or expenditures made by Mariner to come into compliance with the requirements of Sections I-V.

## VII.    RELEASE AND DISMISSAL

A.      Covered Conduct Subject to Release. The Attorney General acknowledges that upon Mariner's full payment of the amounts due under Section VI, the Attorney General shall discharge and release Mariner from all civil claims, causes of action, damages, costs, attorneys'

24

fees, or penalties that the Attorney General brought or could have brought pursuant to Consumer Protection Law relating to Mariner prior to the date this Order is entered by the Court, regarding Mariner 1) providing or offering loans, 2) servicing its loans, 3) providing or offering credit insurance and other ancillary products, and 4) assisting Consumers with filing claims against their credit insurance and other ancillary products.

B.      Expressly Preserved Claims. Notwithstanding any term of this Consent Judgment, the following forms of liability are specifically reserved and excluded from Section VIII(A): any criminal liability; any individual Consumer claim or defense as provided for in Section II.G., and any civil or administrative liability under any statute, regulation, or rule not covered by the release in Section VIII(A) or not under the purview of the Attorney General's authority to enforce Consumer Protection Law, including but not limited to the following claims:

        1.      State or Federal antitrust violations;

        2.      State or Federal securities violations; and/or

        3.      State or Federal tax violations.

C.      Dismissal with Prejudice. The Attorney General dismisses the claims with prejudice, subject to this Court retaining jurisdiction over disputes regarding the parties' compliance with this Consent Judgment.

## VIII.   COSTS AND EXPENSES

A.      In addition to the payment described in Section VI above, Mariner shall pay one hundred fifty thousand dollars ($150,000.00) to the Attorney General reflecting attorneys' fees and costs associated with this matter. This payment may be used by the Attorney General for any purpose permitted by law at the sole discretion of the Attorney General.

**B.**     Mariner shall pay the actual, documented costs of any third-party administration of Consumer redress contracted for by the Attorney General in connection with Section VI, up to two hundred thousand dollars ($200,000.00).

**C.**     Other than the expenses identified in Sections VII (A)-(C), the parties will bear their own costs and attorneys' fees.

SO ORDERED

Date: _____          _____

                                 Hon. Kelley B. Hodge
                                 United States District Judge

**JOINTLY APPROVED, AGREED TO, AND SUBMITTED FOR ENTRY:**

Date: 5 - 5 - 2026                              By: **STATE OF TENNESSEE**

Jonathan Skrmetti
Attorney General and Reporter

Daniel Lynch (admitted *pro hac vice*)
Assistant Attorney General
Antitrust and Scaled Industries Division
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 532-5732
Daniel.Lynch@ag.tn.gov

27

Date: 5/5/2026

By: **MARINER FINANCE, LLC**

Joshua Johnson
Chief Executive Officer

Date: 5/5/2026

By: **KIRKLAND & ELLIS LLP**

*Christopher Leach*

Lisa Madigan
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2374
lisa.madigan@kirkland.com

Christopher B. Leach (admitted *pro hac vice*)
1301 Pennsylvania Ave, NW
Washington, DC 20004
(202) 389-3457
christopher.leach@kirkland.com

Atif Khawaja, P.C. (admitted *pro hac vice*)
Robert W. Allen, P.C. (admitted *pro hac vice*)
Alexia R. Brancato, P.C. (admitted *pro hac vice*)
601 Lexington Ave
New York, NY 10016
(212) 446-4800
akhawaja@kirkland.com
bob.allen@kirkland.com
alexia.brancato@kirkland.com


**HUDSON COOK, LLP**

Lucy E. Morris (admitted *pro hac vice*)
A. James Chareq (admitted *pro hac vice*)
Julia K. Whitelock (admitted *pro hac vice*)
Robert D. Tilley (admitted *pro hac vice*)
1909 K Street, NW, 4th Floor
Washington, DC 20006
202.327.9710 / 202.327.9711
lmorris@hudco.com

28

jchareq@hudco.com
jwhitelock@hudco.com
rtilley@hudco.com

*Attorneys for Defendant Mariner Finance, LLC*

29