**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

COMMONWEALTH OF PENNSYLVANIA,
*et al.*,

                    Plaintiffs,

v.

MARINER FINANCE, LLC,

                    Defendant.

Case No. 2:22-cv-03253-KBH

Hon. Kelley Brisbon Hodge
(Electronically Filed)

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL
PLAINTIFFS TO PRODUCE THIRD-PARTY COMMUNICATIONS**

**INTRODUCTION**

Plaintiffs filed this case in 2022 purportedly on the basis of at least 97 alleged consumer complaints about the sales practices of Defendant Mariner Finance LLC ("Mariner"). Four years later, after Mariner produced more than one million documents and offered 41 company witnesses for deposition, Plaintiffs abandoned 88 of those customers (more than 90% of the total) and replaced them with entirely new customers in Plaintiffs' Consumer Disclosure served on July 9, 2026. Through discovery, Mariner has further learned that, to secure testimony from these new Mariner customers, Plaintiffs failed to disclose admittedly "helpful" information and coached customers to sign sworn affidavits in support of Plaintiffs' claims. Even worse, Plaintiffs now refuse to produce the entirety of their correspondence with Mariner's customers and will not allow their investigators to testify about conversations with customers, asserting that the third-party communications are protected "attorney work product"—an assertion that itself exposes the extent to which Plaintiffs influenced the testimony. Essentially, Plaintiffs attempt to use the work-product doctrine impermissibly as both a sword and a shield: Plaintiffs base their claims of consumer harm and alleged Mariner wrongdoing on testimony elicited from Mariner customers but will not let Mariner discover the complete circumstances of the testimony, including the extent to which Plaintiffs biased such testimony. The Federal Rules do not permit such gamesmanship.

Mariner, therefore, moves to compel Plaintiffs to produce all relevant customer emails and attachments, and to allow Mariner to question investigators about the content of their conversations with Mariner's customers. These communications are not protected by the attorney-work-product privilege for three independent reasons: (1) the third-party communications are not attorney work product; (2) Plaintiffs waived any privilege by sharing the alleged work product with Mariner's customers, increasing the likelihood that Mariner would obtain it; and (3) Mariner has a substantial need for the communications to defend itself against Plaintiffs' consumer protection claims.

**BACKGROUND**

I.   **PLAINTIFFS COACH CUSTOMERS AND ADMITTEDLY WITHHOLD "HELPFUL" LOAN INFORMATION**

Prior to filing their complaint, Plaintiffs solicited and communicated with Mariner's customers to build their case against Mariner. To survive dismissal, Plaintiffs repeatedly asserted to the Court that at least 97 customers were misled by Mariner, as referenced in their second amended complaint. *See, e.g.*, Dkt. No. 86, Compl. ¶¶ 88–91, 290–327; 10/11/23 Hr'g Tr. at 39:5-8; 39:13-15. Four years later, Plaintiffs ***dropped 88 of those customers*** and included only 9 of the original 97 on their list of consumers they plan to identify as witnesses at trial. Even worse, the customers that Plaintiffs now proffer are the product of aggressive solicitations by Plaintiffs, as evidenced by calls Mariner received and correspondence forwarded by confused customers. As recently as June 1, 2026, the New Jersey Attorney General's Office called and emailed a Mariner customer, demanding the customer tell her "if there [was] any reason you would be prevented from speaking to us." (Ex. 1, 6/1/26 Email.) Once connected, Plaintiffs then biased customers against Mariner and pressured them to sign affidavits. Instead of interviewing customers about the individuals' recollection of events, Plaintiffs coached them to secure a supporting narrative. In one email, Plaintiffs instructed a customer to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 2, PLTS_00008474.). They even dangled monetary litigation awards as a reward for helpful litigation testimony. (Ex. 3, PLTS_00012464.)

Lest there be any doubt, Plaintiffs admit that the biasing tactics used in these solicitations were prejudicial. At deposition, one New Jersey investigator admitted that ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 4, R. Salikram Dep. Tr. at 40:4-45:22, 145:7-23.) When Plaintiffs asked customers about their recollection of Mariner's loan process, they withheld and did not provide customers with loan documents that were received and signed

contemporaneously with the loan transaction.  An investigator from the Pennsylvania Attorney

General's Office testified █████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████ (Ex. 5, L. Oleckna Dep. Tr. at

174:23-175:3; 190:13-15.)  Of course, had the investigator discussed with customers the signed

loan documents that refuted their declarations, they may not have agreed to provide the conflicting

testimony.  When pressed, the investigator even admitted that ███████████████████

████████████████████████████████ (*Id*. at 178:16-22.)  In

sum, by Plaintiffs' own admission, the process by which Plaintiffs solicited and obtained testimony

from customers influenced the customers' testimony.

## II.     PLAINTIFFS WITHHOLD THIRD-PARTY COMMUNICATIONS, ASSERTING "ATTORNEY WORK PRODUCT" PRIVILEGE

Despite Mariner's request that Plaintiffs produce all communications with third-party

Mariner customers (Ex. 6, RFP No. 7), Plaintiffs refused to produce any communications for two

years until Mariner aggressively challenged their position through a series of letters.  (Ex. 7,

3/12/26 Letter.)  When Plaintiffs finally produced the emails, they redacted 76 documents on the

basis of "attorney work product" privilege.  Although Plaintiffs later withdrew some of their more

frivolous redactions following a meet-and-confer, they maintained assertions of privilege for most

emails.  Plaintiffs also refused to let their investigators testify about their conversations with

Mariner's customers—██████████████████████████████████—even though

these conversations biased customers to encourage testimony favorable to Plaintiffs' arguments.

