# EXHIBIT 7

# KIRKLAND & ELLIS LLP

601 Lexington Avenue
New York, NY 10022
United States

Sarah Schultes
To Call Writer Directly:
+1 212 909 3423
sarah.schultes@kirkland.com

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

March 12, 2026

Nicholas F.B. Smyth
Office of the Attorney General
1600 Arch St., 3rd Floor
Philadelphia, PA 19103
nsmyth@attorneygeneral.gov

Re:    *Commonwealth of Pennsylvania et al. v. Mariner Finance, LLC* –
Plaintiffs' Responses to Defendant's First Set of Requests for
Production and Interrogatories

Counsel:

I write regarding deficiencies in Plaintiffs' responses to Mariner's First Set of Requests for Production and First Set of Interrogatories, served on March 8 and 14, 2024, respectively ("Mariner's Discovery Requests"). Rather than meaningfully respond to Mariner's Discovery Requests, Plaintiffs stand on broad objections based primarily on attorney work-product protection.[1] Mariner continues to disagree with Plaintiffs' position regarding the discoverability of the documents and information sought in Mariner's Discovery Requests for the reasons articulated in our June 28, 2024, August 16, 2024, and May 16, 2025 letters and stated below. Mariner reserves its right to compel Plaintiffs to produce the requested documents and information in response to each of Mariner's Discovery Requests but focuses this letter on requests related to Plaintiffs' communications with third-party consumers.[2]

It is undisputed that Plaintiffs intend to rely on third-party consumer witness testimony as a key component of their claims against Mariner. Therefore, understanding the scope of consumer communications with the Plaintiff attorneys general is essential for Mariner to prepare

---

[1]    *See* Pls.' 8/8/2024 and 8/30/2024 Ltrs. to Mariner. Although Plaintiffs maintain other objections in response to Mariner's Requests for Production, Mariner understands that the primary basis on which Plaintiffs continue to withhold documents and information is work-product protection. If that is incorrect, please inform Mariner promptly. To be clear, Mariner continues to disagree with Plaintiffs' other objections and will address them if and when it becomes necessary.

[2]    *See, e.g.*, Mariner's Reqs. for Produc. Nos. 10, 19, 22, 24, 26 and Interrogs. Nos. 4 and 5.

# KIRKLAND & ELLIS LLP

Nicholas F.B. Smyth
March 12, 2026
Page 2

its defense.  Without this information Mariner is hindered in its ability to prepare for and complete fact discovery, prepare for upcoming depositions of Plaintiffs' investigators, identify consumers for Mariner's disclosure pursuant to the Consumer Witness Protocol, and prepare for consumer depositions.  Under these circumstances, documents and information concerning Plaintiffs' communications with third parties are not protected from disclosure under the work-product doctrine.

*First*, the mere identities of persons that Plaintiffs have communicated with and objective details of those communications are not privileged.  *See, e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, 2006 WL 1479819, at *5 (E.D. Pa. May 26, 2006) (compelling answer to interrogatory "seek[ing] the identities of persons who provided Plaintiffs with certain information at certain times"); *In re Aetna Inc. Sec. Litig.*, 1999 WL 354527, at *5 (E.D. Pa. May 26, 1999) (holding that work-product protection did not extend to the names and addresses of individuals "described in" and "interviewed in connection with" plaintiffs' complaint); *United States v. Amerada Hess Corp.*, 619 F.2d 980, 987–88 (3d Cir. 1980) ("[T]he list of interviewees is just that, a list.  It does not directly or indirectly reveal the mental processes of . . . attorneys.").  Plaintiffs' attempts to distinguish this caselaw are unavailing.  While *Aetna* concerned interrogatories and not requests for production, its reasoning applies equally to both forms of written discovery.  For either type of request, "the critical question is the extent to which the information discloses an attorney's thought processes."  *Aetna*, 1999 WL 354527, at *3.  The fact that Plaintiffs communicated with certain third parties and objective details about those communications do not reveal attorneys' mental impressions, so they are not afforded work-product protection.  To the extent *Aetna* leaves any ambiguity, other Third Circuit caselaw resolves it.  *Amerada Hess* concerned document requests—not interrogatories—and required production of contact lists because they did "not directly or indirectly reveal the mental processes of . . . attorneys."  619 F.2d at 987–88.  The same is true here.

