# EXHIBIT A

| | |
|---|---|
| **From:** | Smyth, Nicholas F.B. |
| **To:** | Morris, Lucy |
| **Subject:** | RE: Mariner Finance - PA AG Customer Interviews |
| **Date:** | Friday, May 28, 2021 9:43:47 AM |
| **Attachments:** | image001.png |

Lucy,

Thanks for reaching out. I hope you're having a good start to summer. I had been meaning to reach out to you to express my concern over what consumers were telling us in the interviews. I will respond to your email and then update you on where we are in the investigation.

**My Response to Your Concerns**

When we interview Mariner consumers (or any other consumers), we follow well-established protocols just as the CFPB does. We use a script. We always have at least 2 people on the call. I have been on nearly every call with the consumers, including all of the interviews we conducted last week. We are not telling consumers that Mariner is offering deceptive insurance products or recommending that they cancel their insurance products with their local offices, nor are we providing any sort of legal advice. If consumers conclude that they were deceived or decide to cancel the insurance, they are doing that of their own volition.

On all of our interviews, after preliminary questions, we ask consumers what they remember Mariner's loan officer saying to them about credit insurance. Only after they tell us what they remember of the conversation do we tell them that Mariner charged them for certain insurance products and how much Mariner charged them. Consumers are nearly always surprised to learn that they were charged for these products, or that they were optional, and they nearly always want to cancel them and get their money back. Many of them say they have insurance through work that makes credit insurance unnecessary. Others just say they think the insurance is too expensive given the size of the loan. They almost universally say they would not have bought the insurance if they had known it was optional. We inform them that they can call their local branch if they want to cancel. We always make clear that we are not telling them what to do nor providing any sort of legal advice.

**Fraudulent Sales of Insurance**

**Greater than 95% of consumers** interviewed who had insurance told us they were either unaware that Mariner had charged them for insurance, unaware the insurance was optional, or unaware of how much it cost. This includes consumers who originated loans in Dec. 2020. In some cases, the consumers specifically remember being offered insurance and declining it, yet the loan documents show Mariner still charged them. In every case, the consumer was presented with the loan documents pre-filled out with multiple insurance policies included. Despite what Mariner's policies say about the products being optional, according to consumers, its employees are not presenting the products as optional – or in many cases even presenting the products at all.

As you know, we selected most of our interviewees from a random sample. Given the size of

our sample and the extreme prevalence of consumers who were misled, we are nearing a conclusion that Mariner has been and is engaging in widespread fraud. Given what I know now, I expect to seek authority to settle or sue on the grounds that Mariner's insurance sales practices constitute unfair, deceptive, and abusive practices, spanning multiple years. Moreover, given that Mariner has been on notice now for over 2 years that we are investigating its sale of insurance products (and even longer since the Washington Post disclosed the practices), I plan to seek penalties of $1,000 per violation under state law. If we end up litigating, I believe Mariner's continuation of this harmful conduct would support a finding of reckless or even knowing violations that could justify much higher penalties under the Consumer Financial Protection Act.

For these reasons, your client should consider immediately ceasing the sale of all add-on products in Pennsylvania until it can ensure its employees are properly explaining the insurance and giving them the option to originate the loan without any insurance. (Recall that 76 of the 100 consumers in our random sample were charged for at least one add-on products.) Mariner should also consider contacting all current customers and telling them it will cancel and refund their insurance products unless they affirmatively express a desire to keep the product.

When we spoke on February 18, 2021, I told you that our consumer interviews up to that time had shown that most consumers were unaware that they had been charged for insurance or did not realize that it was optional, and I told you I believed the conduct was similar to the insurance packing conduct in the _FTC v. Associates_ case. You said that the difference in _Associates_ was that there was a script in _Associates_ that said or implied that insurance was included in the loan, and you said we have no script here. While we are not yet aware of any script from Mariner, we have found extensive conduct that demonstrates widespread practices that have the same result as the _Associates_ conduct: consumers collectively paying millions of dollars in principal and interest towards insurance policies they either did not know about, did not want, or did not know they could decline. Moreover, we have uncovered other potential violations not described here.

