**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

COMMONWEALTH OF PENNSYLVANIA,
_et al._,
                              Plaintiffs,

                v.

MARINER FINANCE, LLC,
                              Defendant.

Case No. 2:22-cv-03253-KBH

Hon. Kelley Brisbon Hodge

**ECF Case**

### CONSENT JUDGMENT AND ORDER BETWEEN PLAINTIFF STATE OF INDIANA AND MARINER FINANCE, LLC RESOLVING ALL CLAIMS BROUGHT BY STATE OF INDIANA

WHEREAS, Plaintiff Commonwealth of Pennsylvania by Attorney General David Sunday; District of Columbia through the Offices of the Attorney General; People of the State of Illinois by Kwame Raoul; State of Indiana, by Attorney General Todd Rokita; State of New Jersey, by Matthew J. Platkin, Attorney General for the State of New Jersey; the People of the State of New York, by Attorney General Letita James; State of North Carolina _ex rel._ Jeff Jackson, Attorney General; State of Oregon, _ex rel._ Dan Rayfield, in his official capacity as Attorney General; State of Tennessee, _ex rel._ Jonathan Skrmetti, Attorney General and Reporter, State of Washington; and State of Wisconsin filed their Second Amended Complaint on April 1, 2024, alleging that Defendant Mariner Finance, LLC ("Mariner") violated, among other laws, the Consumer Financial Protection Act of 2010 and the consumer protection laws of Pennsylvania, the State of New Jersey, and the State of Washington;

WHEREAS, Plaintiff State of Indiana, by Attorney General Todd Rokita ("Indiana") and Mariner (collectively, the "Parties") have agreed to resolve their claims without the need for litigation by entering into this Consent Judgment;

WHEREAS, Indiana and Mariner recognize and state this Consent Judgment is entered into

1

voluntarily and without any degree of duress or compulsion;

WHEREAS, Mariner waives any right it may have to move to set aside this Consent Judgment through any collateral attack, and further waives its right to appeal from this Consent Judgment;

AND WHEREAS, Mariner, by entering into this Consent Judgment, does not admit any allegations of wrongdoing or violations of applicable laws, regulations, or with respect to any persons identified for redress or remediation in connection with this Consent Judgment, other than those facts of the Complaint deemed necessary to establish the jurisdiction of this Court with respect to claims between Indiana and Mariner;

NOW THEREFORE, without trial or adjudication of issues of fact or law, without this Consent Judgment constituting evidence against Mariner except as otherwise noted, and upon consent of Mariner, the Court finds that there is good and sufficient cause to enter this Consent Judgment and that it is therefore ORDERED, ADJUDGED, and DECREED that:

## I.     DEFINITIONS

A.     "60-Day Full Refund Period" means the 60-day period after a Consumer purchases an Optional Product after the Effective Date, during which the Consumer can cancel the Optional Product for a refund of the full premium of the product and the interest attributable to the financing of the premium.

B.     "APR" means the Annual Percentage Rate as defined by the Truth in Lending Act, 15 U.S.C. § 1606.

C.     "Consumer" means any person who took out a loan with Mariner while residing in Indiana or who otherwise provided Mariner with an Indiana address at the time they took out a loan with Mariner. For purposes of injunctive provisions governing Mariner's ongoing conduct,

2

"Consumer" includes any person in Indiana who is being offered a consumer transaction with Mariner.

**D.**     "Consumer Protection Law" and any variation thereof means Ind. Code § 24-5-0.5 *et seq.*, the CFPA, the TILA, and its implementing Regulation Z, 12 C.F.R. § 1026.17.

**E.**     "Covered Consumer Debt" means the loans identified by Mariner in an April 27, 2026 email to the Indiana Attorney General. The amount of a Covered Consumer Debt includes any outstanding unpaid principal balance and accumulated interest as it appears on Mariner's books as of the date of forgiveness.

**F.**     "Effective Date" of settlement means 180 days after the Consent Judgment is approved by the Court.

**G.**     "Disclosure" shall refer to the Disclosures sent by Mariner to the Indiana Attorney General in an April 27, 2026 email.

