**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Commonwealth of Pennsylvania, *et al.*, | Hon. Kelley B. Hodge |
| Plaintiffs, | Case No. 2:22-cv-3253-KBH |
| v. | (Electronically Filed) |
| Mariner Finance, LLC, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS**

## I. INTRODUCTION

Mariner is a subprime installment lender with more than 500 branches in 28 states.[1] Attorneys General in 11 of those states sued Mariner for multiple violations of state and federal consumer protection laws. Among other things, Plaintiffs[2] allege that Mariner employees pack expensive insurance products and membership clubs (Add-Ons) onto the high-interest loans of unsuspecting, financially vulnerable consumers. *See generally* Second Amended Complaint, Dkt. 86. Plaintiffs' discovery propounded in the case has been proportional to the complexity and public importance of the claims, the company's size and resources, and the number of impacted consumers. Fed. R. Civ. P. 26(b)(1). Based on loan data Mariner produced, Plaintiffs estimate that Mariner has sold over [redacted] loans and nearly [redacted] in Add-Ons in Plaintiffs' states during the relevant period. Further, the most recent financial statements produced for Mariner's parent company indicate revenue exceeding [redacted] from its installment lending business in 2024, and Mariner is the "primary operating entity" of the parent company. Ex. 1. Mariner is owned by private equity funds and represented by the largest law firm in the world.[3] Dkt. 89 at ¶ 3. Mariner acknowledged in its Initial Disclosures that "the scope of potential discovery is enormous" and that "both sides anticipate seeking significant discovery." Dkt. 83 at 7-8.

As discovery nears its close, the parties continue to confer on a number of discovery disputes. However, following written responses, a videoconference conferral, and follow-up written communication, there are two matters on which the parties have reached a definitive impasse. First, Mariner refuses to produce saved "payment calculators" from consumer loan files. Mariner employees use these calculators to lull consumers into believing that Add-Ons are free,

---

[1] See Mariner Finance Branch Locator, Mariner Finance, https://locations.marinerfinance.com/ (last visited Nov. 19, 2026).

[2] For purposes of this Motion, "Plaintiffs" refers to Pennsylvania, Washington, Oregon, Wisconsin, North Carolina, New Jersey, and New York. Three of the original Plaintiffs, Tennessee, Indiana, and Washington, D.C., have settled their claims with Mariner, and Plaintiff Illinois is not joining in this Motion.

[3] Roy Strom, Kirkland & Ellis Revenue Surges to $8.8 Billion as Profits Soar, Bloomberg Law (March 17, 2025), https://news.bloomberglaw.com/business-and-practice/kirkland-ellis-revenue-surges-to-8-8-billion-as-profits-soar.

inexpensive, or obligatory. They accomplish this by quoting monthly payments that include the cost of Add-Ons that borrowers do not know about and have not requested. Second, Mariner refuses to provide contact information for former employees who sold Add-Ons in Plaintiffs' states. These employees have critical knowledge about Plaintiffs' claims and could be witnesses for trial.

Dozens of depositions are scheduled or anticipated in the next five months, including of yet-to-be-identified individuals. Mariner's refusal to produce saved payment calculators and provide former employee contact information prejudices Plaintiffs in their ability to gather information, identify witnesses, question deponents, and otherwise prosecute this case.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure permit "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). The Rules also give the Court enforcement power to ensure parties' cooperation in the discovery process, by allowing a party to move for an order compelling production of documents. Fed. R. Civ. P. 37(a)(3)(B). In a recent meet and confer, follow up emails, and the below argument, Plaintiffs have demonstrated the relevancy of these requests, shifting the burden to Mariner to demonstrate why the Court should not compel the discovery. *See Corrigan v. Methodist Hosp*., 158 F.R.D. 54, 57 (E.D. Pa. 1994).

