# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF )
PENNSYLVANIA, et al ) Case No.:
Plaintiffs ) 2:22-cv-03253-KBH
)
vs. )
)
MARINER FINANCE, LLC, )
Defendant)

VIDEOTAPED DEPOSITION OF ERIC FOSS

Taken remotely via Zoom on Thursday, August 7, 2025, commencing at 10:00 a.m., by Leandra M. Stoudt, RPR, CBC, CCP, CRR, CCR-NJ, Notary Public and Alex Hatoff, Videographer.

APPEARANCES:

OFFICE OF ATTORNEY GENERAL COMMONWEALTH OF PENNSYLVANIA
By: Heather Zinc Kelly, Esq.
By: Kathleen MacFeeters, Esq.
By: Kevin Bendesky, Esq.
By: Lauren Oleckna, Esq.
Strawberry Square 14th Floor
Harrisburg, PA 17120
(717) 678-4613
hkelly@attorneygeneral.gov
-- for the Plaintiff Office of the Attorney General Commonwealth of Pennsylvania

Page 2

APPEARANCES (continued):

OFFICE OF ATTORNEY GENERAL COMMONWEALTH OF PENNSYLVANIA
By: Nicholas F.B. Smyth, Esq.
Bureau of Consumer Protection
1251 Waterfront Place, Mezzanine
Pittsburgh, PA 15222
(412) 260-8342
nsmyth@attorneygeneral.gov
-- for the Plaintiff Office of the Attorney General Commonwealth of Pennsylvania

STATE OF NEW JERSEY, OFFICE OF THE ATTORNEY GENERAL
By: Zeyad Assaf, Esq.
-- for the Plaintiff State of New Jersey, Office of the Attorney General

Page 3

APPEARANCES (continued):
NEW YORK BUREAU OF CONSUMER FRAUDS & PROTECTION
By: Benjamin Fishman, Esq.
By: Patrick Gibson, Esq.
By: Taiyee Chien, Esq.
601 Lexington Avenue
New York, NY 10016
(212) 416-8300
benjamin.fishman@ag.ny.gov
-- for the Plaintiff New York Bureau of Consumer Frauds & Protection

STATE OF TENNESSEE OFFICE OF ATTORNEY GENERAL
By: Alicia Daniels-Hill
P.O. Box 20207
Nashville, TN 37202
(615) 741-3491
-- for the Plaintiff State of Tennessee Office of Attorney General

OFFICE OF THE INDIANA ATTORNEY GENERAL
By: Steven Taterka, Esq.
302 West Washington Street
IGCS, 5th Floor
Indianapolis, IN 46204
(317) 232-6201
mary.powell@atg.in.gov
-- for the Plaintiff Office of the Indiana Attorney General

STATE OF WASHINGTON OFFICE OF ATTORNEY GENERAL
By: Aaron Fickes, Esq. and
Ashley Gomez, Esq.
800 Fifth Avenue
Suite 2000
Seattle, WA 98104
(206) 464-7744
aaron.fickes@atg.wa.gov
askley.gomez@atg.wa.gov
claire.hipps@atg.wa.gov
maddie.davisrigsby@atw.wa.gov
-- for the Plaintiff Office of the Attorney General State of Washington

Page 4

APPEARANCES (continued):
OFFICE OF THE ILLINOIS ATTORNEY GENERAL
By: Melissa Piwowar, Esq.
115 South LaSalle STreet
Chicago, IL 60603
melissa.piwowar@ilag.gov
alexandra.golota@ilag.gov
armeen.siddiquiMirza@ilag.gov
-- For the Plaintiff Office of the Illinois Attorney General

KIRKLAND & ELLIS LLP
By: Matthew Summers, Esq
and Tai Chien, Esq.
2049 Century Park East
Suite 7700
Los Angeles, CA 90067
(310) 552-4200
matthew.summers@kirkland.com
tai.chien@kirkland.com
-- for the Defendant

Page 5

INDEX TO WITNESSES


| WITNESS | PAGE |
|---|---|
| ERIC FOSS | |
| By Mr. Fishman | 8 |
| By Ms. Kelly | 201 |

Page 114

Q. Well, you just said he's telling his -- his staff to dis- -- to discuss payment arrangements before they come in for a closing. When would that discussion have happened?

MR. SUMMERS: Same objection. Go ahead.

A. [redacted]

[redacted]

MR. SUMMERS: Objection. Foundation. Speculation. Go ahead.

[redacted]

MR. SUMMERS: Objection. Vague. Foundation. Speculation.

[redacted]

Page 116

[redacted]

Page 117

[redacted]

MR. SUMMERS: Objection. Vague. Foundation.

[redacted]

Page 118

those quotes?
[redacted]
Q. Okay. All right. Let's move on to the -- the next exhibit that's been previously marked MARINER00929479.
(Exhibit 91 was marked.)
A. 91?
Q. Yeah, it's now marked as Exhibit 91.
A. Okay.
Q. And do you see that if you scroll down to the second page, it's an email from Brian Levis to you dated August 31st, 2020?
A. Yes, uh-huh.
[redacted]

Page 119

[redacted]

Page 120

[redacted]

Page 121

[redacted]

Page 290

A. Whether it be a BOR, a mini-BOR, an audit, you know, to make sure that -- make sure that employees were offering all eligible insurance products all the time was the focus of one of those three.
Q. Right. But I'm drawing a distinction between offering the product and disclosing the difference in costs between having the product and not having the product.
A. Hm, okay, I see. So, I see it as one in the same. Because I don't know how you could offer something and not disclose what the payment impact would be.
Q. Okay. So -- so if I understand your testimony correctly, you're saying that in offering the product, it was expected that the -- that the employee would say -- would say this is the premium for the product, and this is the impact the product would have on the monthly payment?
A. Yes. Because with the exception of, as I recall, disability insurance, all of the products were a la carte.
Q. What was that exception for disability insurance?