(*See* Ex. 5, L. Oleckna Dep. Tr. at 95:8-100:14; 104:17-24; Ex. 4, R. Salikram Dep. Tr. at 134:6-

137:24.)   Mariner also requested that Plaintiffs produce all affidavits obtained during their

3

investigation (Ex. 6, RFP No. 10), but Plaintiffs only produced final affidavits, withholding all drafts exchanged with third-party customers on the basis of attorney-work-product privilege.

**ARGUMENT**

This Court should compel production for three independent reasons. *First*, Plaintiffs' communications are not attorney work product. For example, Plaintiffs assert privilege over simple requests to provide documents (Ex. 8, PLTS_00008578 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)); benign introductions (Ex. 9, PLTS_00008574 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)); summaries of factual information (Ex. 10, PLTS_00008701 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)); and even third-party conversations between investigators and consumers, including what investigators told Mariner's customers about Plaintiffs' allegations and what the third-party customers told investigators. None of this is attorney work product.

*Second*, Plaintiffs waived any privilege in their communications to customers. Privilege is waived when attorney work product is "disclosed in a manner inconsistent with keeping it from an adversary." *In re Chevron Corp.*, 633 F.3d 153, 164-65 (3d Cir. 2011). Plaintiffs enjoy no expectation of confidentiality over communications with third parties, especially customers with ongoing contractual relationships with Mariner. *See, e.g.*, *United Artists Theatre Cir., Inc. v. Monarch, Inc.*, No. Civ. A. 94-2155, 1995 WL 562225, at *3 (E.D. Pa. Sept. 20, 1995) (finding waiver where "there was no guarantee of confidentiality"). Such communications were not subject to an NDA or confidentiality agreement, and they could not be privileged client communications since, as Plaintiffs have made clear, they do not represent these customers. In fact, Mariner customers have shared and continue to share with Mariner details of outreach from Plaintiffs, including forwarded emails and summaries of phone calls. To the extent privilege ever existed over the alleged attorney work product, it has been waived.

4

*Finally*, even if the withheld information is attorney work product, Mariner has shown a "substantial need" for it to defend itself against Plaintiffs' claims. Fed. R. Civ. P. 26(b)(3)(A). "Courts have found that the substantial need test is met in a case where plaintiff's claims have made his attorney's work product an issue in the case," for example, when the work product will "confirm or undercut" a plaintiff's allegations. *Cooney v. Booth*, 198 F.R.D. 62, 66 n.7 (E.D. Pa. 2000); *see also Bowman v. Am. Homecare Supply, LLC*, No. Civ. A. 07-3945, 2009 WL 1873667, at *4 (E.D. Pa. June 25, 2009) (finding that "fairness and equity dictate production of all work-product protected documents" because the withholding party "placed the subject matter of the work product . . . at issue"). Here, there is no question that Plaintiffs have rested their consumer-protection claims on consumer testimony, and they intend to proffer consumer testimony to "confirm" their allegations. Nevertheless, Plaintiffs refuse to produce the draft affidavits, clawed-back emails, and investigator testimony that would reveal the extent to which Plaintiffs biased the exact consumer testimony upon which they rely. Mariner, therefore, has a substantial need for this information and cannot obtain its substantial equivalent by other means. *See In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 415 F. Supp. 3d 498, 507–08 (E.D. Pa. 2019) ("Work-product protection may not be used as both a sword and a shield to disclose otherwise protected information that helps and withhold information that hurts."); *see also Merisant Co. v. McNeil Nutritionals, LLC*, 242 F.R.D. 303, 311 (E.D. Pa. 2007) ("[A] party cannot introduce a document as evidence while denying the opponent sufficient discovery with respect to the 'surrounding circumstances and substance' of the document.").

## CONCLUSION

For the foregoing reasons, the Court should grant Mariner's motion to compel.

July 23, 2026

Respectfully submitted,

By: KIRKLAND & ELLIS LLP


*/s/ Atif Khawaja*

Atif Khawaja, P.C. (admitted *pro hac vice*)
Robert W. Allen, P.C. (admitted *pro hac vice*)
Alexia R. Brancato (admitted *pro hac vice*)
Sarah J. Schultes (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
atif.khawaja@kirkland.com
bob.allen@kirkland.com
alexia.brancato@kirkland.com
sarah.schultes@kirkland.com

Christopher B. Leach (admitted *pro hac vice*)
1301 Pennsylvania Avenue
Washington, D.C. 20004
(202) 389-5000
christopher.leach@kirkland.com

Matthew Summers (admitted *pro hac vice*)
2049 Century Park East
Los Angeles, California 90067
(310) 552-4200
matthew.summers@kirkland.com

Marianna C. Chapleau (admitted *pro hac vice*)
Dayron Silverio (admitted *pro hac vice*)
830 Brickell Plaza
Miami, Florida 33131
(305) 432-5600
mchapleau@kirkland.com
dayron.silverio@kirkland.com


By: BALLARD SPAHR LLP

6

*/s/ Daniel JT McKenna*
Daniel JT McKenna
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 864-8321
mckennad@ballardspahr.com

*Attorneys for Defendant Mariner Finance, LLC*