Even if the Court "conduct[ed] a careful and fact-specific balancing test,"[3] Mariner's substantial need for this information and inability to otherwise obtain it without undue hardship outweighs any potential work-product argument.  Discovery into Plaintiffs' consumer communications is "essential to the preparation of [Mariner's] case."  *Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 191 F.R.D. 419, 426 (D.N.J. 2000) (reasoning that a defendant has "substantial need" for information that is "critical to [its] defense").  Absent this discovery, Mariner could only access this information through an unduly burdensome discovery process involving thousands of subpoenas and discovery requests.  That is not what the law requires.  At minimum, Plaintiffs must disclose a list of the third-party consumers whom they have attempted to contact and/or succeeded in contacting about this

---

[3]   *See* Ltr. from H. Anderson to S. Schultes at 4 (Aug. 8, 2024).

# KIRKLAND & ELLIS LLP

Nicholas F.B. Smyth
March 12, 2026
Page 3


litigation and the basic facts surrounding those communications.  *See Amerada Hess*, 619 F.2d at 988 (finding "[a]voidance of the time and effort involved in compiling a similar list from other sources" to be "a sufficient showing of need"); *In re Plastics Additives Antitrust Litig.*, 2007 WL 9825891, at *2 (E.D. Pa. Feb. 28, 2007) (reasoning that a list of interviewees "is discoverable upon a minimal showing" of need); *Gates v. Rohm & Haas Co.*, 2006 WL 3420591, at *4 (E.D. Pa. Nov. 22, 2006) (finding that defendant had "substantial need for the information" when "the alternative would require . . . many" depositions or "numerous sets of interrogatories").  Indeed, much of the information Mariner seeks is precisely the type of information that would appear on a privilege log (*i.e.*, names of individuals involved in a communication, dates of communication, subject matter of communication, etc.), further undercutting any argument that this information can be properly withheld on work-product grounds.

*Second*, Plaintiffs have failed to engage with Mariner's caselaw holding that consumer statements and purely factual information learned from third-party consumer conversations are not protected work product.  *See, e.g.*, *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 422 (D.N.J. 2009) (holding that the fact that attorneys "ha[d] a role in preparing" witness statements did not "suffice to convert what is otherwise purely factual testimony . . . into work product"); *In re Student Fin. Corp.*, 2006 WL 3484387, at *15 (E.D. Pa. Nov. 29, 2006) (distinguishing between attorney "memoranda summarizing a witness interview," which is protected work product, and "notes of an interview," which is not).  Rather, Plaintiffs protest that reviewing and redacting their notes would be "enormously burdensome."[4]  But Plaintiffs' burden claims are outweighed by "the relevance of the information requested" and Mariner's "need . . . for the documents."  *See Chabot v. Walgreens Boots All., Inc.*, 2021 WL 767516, at *8 (M.D. Pa. Feb. 26, 2021) (reasoning that even a "large" burden "is not undue" where the information sought is "directly probative of Defendants' defense").

*Third*, Plaintiffs have not provided a meaningful response to Mariner's arguments that Plaintiffs waived any work-product protection by communicating with third parties.  Namely, by sharing information with Mariner's customers—many of whom have ongoing contact with Mariner—Plaintiffs "enable[d] an adversary" (Mariner) "to gain access to the information."  *See Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1428 (3d Cir. 1991).  Plaintiffs' communications with third-party consumers did not "further the underlying goal of work product doctrine of protecting the mental impressions and opinions of attorneys," so Plaintiffs waived any protection that otherwise may have been afforded to those communications.  *See Multiple Energy Techs., LLC v. Under Armour, Inc.*, 2024 WL 4784112, at *7 (W.D. Pa. Nov. 14, 2024).

---

[4]    *See* Ltr. from H. Anderson to S. Schultes at 4 (Aug. 8, 2024).

## KIRKLAND & ELLIS LLP

Nicholas F.B. Smyth
March 12, 2026
Page 4

Yet rather than produce their consumer communications, Plaintiffs have simply stated that they "will not respond further to this argument."[5]  Plaintiffs' non-response is unpersuasive.