**Difficulties in Cancelling Insurance**

One other thing: you said "Mariner honors customers' cancellations requests and will do so here upon request." We appreciate that this is your position and Mariner's written policy. But consumers have been telling us that Mariner branch personnel are making up requirements that are outside Mariner's written policies in an attempt to prevent them from cancelling. **For this reason we request that Mariner produce by June 28, 2021, any non-privileged emails, documents, text messages, and any other communications (including any call recordings) that have been sent or received by personnel assigned to or responsible for the Pottsville, PA branch # 7822 (including the Regional Manager, Bob) from May 1 to May 25, 2021, that relate to the sale of add-on products or requests to cancel add-on products, including but not limited to all communications with and about consumer Amanda Bankes.**

**Next Steps**

It is my intention to present our comprehensive findings to you and your client in the coming months. But first we want to complete our consumer interviews, review the documents requested

above, and conduct a hearing with one or more branch managers. In the meantime, your client should strongly consider reforming its business practices to mitigate the continuing harm it is doing to consumers.

Finally, we continue to believe Mariner should record its calls with consumers because that is one important way the company can monitor its employees and ensure they are following its policies and procedures. Mariner's failure to record calls despite its large size puts it out of step with the rest of the industry.

Regards,
Nick

**From:** Morris, Lucy [mailto:lmorris@hudco.com]
**Sent:** Monday, May 24, 2021 12:48 PM
**To:** Smyth, Nicholas F.B.
**Subject:** Mariner Finance - PA AG Customer Interviews

Nick,

This is to express continuing concerns about the way your office is conducting interviews of Mariner's customers.  Last week, over the course of two days, the company had two different customers (in two different branches) call to cancel all of the optional credit products they had elected on their loans.  They both told the branch the same story as to why they were making the request.  Both customers advised that they had received calls from Lauren Oleckna who told them that Mariner was under an investigation for offering deceptive insurance products and recommended they cancel their insurances with their local offices.

It's one thing to call customers and ask questions as part of an investigation, but it appears that two things happened here that are improper:

- Ms. Oleckna said the investigation was about "offering deceptive insurance products;" and
- She recommended that the customer cancel their products.

These statements indicate that Ms. Oleckna has already reached a conclusion about Mariner's practices and that she is improperly "leading" customers to support her conclusion.  Please look into this and ensure that the instructions/training given to investigators prohibits this sort of activity.  We also ask that you remove Ms. Oleckna and any other investigators who have been following similar improper practices.

Just today, yet another customer called his local branch to cancel the insurances on his loan.  He said he received a call from the PA AG stating that it is Mariner's common practice to put insurances on a loan without the customer's knowledge and that he should cancel the insurances if he has them.

Of course, Mariner honors customers' cancellations requests and will do so here upon request.

You'll recall that I first raised concerns about your office's handling of customer interviews when we

talked on February 18, 2021.  In particular, I told you about one customer who said he had been contacted by the PA AG office and told that there was a class action lawsuit against the company for not disclosing the sale of credit insurance.  While it is possible that this or other customers were confused by your investigator's statements, there is a pattern here that is deeply concerning.  Any interviews should be objective and non-misleading, and should not advise consumers that Mariner has engaged in wrongdoing or advise consumers to cancel their insurance (which could have the unintended consequence of leaving consumers without valuable protection when they need it most, such as during the pandemic).

Please let me know if you have any questions.

Thanks,
Lucy

Lucy Morris
Partner | Admitted in D.C. and Washington State
Hudson Cook, LLP
Direct:  202.327.9710 | Cell:  703.864.3832
1909 K Street NW | 4th Floor | Washington, DC 20006



The information contained in this transmission may be privileged and may constitute attorney work product.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact Lucy Morris at lmorris@hudco.com or 202.327.9710 and destroy all copies of the original message and any attachments.

*         *         *         *


The information transmitted is intended only for the person or entity to whom it is addressed and may contain confidential and/or privileged material.  Any use of this information other than by the intended recipient is prohibited. If you receive this message in error, please send a reply e-mail to the sender and delete the material from any and all computers.  Unintended transmissions shall not constitute waiver of any applicable attorney-client or any other applicable privilege. PA-OAG


This message has been scanned for malware by Websense. www.websense.com