**H.**     "Mariner" and any variation thereof means the Defendant, Mariner Finance, LLC, in this case.

**I.**     "Optional Product" means any product or service that Mariner markets, sells, or offers to Consumers as an Optional Product supplementary to the credit provided by Mariner, including but not limited to credit insurance, Accidental Death & Dismemberment insurance, home and auto membership products, and GAP-related products.

**J.**     "Refinance" and any variation thereof means an existing Mariner installment loan is paid off with the proceeds of a new Mariner installment loan.

**K.**     "Indiana" or "Indiana Attorney General" and any variation thereof means the Plaintiff, the State of Indiana, in this case.

**L.**     "Unclaimed Optional Product" and any variation thereof means an Optional Product

3

for which no claim has been paid.

## II.    GENERAL PROVISIONS

A.    This Court has jurisdiction of this subject matter hereof and the parties hereto.

B.    Venue is proper in this Court.

C.    This Consent Judgment is intended to be for the benefit of Indiana and Mariner and does not create any other third-party beneficiary rights or give rise to or support any right of action by any Consumer or group of Consumers or confer upon any person other than the parties hereto any rights or remedies. Except as provided in II.G, this document does not release or have an effect on any private right of action or claims brought by litigants other than the State of Indiana against Defendant, including but not limited to, any claims or potential claims asserted on behalf of other plaintiffs, such as consumers, class members, putative class members, and political subdivisions.

D.    To the extent Mariner and the State of Indiana determine that the terms herein conflict with any applicable state or federal law, rule, regulation, guidance from an applicable state regulator, or consent order or agreed final judgment with a government agency, these terms shall no longer apply to the extent of such conflict.

E.    Mariner is entering this Consent Judgment solely for the purpose of settlement, and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, regulation, other matter of fact or law, or of any liability or wrongdoing. No part of this Consent Judgment, including its statements and commitments, shall constitute evidence of any liability, fault, or wrongdoing by Mariner.

F.    This Consent Judgment shall not be construed or used as a waiver or limitation of any defense or claim otherwise available to Mariner in any other action, or of their right to defend against, or make any arguments in, any private individual action, class claims or suits, or any other

4

governmental or regulatory action relating to the subject matter or terms of this Consent Judgment, except as specifically provided in Section VII of this Consent Judgment.

**G.**     This Consent Judgment shall not be construed or used as a waiver or limitation of any claim or defense that a Consumer may have against Mariner in any other action, except that Mariner may argue, to the extent permitted by law, that amounts otherwise recoverable in such actions might be set off by amounts remitted to Consumers in connection with this Consent Judgment.

**H.**     This Consent Judgment will expire five (5) years from the date it is entered by the Court.

**I.**     The terms of this Consent Judgment shall apply only with respect to Mariner's operations in Indiana.

**J.**     Unless otherwise indicated, Mariner's obligations under this Consent Judgment shall not begin until the Effective Date.

**K.**     Any notice or other communication required or permitted under this Consent Judgment, shall be in writing and delivered to the following persons or any person subsequently designated by the parties:

Indiana:          Scott Barnhart
                  Chief Counsel and Director of Consumer Protection
                  Office of Attorney General Todd Rokita
                  IGCS 5th Floor
                  302 W. Washington Street
                  Indianapolis, IN 46204

Mariner:          Joshua Johnson
                  CEO
                  Mariner Finance, LLC
                  8110 Corporate Dr
                  Nottingham, MD 21236

5

With a copy to:

John Morton
Chief Legal Officer
Mariner Finance, LLC
8110 Corporate Dr
Nottingham, MD 21236

## III.   CONDUCT PROVISIONS RELATED TO OPTIONAL PRODUCTS

### A.   Limits on Discussing and Underwriting for Optional Products

1.   Unless and until a Consumer has been provided Disclosure A, as provided in Section III(B) below:

a.   Mariner shall not initiate an effort to sell Optional Products to the Consumer.

b.   For the avoidance of doubt, prior to providing Disclosure A:

i.   Mariner *may* discuss different loan amounts and monthly payments with the Consumer that do not include the Optional Products.

ii.   Mariner *may* respond to a Consumer inquiry about Optional Products to inform the Consumer that Optional Products will be discussed after the loan approval is finalized.

iii.   However, Mariner shall not disclose a loan amount or other loan details that factor in the sale or potential sale of Optional Products when discussing loan terms with the Consumer.