## III. ARGUMENT

### A. The Court Should Compel Mariner to Produce Saved Payment Calculators.

Employees use Mariner's electronic "payment calculator" tool to generate a monthly loan payment packed with Add-Ons. Either without mentioning Add-Ons at all or, at best, with a passing reference to them, Mariner employees quote the payment packed with Add-Ons to unsuspecting borrowers when telling them their loan has been approved. Employees save the payment calculators in "[redacted]," a system where Mariner stores loan documents. The importance of the payment calculators to Mariner's packing scheme cannot be overstated. Mariner widely disseminates, and often mandates the use of, a profit projection tool called the "[redacted]," that states: "[redacted]

[redacted]" Ex. 2, Row 35, Col. M. *See also* Ex. 3 (directing branch manager to "[redacted]"). Some Mariner employees have testified that [redacted]. Ex. 4 at 103:6-104:5; Ex. 5 at 117:4-118:4, 292:21-295:10. The veracity of this testimony and the pervasiveness of the purported practice of creating multiple payment calculators is therefore highly relevant to Plaintiffs' claims.

In RFPs 204 and 208, respectively, Plaintiffs requested saved "payment calculators" for the 67 consumers Plaintiffs identified as potential trial witnesses and created by 187 specific Mariner employees. Plaintiffs' RFP 215 is a "catch all" request for saved payment calculators from all consumer loan files in the Plaintiffs' states, which Plaintiffs have always been willing to confer on as discovery unfolds. Ex. 6 at 5; Ex. 7 at 8; Ex. 8 at 9. After a conferral and ongoing written communications, however, Mariner refuses to produce saved calculators except in a narrow, hypothetical situation. Mariner's counsel wrote:

> The saved loan calculators are not relevant because they do not accurately reflect what was presented to customers. As we have explained, practices for saving calculators are inconsistent. The calculators may also change during the conversation with a customer, which is an interactive process, so the only saved version may be the final one. Whatever was saved therefore cannot show what was presented to a customer. For these reasons, and ***as we stated during last week's meet and confer, Mariner will not produce payment calculators [in response to RFP 204] for the remaining ~58 Plaintiff consumer witnesses***.[4] We are willing to consider a narrower request if Plaintiffs can show that the requested calculators are relevant, for example a request tied to an employee's testimony that the employee saved those particular calculators.

Ex. 9 (emphasis added); *see also* Ex. 10 at 8; Ex. 11 at 7-8.

[4] Plaintiffs provided a preliminary list of 67 consumer witnesses, but several have since requested not to be called after interacting with Mariner's counsel and process servers. Others have ceased responding to Plaintiffs.

Mariner's refusal to produce saved payment calculators is not actually based on relevance, as its counsel asserted above, but instead on Mariner's contention that the evidence is unreliable. However, the reliability of documentary evidence, or its admissibility at trial, has no bearing on whether that evidence is relevant and discoverable. Fed. R. Civ. P. 26(b); *see also Buechler v. Jones*, No. 4:24-CV-04155-RAL, 2025 WL 2256894, at *3 (D.S.D. Aug. 7, 2025) (compelling discovery over objection that request "will not yield anything profitable"); *Faynik v. Magical Cruises Co.*, *Ltd.* No. 6:17-cv-1282-Orl-37TBS, 2018 WL 7360661, at *9 (M.D. Fla. May 2, 2018) (similar). Further, this court should not allow Mariner to frustrate discovery based on its purportedly inconsistent practice of saving evidence of Add-On packing. *See Briddell v. Saint Gobain Abrasives, Inc.*, 233 F.R.D. 57, 61 (D. Mass. 2005) ("Courts have been loathe to reward . . . poor record keeping by shielding companies with inefficient recording methods from discovery."); *All. to End Repression v. Rochford*, 75 F.R.D. 441, 447 (N.D. Ill. 1977) ("To allow a defendant whose business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of discovery rules.").

Mariner can challenge the reliability and probative value of payment calculators if Plaintiffs decide to use them as trial evidence at the appropriate time. However, Mariner cannot simply refuse to produce them in discovery. Accordingly, Plaintiffs request that the Court compel Mariner to produce all documents responsive to RFP 204 and 208 and to confer in good faith regarding additional productions responsive to RFP 215.