Page 291

A. I believe if you selected disability in the state of New York, because of some way the law is written, you had to also select life insurance.
Q. Okay.
A. So that was the only one that must be coupled with another insurance product. So, for example, you couldn't select disability only.
Q. Okay. And did you -- did you, yourself, take steps to make sure that when employees were offering the products in the booth, they disclosed the difference in costs between having a loan with the product or without the product. Did you --
A. Yeah.
Q. What steps did you take?
A. I mean, I would sit in on loan sales, listen to how -- how the employee was presenting the loan, would sit in on solicitation efforts, would sit in on an entire loan closing. You know, it was quite awkward, to be honest with you, at times.
Q. Why was it awkward?
A. Have you been to the doctor's office before and had somebody else come in for your --

Page 292

you know, it's just -- it's just awkwardness. It seems like you're sitting in on a private conversation. But, you know, it was part of the job.
Q. Okay.
A. Hi, don't mind me. I'm just going to sit in the corner.
Q. Yeah.
A. That's -- that's awkward.
Q. That requirement -- sorry, I cut you off there.
That requirement that we had been talking about that you said you had asked your employees to explain the difference in the monthly payment with or without add-on products, did you put that requirement in writing?
A. I might have. Again, it would have been in an email.
Q. Do you remember a particular time where you told your direct reports --
A. I remember telling -- you know, I remember telling, like, if you don't have the individual payment calculators for all the scenarios, it makes it difficult for you to justify to me that you went through all of the

Page 293

insurance products and what their costs would be to the customer.
Q. Are you saying that different payment calculator -- that for each loan there would have to be multiple payment calculator -- I don't know what you call it. Payment calculator results?
A. Quotes. I would typically call them payment quotes.
Q. All the way from no add-ons and then with each add-on --
(Overlapping speakers)
[redacted]

Page 294

[redacted]

Page 295

[redacted]

Sorry, did you freeze, Ben?

THE VIDEOGRAPHER: Let me take us off the video record. Time is now 5:39 p.m. We're going off the video record.

(Discussion held off the record.)

MR. FISHMAN: Sorry about that. Did everyone else stay on the Zoom while I was sort of kicked off? That's awkward.

THE VIDEOGRAPHER: Sorry, that happens sometimes.

(Discussion held off the record.)

MR. FISHMAN: Let's jump back on.

THE VIDEOGRAPHER: All right, there we go. Okay. Standby.

Time is now 5:41 p.m. We're back on

Page 296

the video record.

BY MR. FISHMAN:

[redacted]

MR. SUMMERS: Objection. Foundation.

[redacted]

Page 297

[redacted]

A. Knowing, I guess, that -- that -- at

[redacted]

Q. Okay. All right. I'm just going to

I don't know which iteration this was. So I -- if you're asking me if I was shooting high when I said 11 -- is that what you're asking?

Q. I just asked would you --

A. I lost you. I'm sorry.

Q. I asked if something was noted on an audit when this was in place, that it had been disclosed as optional. It certainly was not one out of ten times that they failed to state it, correct?

MR. SUMMERS: Same objections. Foundation. Speculation. Document speaks for itself.

[redacted]

MR. SUMMERS: How much time do we have on the record?

MS. KELLY: I am done, Matt. I was



just about to say.

MR. SUMMERS: -- I should have given you the opportunity, Ms. Kelly.

MS. KELLY: That's okay. I have no further questions because I have no further time. Thank you, Mr. Foss.

MR. FISHMAN: Thanks Mr. Foss.

THE VIDEOGRAPHER: Time is now 6:16 p.m. and we've completed the videotaped deposition of Eric Foss. Thank you very much.

MS. KELLY: Are you -- you're not asking anything, Matt?

MR. SUMMERS: No. No thank you. I have no questions for this witness.

MR. SUMMERS: We did the -- go off the record. We'll take the 30 days per the rules on signing and all that.

(Concluded 6:17 p.m.)



CERTIFICATE

I do hereby certify that the aforesaid testimony was taken before me, pursuant to notice, at the time and place indicated; that said deponent was by me duly sworn to tell the truth, the whole truth, and nothing but the truth; that the testimony of said deponent was correctly recorded in machine shorthand by me and thereafter transcribed under my supervision with computer-aided transcription; that the deposition is a true and correct record of the testimony given by the witness; and that I am neither of counsel nor kin to any party in said action, nor interested in the outcome thereof.

Leandra Stoudt, RPR, CRR
CBC, CCP, CCR, Notary Public



INSTRUCTIONS TO WITNESS

Please read your deposition over carefully and make any necessary corrections. You should state the reason in the appropriate space on the errata sheet for any corrections that are made.

After doing so, please sign the errata sheet and date it.

You are signing same subject to the changes you have noted on the errata sheet, which will be attached to your deposition.

It is imperative that you return the original errata sheet to the deposing attorney within thirty (30) days of receipt of the deposition transcript by you. If you fail to do so, the deposition transcript may be deemed to be accurate and may be used in court.