*Finally*, Plaintiffs cannot rely on the Consumer Witness Protocol to evade their discovery obligations.[6]  The Consumer Witness Protocol merely prescribes the procedures for the parties to follow in identifying consumers to be relied upon at trial.  It expressly provides that it "shall not replace or disrupt either party's obligation to provide timely and complete discovery of consumer-related information, including in response to pending and future discovery requests."[7]  Plaintiffs must provide the requested information in a timely and complete manner for *all* consumers, not just consumers ultimately identified by Plaintiffs pursuant to the Consumer Witness Protocol.

At bottom, Plaintiffs are obstructing non-privileged discovery regarding communications with third parties that should be produced.  Accordingly, Mariner reiterates its demand to produce the following for all consumers identified in Appendix A to Plaintiffs' Eighth Set of Requests for Production (the "Appendix A Consumers") no later than **March 26, 2026** and for all other consumers by **April 9, 2026**:

Requests for Production

1. All documents responsive to Mariner's RFP Nos. 10,[8] 19,[9] 22,[10] 24,[11] and 26[12];

2. To the extent Plaintiffs have already produced documents responsive to RFP Nos. 10, 19, 22, 24, and 26, an identification of all such documents by Bates number;

---

[5]    *See* Ltr. from H. Anderson to S. Schultes at 5 (Aug. 8, 2024).

[6]    *See, e.g.*, Pls.' Resps. and Objs. to Def.'s First Set of Reqs. for Produc. Nos. 22, 26.

[7]    Consumer Witness Protocol ¶ 4.

[8]    "All Documents relating to Your Communications to, from, or with any Consumer regarding Mariner, including but not limited to Documents You showed to, delivered to, referenced with, or received from any Customer with whom you Communicated regarding Mariner."  Def.'s First Set of Reqs. for Produc.

[9]    "All Recordings of Your Communications with Consumers about Mariner."  *Id*.

[10]    "All notes, declarations, affidavits, transcripts, or other Documents memorializing or summarizing the statement of any Consumer about Mariner."  *Id*.

[11]    "All Communications to or with Consumers relating to Your Investigation of Mariner, including but not limited to, any request for an interview relating to Mariner."  *Id*.

[12]    "All questionnaires, surveys, outlines, introductions, talking points, or other Documents used by You in connection with interviews of Consumers relating to Mariner, including but not limited to all drafts of the foregoing Documents and responses from Consumers to the foregoing Documents."  *Id*.

# KIRKLAND & ELLIS LLP

Nicholas F.B. Smyth
March 12, 2026
Page 5

3. Written confirmation that your production of documents responsive to RFP Nos. 10, 19, 22, 24, and 26 is complete;[13]

4. A written statement confirming whether or not Plaintiffs continue to withhold documents responsive to the above-listed RFPs on the basis of work-product protection; and

5. A privilege log reflecting each document and communication withheld from production, consistent with Section VII of the Stipulated Order Regarding Discovery of Electronically Stored Information (Dkt. 108) (the "ESI Protocol").

Interrogatories

1. Complete answers to Interrogatory Nos. 4[14] and 5[15].

We are available to meet and confer and reserve all rights.

Sincerely,

*/s/ Sarah Schultes*
Sarah Schultes

CC: All Counsel of Record

---

[13] Even if Mariner were to accept Plaintiffs' definition of work product—which we do not—Plaintiffs have not certified that their production of documents is complete. Indeed, in Plaintiffs' August 8, 2024 letter, you stated that "[t]he remaining unproduced responsive documents in Plaintiffs' possession, custody and control are largely, if not entirely, documents gathered and/or created by or at the direction of attorneys in anticipation of litigation." Ltr. from H. Anderson to S. Schultes at 3 (Aug. 8, 2024).

[14] "Identify each Consumer with whom You communicated, or from whom you solicited a Communication, in connection with Your Investigation of Mariner." Def.'s First Set of Interrogs.

[15] "For each Consumer identified in response to Interrogatory No. 4, identify (i) how the Consumer was identified; (ii) whether any materials were provided by Plaintiffs to the Consumer; (iii) each Communication with such Consumer; (iv) the dates of such Communication; (v) all Persons who participated in the Communication; (vi) the nature of such Communication (e.g., explain whether the Communication was a customer complaint, interview, deposition, etc.); (vii) whether any notes memoranda, or recordings were created in connection with such Communication." *Id.*