2.   Unless and until a Consumer who is Refinancing a loan the Consumer obtained from Mariner has been provided Disclosure B, as provided in Section III(B) below:

a.   Mariner shall not initiate an effort to sell Optional Products to the Consumer.

6

b.      For the avoidance of doubt, prior to providing Disclosure B:

i.      Mariner *may* discuss different loan amounts and monthly payments with the Consumer that do not include the Optional Products.

ii.      Mariner *may* respond to a Consumer inquiry about Optional Products to inform the Consumer that Optional Products will be discussed after the loan approval is finalized.

iii.      However, Mariner shall not disclose a loan amount or other loan details that factor in the sale or potential sale of Optional Products when discussing loan terms with the Consumer.

**B.      Approval Discussion (Disclosures A and B)**

1.      After the necessary Consumer information has been verified and Mariner has determined what loan can be offered to the Consumer, Mariner shall provide the Consumer with (electronically or, if the Consumer is in person and requests it, in hard copy) the Loan Approval Disclosure, which is a written disclosure of the terms of the loan <u>without</u> any Optional Products (the "Approved Loan") using the model form agreed to in Disclosure A.

2.      Mariner shall give the Consumer time to review Disclosure A.

3.      After the Consumer has been provided with Disclosure A:

a.      Mariner shall orally disclose the following key terms listed on Disclosure A:

i.      The loan amount;

ii.      The loan term;

iii.      The monthly payment for the loan; and

iv.      The APR.

b.      Mariner may renegotiate the above key terms with Consumers.

7

4. After orally disclosing the key loan terms, Mariner shall state that the Consumer is approved for these loan terms and may accept these loan terms.

5. *Only after* all the steps above are complete, Mariner may ask the Consumer to acknowledge receipt of the Loan Approval Disclosure by signing Disclosure A (in writing or electronically). The Consumer must acknowledge receipt (in writing or electronically) of Disclosure A before Mariner can proceed with the transaction (i.e., proceed with the discussion about the Optional Products as described in Section III(C)).

6. If the new loan is a Refinance, Mariner shall provide the Consumer with (electronically or, if the Consumer is in person and requests it, in hard copy) the Refinancing Disclosure, which is a written disclosure describing the costs and benefits of Refinancing, using the model form agreed to in Disclosure B.

    a. Mariner shall give the Consumer time to review Disclosure B before asking the Consumer to acknowledge receipt of Disclosure B by signing it (in writing or electronically).

    b. If the new loan is a Refinance, the Consumer shall acknowledge receipt of the Refinancing Disclosure by signing Disclosure B (in writing or electronically) before proceeding with the transaction (i.e., proceed with the discussion about the Optional Products as described in Section III(C)).

**C.    Optional Product Choices Disclosure (Disclosure C)**

1. After completing all steps required in Section III(B), Mariner shall provide the Consumer with (electronically or, if the Consumer is in person and requests it, in hard copy) the Optional Product Choices Disclosure using the model form agreed to in Disclosure C, as modified to reflect the Optional Products available under Indiana law.

2. Mariner shall disclose that additional information about the Optional

Products can be found via hyperlinks viewable either on Mariner devices (i.e., the loan closing table) or on the Consumer's own device.

3.    Upon request, Mariner shall make available to the Consumer blank versions of the certificates for any Optional Product if the Consumer would like to review those documents in hard copy.

4.    Mariner shall give the Consumer time to review Disclosure C and access the hyperlinks (if they so choose) before proceeding with the oral disclosure below.

5.    Mariner shall orally disclose that Optional Products are not required to be purchased to obtain a loan and that the Consumer's decision to purchase (or not to purchase) an Optional Product will not affect the Consumer's ability to qualify for or receive the Approved Loan shown on Disclosure A.  Mariner is not prohibited from disclosing changes in interest rate that would apply under state law depending on a loan's amount financed.