**B. The Court Should Compel Mariner to Provide Former Employee Contact Information.**

Plaintiffs' Interrogatory No. 3, served on February 28, 2025, asks Mariner to identify, including by name, last known address, email, and telephone number, employees who offered or sold Add-Ons in Plaintiffs' states. Ex. 12 at 5. Through conferrals, Plaintiffs have agreed to limit the request for contact information to former employees. Following an October 28, 2026, meet and confer and subsequent written communications, Mariner's definitive position is: "***Mariner will not provide*** personal addresses, phone numbers, or email addresses for all employees or for all former employees who worked in any of the Plaintiff States [except] [i]f Plaintiffs need this information

to verify the licensure of specific employees . . . ." Ex. 9 (emphasis added).

Plaintiffs are entitled to information "reasonably calculated to lead to the discovery of admissible evidence." *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996). Such evidence includes contact information for former employees. *Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-CV-101, 2018 WL 3824367, at *3-4 (M.D. Pa. Aug. 10, 2018). Former Mariner employees who sold Add-Ons in the Plaintiffs' states, by the very nature of their work, have information that is likely to "lead to the discovery of admissible evidence," and may be potential witnesses for depositions or trial. The Court should compel Mariner to provide their contact information.

In refusing to provide former employee contact information, Mariner's counsel went on to take the untenable position that, "[i]f Plaintiffs wish to contact a former employee, please reach out to Kirkland first. We currently represent, or expect to represent, the vast majority of former employees who become involved in this litigation." Ex. 9. However, "the notion that all corporate employees are represented by corporate counsel and can be contacted solely through that counsel has been soundly rejected." *Solomon v. E. Penn Mfg. Co.*, No. CV 16-6484, 2018 WL 1740530, at *4 (E.D. Pa. Apr. 11, 2018); *see also Antares Pharma, Inc. v. Gordon Silver Ltd.*, No. CV 24-634-GBW, 2026 WL 3015619, at *5 (D. Del. Oct. 7, 2026) ("[T]he Court will not tolerate a party prohibiting its opponent from reaching out to third-party witnesses and former employees, and that the Court will not automatically assume that former employees are represented by Plaintiff's counsel.").[5] Notably, at least one former Mariner employee appeared for her deposition unrepresented. Ex. 13 at 9:5-7. Plaintiffs respectfully ask the Court to compel the requested former employee contact information.

---

[5] Further, the ethical rules in every relevant jurisdiction confirm Plaintiffs may reach out to former employees without Mariner's prior consent. A.B.A. Model Rules of Pro. Conduct r. 4.2 cmt. 7; Pa. Rules of Pro. Conduct r. 4.2 cmt. 7; N.J. Court Rule 1.14 (incorporating ABA Model Rules); N.Y. Rule of Pro. Conduct r. 4.2 cmt. 7; N.C. Rules of Pro. Conduct r. 4.2 cmt. 9; Oregon State Bar Formal Ethics Opinion No. 2005-80; Wash. Rules of Pro. Conduct r. 4.2 cmt. 7; Wisconsin Rules of Pro. Conduct r. 4.2 cmt. 7; *State Farm Mut. Auto. Ins. Co. v. Sanders*, 975 F.Supp.2d 509, 511 (E.D. Pa. 2013).

Dated: November 20, 2026

Respectfully submitted,

**FOR THE COMMONWEALTH OF PENNSYLVANIA:**

DAVID W. SUNDAY, JR.
Attorney General

*/s/ Heather Kelly*
HEATHER Z. KELLY (PA No. 86291)
Senior Deputy Attorney General
KATHLEEN M. MACFEETERS (PA No. 334030)
MARY MULVIHILL (PA No. 332268)
KEVIN BENDESKY (PA No. 333946)
Deputy Attorneys General

Attorneys for Plaintiff Commonwealth of Pennsylvania
Office of Attorney General
1600 Arch St, 3rd Floor
Philadelphia, PA 19103
(412) 880-0475
hkelly@attorneygeneral.gov
kmacfeeters@attorneygeneral.gov
mmulvihill@attorneygeneral.gov
kbendesky@attorneygeneral.gov