6.    Mariner shall also inform the Consumer that the cost of any Optional Product purchased will be financed as part of the loan.

7.    Mariner shall orally disclose that if the Consumer wishes to decline all Optional Products, they may simply sign the bottom of Disclosure C, indicating that they are declining all Optional Products.

8.    Mariner shall give the Consumer time to review and complete the form (if the Consumer chooses).

9.    Mariner may then ask the Consumer to sign Disclosure C (in writing or electronically).

**D.    Optional Products Pre-Closing Disclosure (Disclosure D)**

1.    If the Consumer indicates an interest in purchasing any Optional Products by completing and signing Disclosure C, Mariner shall verbally quote to the Consumer the

terms of the Approved Loan with the selected Optional Products included. ·

    a.    If the Consumer requests any different terms, e.g., lowering the monthly payment, Mariner may work with the Consumer to arrive at loan terms acceptable to the Consumer.

    2.    Mariner shall not market to any Consumer a lower interest rate as a benefit of purchasing Optional Products. This restriction will not, however, prohibit Mariner from disclosing changes in interest rate that would apply under state law, depending on a loan's amount financed.

    3.    Mariner shall not offer additional cash out to the Consumer for the purpose of incentivizing the purchase of Optional Products. This provision shall not prohibit Mariner from distributing the premium payment in the form of cash to borrower.

    4.    Once the Consumer is comfortable with the loan terms that factor in the purchase of Optional Products, Mariner shall provide the Consumer with the Optional Products Pre-Closing Disclosure (electronically or, if the Consumer is in person and requests it, in hard copy), using the model form agreed to in Disclosure D (including any revised Disclosure D if the Consumer requests different loan terms or Optional Products after receiving Disclosure D).

    5.    After the Consumer has reviewed Disclosure D, if the Consumer expresses an interest in removing any products or adjusting the loan, the Consumer shall execute a new version of Disclosure C reflecting their updated product choices, and Mariner shall provide a new version of Disclosure D corresponding to the Consumer's request.

**E.    Loan Closing**

    1.    After the Consumer receives the finalized Disclosure D, Mariner shall provide a copy (electronically or, if the Consumer is in person and requests it, in hard copy)

of the Consumer's loan Note. If the Consumer has elected to purchase Optional Products, the Consumer will sign Disclosure D before being asked to sign the loan Note or other documents as part of the loan closing.

2.      Mariner shall orally inform the Consumer that they are borrowing additional money to pay for the Optional Products they selected, and explain where in the Note each financed premium is disclosed.

**F.      Optional Products Post-Sale Disclosures (Disclosure E)**

1.      Within three business days of the Optional Products sale, Mariner shall provide the borrower(s) with (electronically, if the Consumer has agreed to receive documents by email, or otherwise a hard copy via mail) the Optional Products Post-Sale Disclosures using the model form agreed to in Disclosure E.

**G.      Sales Process Monitoring / Audit**

1.      <u>Training</u>. Mariner shall enhance and maintain policies and procedures to comply with this Order, including:

a.      Updating training for employees' disclosures of Optional Products to include exemplar talk-off language to guide employees' discussions when:

i.      Offering and completing the sale of Optional Products to Consumers;

ii.      Discussing Optional Products with Consumers during the loan closing; and

iii.      Receiving and responding to Consumers' requests to cancel Optional Products.

b.      Training employees not to use scripts unless those scripts are centrally approved and consistent with the requirements of this Order.

11

2.    _Monitoring._ Mariner shall enhance its monitoring and audit processes to:

a.    Record all telephone calls with Consumers consisting of consumer complaints and cancellation requests using Mariner's centralized Consumer Relations function, which calls will be audited;

b.    Monitor employees' offering and sale of Optional Products to incorporate the enhanced policies and procedures, including auditing call records according to Mariner's standard auditing practices;

c.    Retain all audits of recorded calls in accordance with Mariner's record retention policies and make such audits and recorded calls available to the Indiana Attorney General upon reasonable written request;

d.    Retain all versions of disclosures that Consumers are required to execute for the Optional Product under Section III;

e.    Track and address compliance with this Order;

f.    Ensure appropriate handling of Consumer inquiries or complaints regarding compliance with this Order;

g.    Complete performance reviews for employees that include consideration of whether employee conduct has risked or engaged in noncompliance with this Order; and

h.    For loan closings (including Refinancings) that are not recorded and that involve a sale of Optional Products, on the same schedule Mariner is performing branch audits, conduct a survey of a statistically significant random sample of Consumers who have recently purchased Optional Products to confirm that those Consumers understood: (1) the specific Optional Products that they purchased, (2) whether those Optional Products were financed, (3) the premium costs for the