**FOR THE STATE OF NEW JERSEY:**

JENNIFER DAVENPORT
Attorney General of New Jersey

*/s/ Mia Dohrmann*
ZEYAD ASSAF, NJ 290002021
TINA TABOADA, NJ 401602022
MIA DOHRMANN, NJ 408142022
MORGAN BEIRNE, NJ 305322020
CONOR VANCE, NJ 487902024
Deputy Attorneys General

Attorneys for Plaintiff State of New Jersey
New Jersey Office of the Attorney General
Division of Law
Consumer Fraud Prosecution Section

124 Halsey Street, Fifth Floor
Newark, NJ 07102
(862) 381-4150
zeyad.assaf@law.njoag.gov
cathleen.o_donnell@law.njoag.gov
tina.taboada@law.njoag.gov
Mia.dohrmann@law.njoag.gov
Morgan.Beirne@law.njoag.gov
Conor.Vance@law.njoag.gov

**FOR THE STATE OF NEW YORK:**

LETITIA JAMES
Attorney General

*/s/ Ben Fishman*
BENJAMIN C. FISHMAN, NY 4489373
PATRICK GIBSON, NY 5267489
NORA VAN HORN, NY 6272629
Assistant Attorneys General

Attorney for Plaintiff State of New York
Bureau of Consumer Frauds & Protection
28 Liberty Street, 20th Floor
New York, NY 10005
(212) 416-6593

**FOR THE STATE OF NORTH CAROLINA:**

JEFF JACKSON
Attorney General

*/s/ M. Lynne Weaver*
M. LYNNE WEAVER, NC 19397
Special Deputy Attorney General

Attorney for Plaintiff State of North Carolina
North Carolina Department of Justice
114 W. Edenton Street
Raleigh, NC 27603
(919) 716-6039
lweaver@ncdoj.gov

**FOR THE STATE OF OREGON:**

DAN RAYFIELD
Attorney General

*/s/ Shannon Suehr*
JOSEPH FERRETTI, OSB #201944
BRIAN E. BOWCUT, OSB #261748
Senior Assistant Attorneys General
SHANNON SUEHR, OSB #201406
Assistant Attorney General

Attorneys for Plaintiff State of Oregon
Oregon Department of Justice
Civil Enforcement Division
Economic Justice Section
100 SW Market St., Fifth Floor
Portland, OR 97201
(971) 718-6066
joseph.ferretti@doj.oregon.gov
brian.bowcut@doj.oregon.gov
shannon.suehr@doj.oregon.gov

**FOR THE STATE OF WASHINGTON:**

NICHOLAS W. BROWN
Attorney General

*/s/ Madeline Davis Rigsby*
HEIDI C. ANDERSON, WSBA #37603
MATTHEW GEYMAN, WSBA #17544
MADELINE DAVIS RIGSBY, WSBA #51261
LOGAN STARR, WSBA #55944
ASHLEY GOMEZ, WSBA #52093
ROSE STERN, WSBA #54282
CAMILLE MCDORMAN, WSBA # 53036
Assistant Attorneys General

Attorneys for Plaintiff State of Washington
Office of Attorney General, Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
heidi.anderson@atg.wa.gov
matt.geyman@atg.wa.gov

maddie.davisrigsby@atg.wa.gov
logan.starr@atg.wa.gov
ashley.gomez@atg.wa.gov
rose.stern@atg.wa.gov
camille.mcdorman@atg.wa.gov

**FOR THE STATE OF WISCONSIN:**

JOSHUA L. KAUL
Attorney General

*/s/ Frances L. Kern*
FRANCES L. KERN (WI Bar #1141100)
EVAN D. STECK (WI Bar #1131666)
Assistant Attorneys General

Attorney for Plaintiff State of Wisconsin
Wisconsin Department of Justice
17 W. Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0764
Frances.Kern@wisdoj.gov
Evan.Steck@wisdoj.gov