12

Optional Products, and (4) that they were not required to purchase the Optional Products. Mariner may conduct this survey by phone, online, or in person. Mariner shall document and track the survey results and shall provide a copy of the results to the Indiana Attorney General upon reasonable written request.

3.    Resources.  Mariner shall develop policies and procedures that ensure sufficient personnel and resources are devoted to monitoring Optional Product sales.

## H.    Cancellation / Refunds

1.    All Optional Products offered by Mariner may be canceled at any time.

2.    All Optional Products offered by Mariner after the Effective Date of the settlement ("Effective Date") shall be subject to a 60-Day Full Refund Period during which the Consumer can cancel the Unclaimed Optional Product without cost (meaning Mariner shall refund the premium of the Optional Product(s) plus all interest, if any, attributable to the refunded premium of the Optional Product(s)).

3.    After the 60-Day Full Refund Period, Consumers can cancel Optional Product(s) for a refund (as applicable) of the (a) unearned premium as of the date of the cancellation request or (b) prorated product cost based on the amount of time remaining in the loan term, plus (c) the interest attributable to the amount of the premium of the Optional Product being refunded.

4.    Mariner shall not increase the interest rate of any Consumer's loan due to the cancellation of any Optional Product after origination, nor shall  Mariner suggest to any Consumer that cancellation of an Optional Product will result in an increase of the interest rate after origination.

5.    Any Optional Product cancellation resulting from a determination that the Consumer is ineligible for the product shall be treated as a cancellation made during the 60-

13

Day Full Refund Period, regardless of when in the term it occurs.

6.      If, through monitoring of Optional Products, Mariner determines that the Consumer was unaware or misinformed about the sale of the Optional Products (e.g., unaware they were not required to purchase the Optional Product, or about the approximate expense associated with purchasing the Optional Products, or that Mariner failed to obtain compliance with the Disclosure procedures required by Sections III. A through F above for that Consumer), Mariner shall immediately offer the Consumer the option to cancel and any such cancellation shall be treated as a cancellation made during the 60-Day Full Refund Period, regardless of when in the term it occurs.

7.      Where permitted by law, the refunds described above shall be made through credits to the Consumer's underlying loan with Mariner.

8.      Cancellation Procedure:

a.      Mariner shall implement a centralized cancellation team to receive, respond to, and resolve all Optional Product cancellations;

b.      Mariner shall permit Consumers to contact Mariner in person, by phone, by letter, by email, or through Mariner's website or mobile application, where Consumers access their account information, to inquire about cancelling Optional Products and, through its centralized cancellation team, allow them to submit their request to cancel their Optional Products;

c.      Mariner's referral process to the centralized cancellation team should not cause unreasonable delays to the Consumer being able to submit their request for cancelling the Optional Products;

d.      Mariner shall disclose on Mariner's website how Optional Products may be cancelled (see Section III(I), "Website Disclosures" below);

14

e.      Within three business days of a request to cancel an Optional Product, Mariner shall process the cancellation, issue the refund, and send the Consumer a refund confirmation letter or email. The letter/email shall:

i.      Confirm the cancellation; and

ii.      Provide the amount of the refund, separately identifying the premium(s) of the Optional Product(s) being refunded and the attributable interest being refunded/credited to the Consumer's underlying loan.

f.      The cancellation and refund/credit shall be effective as of the date of the request;

g.      If state law requires Optional Product refunds by check, the letter will explain that, within 60 days of the date of the letter, the Consumer can apply the refund to their loan by contacting Mariner and remitting the check proceeds to Mariner or by taking the refund check to a branch, where branch employees will assist the Consumer with making the request to have the check proceeds applied to their loan; and

h.      All employees who may interact with Consumers concerning cancellations shall receive training on Optional Product cancellation handling.

9.      When a Consumer requests to cancel one or more Optional Products sold after the Effective Date:

a.      Mariner shall refrain from making a "save" offer or otherwise attempting to convince the Consumer not to cancel the Optional Product(s).

i.      However, Mariner *may* educate a Consumer who wishes to cancel one or more Optional Products that the coverage being cancelled will mean the cessation of all benefits the Optional Product provides, and that the

15

Optional Product will no longer be available post-cancellation.

b.      Mariner shall also disclose all Optional Products still active on the Consumer's account.

**I.      Website Disclosures**

1.      Mariner shall provide information on its website about Optional Products on a dedicated page, including:

a.      That the products are optional and that a Consumer's decision to purchase them will not impact the Consumer's chances of approval for a loan from Mariner;

b.      The cancellation policy and methods of cancellation;

c.      That Mariner will receive commission in connection with the sale of Optional Products; and

d.      Relevant product information regarding Optional Products and inform Consumers that Mariner will provide specific cost information related to Optional Products before the Consumer makes the decision to purchase Optional Products.

**IV.    LOAN REFINANCING**

**A.      Collection**

1.      When speaking with a Consumer who is one day or more past due:

a.      Mariner shall attempt to collect a payment before presenting Refinancing as a potential option; and

b.      Whenever Mariner presents Refinancing as a potential option, Mariner shall only do so alongside other delinquency resolution options available to the Consumer (e.g., making a payment, any voluntary repayment plans, deferment,

and other delinquency resolution options required under state law).

2.      Mariner shall update its online and mobile customer account center to:

a.      Prominently display loan payoff balances;

b.      Allow Consumers to automatically receive reminders regarding the date and amount due for periodic payments; and

c.      Include information regarding the Optional Product(s), if any, that Consumers had purchased and information regarding how to cancel.

**B.      Finance Charges**

1.      Mariner shall not charge origination fees on any Refinance between the same products within three months of origination of the loan being refinanced.

**C.      Training**

1.      Mariner shall update its training regarding Refinancing to include exemplar talk-off language for discussing payoff balances with Consumers.

2.      Mariner will update its training regarding Refinancing to include exemplar talk-off language to inform Consumers that the transaction would involve a Refinance of an existing Mariner loan.

3.      Upon reasonable written request, Mariner shall provide the State of Indiana information about the new training program and results of audits.

**V.      MISCELLANEOUS ISSUES**

**A.      Licensing**

1.      Mariner shall track and retain data about which of its employees offer, negotiate, and sell each Optional Product on each loan, and it shall provide that information to the Indiana Attorney General upon reasonable written request.

17

2.      Mariner will continue to comply with all applicable Indiana licensing laws with respect to the sale of Optional Products.

## B.      Time Stamp

1.      Mariner shall ensure that all disclosure forms and loan closing documents signed electronically (including Optional Product applications) are stamped with the date and time that the Consumer signs or initials each form.

2.      In the event that any documents listed in this provision are signed by the Consumer with a wet signature, the date need only be recorded once, provided everything is signed on the same day.

## C.      E-Signature

1.      Mariner shall comply with applicable federal and state law regarding e-signatures, including but not limited to 15 U.S.C. § 7001(c)(1)(C)(ii), which requires that "if a statute, regulation, or other rule of law requires that information relating to a transaction or transactions in or affecting interstate or foreign commerce be provided or made available to a consumer in writing, the use of an electronic record to provide or make available (whichever is required) such information satisfies the requirement that such information be in writing if, among other things," Mariner obtains Consumer consent to receive such documents electronically, and it does so "in a manner that reasonably demonstrates that the Consumer can access information in the electronic form that will be used to provide the information that is the subject of the consent."

## D.      Settlement Compliance

1.      Mariner shall update policies to enhance safeguards to employees who report probable breaches of any term of this Consent Judgment or compliance with Mariner's

18

policies. The employee-protection policies shall:

    a.    Protect against any retaliatory actions; and

    b.    Provide a reporting mechanism or hotline for anonymous disclosure.

**E.    Employee Performance / Compensation**

1.    Mariner shall develop performance management and sales goals for its employees that are reasonably designed not to conflict with the requirements of this Order.

2.    Mariner shall not:

    a.    Compensate employees (including executives and managers) based on the number (or dollar value) of Optional Products sold by the employee; and

    b.    To the extent that Mariner bases incentive compensation on loan size, the premium or purchase price of any Optional Product financed as part of a loan shall be deducted from the loan size for the purpose of determining the loan size metric for employee compensation purposes.

**F.    References**

1.    Mariner shall cease taking references from borrowers in their loan applications.

2.    For any loans where Mariner obtained references prior to the Effective Date, Mariner shall not contact those references for any purpose, and Mariner shall not suggest or imply in any way that it will contact those references for any purpose.

**VI.    CONSUMER REDRESS**

**A.**    Mariner shall pay consumer redress in the amount of eleven million, one hundred thousand Dollars ($11,100,000.00) in favor of the Indiana Attorney General. This payment of eleven million, one hundred thousand Dollars ($11,100,000.00) includes one million Dollars ($1,000,000.00) payment in cash to the Indiana Attorney General that will be paid to Consumers

19

pursuant to distribution effectuated by Mariner according to a redress plan agreed to between Mariner and the Indiana Attorney General; as well as ten million, one hundred thousand Dollars ($10,100,000.00) that will be in the form of cancellation of Covered Consumer Debt. Such cash payments to Indiana Consumers must be made within 30 days of an agreement between Mariner and Indiana regarding the appropriate distribution.

**B.** For cancellation of Covered Consumer Debt identified in Section VI(A), Mariner will cease collection of the Covered Consumer Debt as follows:

1. Mariner, its officers, agents, employees, attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently enjoined from attempting to collect, collecting, or assigning any right to collect all Covered Consumer Debt. Where any action involves the conduct of a third party, Mariner shall have discharged this obligation by making the appropriate request to the third party.

2. Within 30 business days after the entry of this Order, Mariner shall cease collecting on all Covered Consumer Debt. Where any action involves the conduct of a third party, Mariner shall have discharged this obligation by making the appropriate request to the third party.

3. If the cancellation of any Covered Consumer Debt results in certain Consumer accounts having no outstanding balance and Mariner previously reported a balance for those accounts to a Consumer Reporting Agency, Mariner shall, within 30 business days of entry of this Order, request that each Consumer Reporting Agency delete the outstanding balance from the Consumer's credit reporting file. For those Consumer accounts that will result in no outstanding balance and that have any delinquency or negative credit history on the account, Mariner shall request that each Consumer Reporting Agency

20

delete the tradeline in its entirety. For those Consumer accounts that maintain an outstanding balance after Mariner cancels any Covered Consumer Debt, Mariner shall request that each Consumer Reporting Agency modify the Consumer's credit report file to reflect the new outstanding balance following Mariner's cancellation of the Covered Consumer Debt. Mariner shall have discharged this obligation by making the appropriate request to the relevant Consumer Reporting Agency within the applicable time period.

4.      If the cancellation of any Covered Consumer Debt results in certain Consumer accounts having no outstanding balance and Mariner has recorded, or caused to be recorded, a Uniform Commercial Code fixture filing or financing statements for any secured property for that account, Mariner shall cause to be filed, within 30 business days of entry of this Order, a termination statement with the register's office where each fixture filing or financing statements is recorded. Mariner shall have satisfied this obligation by making the request to the appropriate authority. To the extent that Mariner is informed that any additional action is necessary to effectuate the termination of all such fixture filings, including but not limited to additional information requested by the agency with which the termination statement has been filed, Mariner will take such additional action as necessary and as soon as practicable, but within 14 business days of learning that additional action is necessary. Within 30 business days of filing these termination statements, Mariner shall provide the Indiana Attorney General with a list of all Consumers for whom it has filed fixture filing and financing termination statements.

5.      To the extent Mariner receives any payments for Covered Consumer Debt after the effective date of this Order, Mariner shall, within 30 days of receipt, refund any such payments.

6.      Mariner shall, within 60 business days after entry of this Order, provide a

signed declaration to the State attesting that it has ceased collecting on all Covered Consumer Debt as required by this Section VI(B).

**C.** For the avoidance of doubt, the monetary payment to the State pursuant to Section VI(A) does not include costs incurred or expenditures made by Mariner to effectuate any remedial relief the State, in its sole discretion, instructs Mariner to transmit to Consumers.

**D.** For the avoidance of doubt, the monetary payment to the State pursuant to this Section does not include costs incurred or expenditures made by Mariner to come into compliance with the requirements of Sections I-V.

## VII.   RELEASE AND DISMISSAL

**A.** **Covered Conduct Subject to Release.** Indiana Attorney General acknowledges that upon Mariner's full payment of the amounts due under Section VI, the State of Indiana shall discharge and release Mariner from all civil claims, causes of action, damages, costs, attorneys' fees, or penalties that Indiana  brought or could have brought pursuant to Consumer Protection Law relating to Mariner, its parents, subsidiaries, affiliates, successors, or assigns, prior to the Effective Date, regarding Mariner 1) providing or offering loans, 2) servicing its loans, 3) providing or offering credit insurance and other ancillary products, and 4) assisting Consumers with filing claims against their credit insurance and other ancillary products. Except as provided in Section II.G, this consent judgment does not release or have an effect on any private right of action or claims brought by litigants other than the State of Indiana against Defendant, including but not limited to, any claims or potential claims asserted on behalf of other plaintiffs, such as consumers, class members, putative class members, and political subdivisions.

**B.** **Dismissal with Prejudice.** Indiana Attorney General dismisses the claims with prejudice, subject to this Court retaining jurisdiction over disputes regarding the parties' compliance with this Consent Judgment.

22

## VIII.  COSTS AND EXPENSES

A.      In addition to the payment described in Section VI above, Mariner shall pay one hundred fifty thousand Dollars ($150,000.00) to Indiana reflecting attorneys' fees and costs associated with this matter.

B.      Other than the expenses identified in Sections VIII(A), the parties will bear their own costs and attorneys' fees.

SO ORDERED

Date: August 7, 2026                                 /s/ Hon. Kelley B. Hodge

                                                     Hon. Kelley B. Hodge
                                                     United States District Judge

**JOINTLY APPROVED, AGREED TO, AND SUBMITTED FOR ENTRY:**

Date: 7-28-2026                           By: **STATE OF INDIANA**

Scott L. Barnhart
Chief Counsel and Director of Consumer
Protection
Office of Attorney General Todd Rokita
IGCS 5th Floor
302 W. Washington Street
Indianapolis, IN 46204
Scott.Barnhart@atg.in.gov

Date: 7/28/26                             By: **MARINER FINANCE, LLC**

Joshua Johnson
Chief Executive Officer

Date: 7/27/2026                           By: **KIRKLAND & ELLIS LLP**

Lisa Madigan
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2374
lisa.madigan@kirkland.com

Christopher B. Leach (admitted *pro hac vice*)
1301 Pennsylvania Ave, NW
Washington, DC 20004
(202) 389-3457
christopher.leach@kirkland.com

Atif Khawaja, P.C. (admitted *pro hac vice*)
Robert W. Allen, P.C. (admitted *pro hac vice*)
Alexia R. Brancato, P.C. (admitted *pro hac vice*)

24

601 Lexington Ave
New York, NY 10016
(212) 446-4800
akhawaja@kirkland.com
bob.allen@kirkland.com
alexia.brancato@kirkland.com


**HUDSON COOK, LLP**

Lucy E. Morris (admitted *pro hac vice*)
A. James Chareq (admitted *pro hac vice*)
Julia K. Whitelock (admitted *pro hac vice*)
Robert D. Tilley (admitted *pro hac vice*)
1909 K Street, NW, 4th Floor
Washington, DC 20006
202.327.9710 / 202.327.9711
lmorris@hudco.com
jchareq@hudco.com
jwhitelock@hudco.com
rtilley@hudco.com

*Attorneys for Defendant Mariner Finance, LLC*

25