# EXHIBIT 8

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

COMM. OF PENNSYLVANIA, *et al.*,
Plaintiffs,

Case No. 2:22-cv-03253-KBH
Hon. Kelley Brisbon Hodge

v.

MARINER FINANCE, LLC,

Defendant.

**PLAINTIFFS' EIGHTEENTH SET OF REQUESTS FOR PRODUCTION TO MARINER FINANCE, LLC**

A. **YOU ARE HEREBY REQUESTED,** pursuant to Fed. R. Civ. P. 34 and in accordance with the Order entered on February 21, 2024 (ECF No. 69), to deliver to the Plaintiff States through the Pennsylvania Office of Attorney General, 1600 Arch Street, 3rd Floor, Philadelphia, Pennsylvania 19103, on or before November 13, 2026, the documents and information requested in Section D, below, in accordance with the definitions set forth in Section B and instructions set forth in Section C.

**B. DEFINITIONS**

For purposes of this Eighteenth Set of Requests for Production (Requests), unless otherwise indicated or defined in these Requests, the following terms shall have these meanings:[1]

1. "Add-on Products" means every insurance or other product that You offer or sell to Consumers in connection with Your loans, including the credit insurance products and "non-credit" or "ancillary" products described in Paragraph 30 of the Second Amended Complaint (ECF No. 86).

2. "Add-on Product Negotiations" means any discussions, whether written, electronic, or oral, between Mariner and any Add-on Provider concerning the terms, pricing, commissions, structure, offering, sale, and provision of Add-on Products.

3. "Add-on Product Performance Materials" means any Documents, including reports, analyses, and reviews, that assess the sales performance, consumer response, profitability, and impact of Add-on Products.

[1] These definitions do not seek the impose requirements or obligations on Mariner in addition to or different from those imposed by the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the Eastern District of Pennsylvania, orders in this case, or agreements between the parties.

4. “Add-on Providers” means any insurance company or other entity that provides, or has sought or discussed with Mariner the opportunity to provide, Add-on Products to Mariner’s customers.

5. “Add-on Sales Presentations” means any Documents, including slide decks, proposals, or other materials, presented by any Add-on Provider to Mariner for the purpose of promoting or selling or inducing Mariner to sell Add-on Products.

6. “And” and “Or” shall each be deemed to include and encompass the words “and” and “or.”

7. “Approval Call” refers to pre-closing communication with consumers, as described in the Mariner Loan Closing Policy, e.g., Exhibit 209 in the Deposition of Rodney Mangus on January 7, 2026.

8. “Board Materials” means all minutes, slide decks, presentations, notes, and other documents provided to or created for Mariner’s Board of Directors that relate to Add-on Products, loan refinancing practices, Consumer Complaints, regulatory compliance, or sales practices and targets for loans or Add-on Products.

9. “Collections” means Communications with Consumers whose accounts have one or more payments that are one day or more past due related to their past due payment

10. “Communication(s)” shall have the broadest definition and scope and shall include any oral or written utterances, notation, or statement of any nature, by and to whomever made, including correspondence, e-mails, conversations, discussions, interviews, consultations, agreements, oral discussions, or other understandings between or among two or more persons and shall include every disclosure, transfer, exchange, or transmission of information, whether oral, written, or electronic, by telephone, smart phone / computer (including SMS, chat apps, social media, virtual meeting platforms (e.g., Zoom), or other messenger apps), email, fax, or otherwise.

11. “Complaint” includes, without limitation, any Communication indicating dissatisfaction with Your conduct, products, or services or any demand, claim, legal action, arbitration, mediation, or lawsuit. The term “Complaint” expressly includes any Communication that a Consumer loan transaction involved conduct alleged to be improper in the Second Amended Complaint. In addition to Communications made directly to You, the term “Complaint” includes Communications made to any of the following: (a) Law enforcement or other government agencies, including, but not limited to, attorneys general, the Consumer Financial Protection Bureau, the Federal Trade Commission, and any insurance, banking or other governmental regulatory body; (b) Add-On Providers; and (c) Any other third-party, such as the Better Business Bureau.

12. “Consumer” means all person(s), individually or jointly, to whom Mariner markets or advertises any product or service, from whom Mariner solicits business, or to whom Mariner has sold any product or service.

13. "Corrective Action Reports" are Documents completed by Mariner branches that list audit categories noted and specific actions required as a result of findings or exceptions contained in branch credit and compliance audits.

14. "Custodians" means all persons whom the parties agreed upon as custodians for the production of electronically stored information. The agreed-upon list of Custodians is attached hereto as Attachment "1."

15. "Customer File" means all documents that refer, relate, or pertain to a Consumer, including all loan documents, Add-On Product information, call recordings, Communications with and about the Consumer. Customer File includes, but is not limited to, all of the documents identified in the APPLICATION_DOC Table (e.g., MARINER00121066) for a specific consumer.

16. "Data Dictionary" means the document produced by Mariner at MARINER00121471.

17. "Data Responses" means the documents produced by Mariner in response to Plaintiffs' First Set of Requests for Production of Documents from Mariner Finance, LLC (also referred to as "Plaintiffs' RFP 1" as set forth below), dated February 26, 2024, which documents are Bates numbered MARINER000000000353 to MARINER000000000397.

18. "Data Template" means the template served on Mariner by Plaintiffs on February 26, 2024, with Plaintiffs' First Set of Requests for Production from Mariner Finance, LLC (also referred to as "Plaintiffs' RFP 1" as set forth below), which Data Template was marked as Exhibit "5" at the deposition of Glenn Daughaday taken on January 30, 2025.

19. "Document" or "documents" shall be broadly interpreted as used in Fed. R. Civ. P. 34(a) and means all computer files and written, recorded, and graphic materials of every kind, including all Communications, audio material, video material, and photographic material regardless of whether in digital, analog or another form, and "tangible things" as used in Fed. R. Civ. P. 34(a)(1)(B) in the possession, custody, or control of Mariner. Documents include electronic correspondence and drafts of documents, copies of documents that are not identical duplicates of the originals, and copies of documents the originals of which are not in the possession, custody, or control of Mariner.

20. "Electronic System" shall mean any computer system, including for example any software, database, or online platform, used by Mariner during the Relevant Time Period that holds data referring, relating, or pertaining to borrower accounts, Mariner employees, Mariner employee compensation, vendors, or Add-on Products.

21. "Employee Deponents" means any current or former Mariner employees that Plaintiffs have served or serve at any time in during the course of this litigation with a subpoena or notice of deposition.

22. "FIMC" means Financial Insurance Management Corporation, and any of its principals, present or former trustees, beneficiaries, owners, employees, servants, officers, directors, agents, representatives, attorneys, accountants, independent contractors, distributors, and any other

persons or entities acting on behalf of or under the direction, authorization or control of FIMC or any of its principals.

23. “Focus Team” means the Mariner initiative to provide onsite support for branches identified as subpar performers, including similar performance-related initiatives that use any title other than “Focus Team.”

24. “Fortegra” means Fortegra Financial Corporation (formerly known as Life of the South Insurance Company), and any of its principals, present or former trustees, beneficiaries, owners, employees, servants, officers, directors, agents, representatives, attorneys, accountants, independent contractors, distributors, and any other persons or entities acting on behalf of or under the direction, authorization or control of Fortegra or any of its principals.

25. “Including” means “including without limitation” and “includes” means “includes without limitation.”

26. “Insurance Product” means every Add-on Product or component of an Add-on Product that is an insurance product.

27. “LBM” means “Loan by Mail,” a loan obtained through a Live Check.

28. “Leads” means Consumers whose names and/or contact information are provided by a third party to Mariner for Mariner to disseminate or cause to be disseminated Marketing Materials and/or sell products.

29. “Live Checks” means checks that Mariner mails to Consumers that, if endorsed and deposited, create a loan transaction.

30. “Mariner,” “You,” or “Your” means Mariner Finance, LLC, and any trustor, trustee, beneficiary, parent, affiliate, sister, subsidiary, predecessor (including Regency Finance), successor, assignee of it, and its principals, present or former trustors, trustees, beneficiaries, owners, employees, servants, officers, directors, agents, representatives, attorneys, accountants, independent contractors, distributors, and any other persons or entities acting on behalf of or under the direction, authorization or control of Mariner or any of its principals.

31. “Mariner’s Add-on Training Materials” means any Documents outlining strategies, timelines, or processes, or training materials, scripts, talking points, or talk offs for introducing and selling Add-on Products.

32. “Marketing Activity” means any action undertaken by Mariner or any third-party to promote, sell or distribute Mariner’s loans and/or Add-on Products, including the development of marketing strategies, the identification and solicitation of new customers, the creation and dissemination of Marketing Materials, and the communication of information relating to Mariner’s products to Consumers, including by physical mail, electronic mail, telephone, text message, facsimile, search engine optimization, print advertising, or any other means.

33. “Marketing Materials” means any marketing or advertising materials created by Mariner or any third-party for Mariner to market or advertise any of Mariner’s goods or services to Consumers, including print, electronic, audio, video, electronic mail, text message, social media, or other media, regardless of whether such materials were actually disseminated to Consumers. Marketing Materials shall include Live Checks and LBM materials.

34. “Mystery Shopper Program” means the program for which Mariner hired a vendor to contact branches, as testified to by Brent Nau during his January 29, 2026, deposition (Tr. at pp. 269:18-299:20).

35. “Payment Calculator” means the tool that Mariner employees use during the lending process to input loan variables, such as cash advance, Add-On Product costs, and loan term, in order to calculate a monthly payment amount, as referenced in Mariner’s Loan Closing Policy. One version of this Policy can be found at MARINER00010689. *See also*, Deposition of Brian Levis at 111:6-21.

36. “Personal Property Contents Coverage Type Data” is data identifying whether a particular personal property contents insurance policy has single interest coverage or dual interest coverage.

37. “Personnel File” means all documents that refer, relate or pertain to an employee’s:

a. Hiring, including, but not limited to, application materials, resumes and offers of employment;
b. Positions held while employed at Mariner and the dates that such positions have been held;
c. Compensation, including, but not limited to, incentive compensation related to sales of Mariner loan products and Add-on Products (e.g., ACE);
d. Employment agreements, including, but not limited to, contracts of employment, non-disclosure/confidentiality agreements, and non-competition agreements;
e. Acknowledgments of Mariner policies/procedures, including employee handbook acknowledgments;
f. Insurance licensing;
g. Performance evaluations;
h. Mandatory and voluntary individual performance improvement/coaching plans related to sales of Mariner loan products and Add-on Products;
i. Mandatory and voluntary branch or business unit performance improvement/coaching plans related to sales of Mariner loan products and Add-on Products during periods when the employee had managerial or supervisory responsibilities for that branch or business unit (e.g., Focus Branch, 3 Steps to Superstar);
j. Disciplinary records;
k. Recognition or awards;
l. Recognition of any branch or business unit during a period when the employee had managerial or supervisory duties for that branch or business unit;
m. Training records related to selling Mariner loan products or Add-on Products;
n. Separation records; and
o. Unemployment compensation records.

"Personnel File" does not mean any protected health information, benefits records (including, but not limited to vacation, family medical leave, or workers compensation records), general pay or tax records, information regarding immigration status, or other similar personal information unrelated to this action. For purposes of your response to these Requests, "Discipline" means any reduction in compensation, managerial or supervisory responsibilities, imposition of performance improvement/coaching plans, formal notations in personal files, and other negative or adverse actions.

38. "Plaintiffs' RFP 1" means Plaintiffs' First Set of Requests for Production of Documents from Mariner Finance, LLC, dated February 26, 2024.

39. "Policies and Procedures" means all unique versions of written policies, procedures, manuals, training materials (including training videos), scripts, talking points, guidelines or directives.

40. "Post-Close Loan Verification Calls" means the calls Mariner completes after loan closing, as referenced in MARINER01952475.

41. "Regulatory Filings" means all reports and other filings provided to or created for state and federal banking, finance, and securities regulators, in addition to regulatory associations such as the National Association of Insurance Commissioners, that relate to loans, Add-on Products, Consumer lending, sales finance company activity, and/or regulatory compliance.

42. "Relating to" or "Related to" means constituting, containing, concerning, discussing, describing, analyzing, identifying, referring to, or stating.

43. "Requests" means these Requests for Production of Documents and others served by the Plaintiffs on Mariner.

44. "Second Amended Complaint" means the Second Amended Complaint for Permanent Injunction and Other Relief filed on April 1, 2024 (Doc. 86).

45. "Securitization" means the pooling of groups of loans and repackaging them into asset-backed securities to be sold to investors.

46. "Table" means all of the following from the Data Dictionary: every "Table" identified in Column A of the "Tables w Key Fields" tab; every "TableName" identified in Column G of the "Master Table List" tab; and every "TableName" identified in Column B of the "GPS Field Descriptions" tab.

47. "Target Consumers" means individual Consumers, groups, populations, communities, regions, credit profiles, or demographics identified or sought to be identified by Mariner for the purpose of soliciting purchases of Mariner products.

48. "Third-Party Add-on Training Materials" means any Documents, including guides, manuals, videos, session recordings, and other instructional materials, provided to Mariner relating to the selling, presenting, and management of Add-on Products.

49. "TILA" means the Truth in Lending Act, 15 U.S.C. §1601 *et seq.*

50. "Upselling" means Mariner's practice of making loans to consumers where the final loan amount exceeds the original loan amount requested by consumers. For purposes of these Requests, "Upselling" may occur as a result of Mariner making a larger loan than originally requested as a result of additional cash to the borrower and/or the sale of Add-on Products.

## C. INSTRUCTIONS

For purposes of these Requests, unless otherwise indicated, your responses shall comply with the following instructions:[2]

1. The singular includes the plural and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by change of tense. "Include" and "including," and variations thereof, shall not be interpreted as terms of limitation but shall be deemed to be followed by the words "without limitation." "Any" shall be construed as synonymous with "every" and "all" and shall be all inclusive."

2. Unless otherwise noted, the Relevant Time Period for which Documents and information are requested is January 1, 2018, to the present.

3. These Requests apply to all described Documents in your possession, custody, or control without regard to the person or persons by whom or for whom the Documents were prepared (e.g., your employees, distributors, representatives, competitors, or others).

4. These Requests include Documents in possession of your employees, agents, representatives, and attorneys, unless privileged. If any Document or information is withheld under claim of privilege, identify the Document or information and state the basis for the privilege, and provide a detailed privilege log that contains at least the following information for each Document or information that you have withheld:

   a. The name of each author, writer, sender, creator, or initiator of such Document;
   b. The name of each recipient, addressee, or party for whom such Document was intended or to whom the Document was sent;
   c. The date of such Document, or an estimate thereof if no date appears on the Document;
   d. The name of each person having knowledge on which the privilege is asserted;
   e. The general subject matter of the Document or information; and
   f. The claimed grounds for withholding the Document or information, including the nature of any claimed privilege and grounds in support thereof.

[2] These instructions do not seek to impose requirements or obligations on Mariner in addition to or different from those imposed by the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the Eastern District of Pennsylvania, orders in this case, or agreements between the parties.

5. These Requests impose a continuing duty on you to produce promptly any responsive Document that is not objected to, which comes into your knowledge, possession, custody, or control after your initial production of responses to the Requests.

6. In each instance in which a Document is produced in response to a Request, produce the current edition, along with all earlier editions or predecessor Documents serving the same function, even though the title of earlier Documents may differ from current versions.

7. If you are unable to fully answer any particular Request, supply all of whatever information is actually available. Designate such incomplete information as incomplete and accompany the information with an explanation that includes the reasons for the incomplete answer; a description of any efforts to obtain the information; and the source from which Plaintiffs may obtain information to complete your response. If books, records, or other sources that provide accurate answers are not available, provide your best estimates and describe how you derived the estimates, including the sources or bases of such estimates. Designate estimated data as such by marking it with the "est." notation. If there is no reasonable way for you to make an estimate, provide an explanation.

8. If particular Documents responsive to these Requests no longer exist for reasons other than the ordinary course of business, but you have reason to believe they have been in existence, describe the Documents, state the circumstances under which such Documents were lost or destroyed, and identify persons having knowledge of the content of the Documents.

9. The Requests apply to all geographic locations where Mariner Consumers reside or do business with Mariner.

10. For each of the Policies and Procedures produced in response to any Request, indicate the following: (1) the time period in which it was in use; (2) when it changed during the time period it was in use; and (3) every State in which it was in effect at any time.

11. Mariner should produce the Customer Files and Tables responsive to these Requests in a manner that readily identifies the Consumer related to those files. For example, Mariner may create a new field in its load files to identify the Consumer related to each Customer File and Table produced in response to these Requests. Alternatively, Mariner may collect and produce separate production volumes for each Consumer identified in Attachment A. Each Table produced in response to these Requests must be produced in Excel spreadsheet format and contain only a single Table for only a single Consumer.

## D. DOCUMENT REQUESTS

213. All Documents not already produced that are responsive to each of Plaintiffs' Requests for Production of Documents for which Mariner has produced non-custodial documents,

including, but not limited to, all Branch Office Reviews and Credit and Compliance Audits completed within the Relevant Time Period for branches located in any of the Plaintiff States.[3]

214. An updated Appendix A to Mariner's 7/31/2025 Supplemental Responses to Plaintiff's First Set of Interrogatories. The updated Appendix A should contain employee numbers for every Mariner employee employed during the Relevant Time Period (January 1, 2018, through the present).[4]

215. All Customer Files for all Consumers from each of the Plaintiff States, including, but not limited to, all Payment Calculators.

216. All Personal Property Contents Coverage Type Data for all loans originated during the Relevant Time Period.[5]

217. Documents sufficient to identify the business reasons for, and benefits to Mariner from, including premiums for Add-on Products in loan principal.

218. The Personnel File for every branch employee of Mariner who worked in the Plaintiff States during the Relevant Time Period, including, but not limited to, the employees identified in the attached Exhibit A.

219. All Corrective Action Reports for branches in the Plaintiff States from the Relevant Time Period. If not apparent on the face of the Documents responsive to this Request, also produce Documents or information sufficient to identify the date, title, subject matter, scope, and persons or entities that prepared such Corrective Action Reports.

220. All Regulatory Filings or other reports submitted to state or federal government agencies stating loss ratios for any Insurance Product.

221. Documents sufficient to show results of all Post-Close Loan Verification Calls, including number of calls made, response rates, and issues identified. For issues identified, produce Documents sufficient to show the associated branch, account number, issue, issue category, date of the verification call, and resolution comments.

---

[3] By propounding this RFP, Plaintiffs are not waiving their position that Mariner is under a continuing duty to supplement prior productions pursuant to Fed. R. Civ. P. 26(e), as well as based on the express Instructions set forth in the Requests for Production.

[4] By propounding this RFP, Plaintiffs are not waiving their position that Mariner is under a continuing duty to supplement its prior response to Interrogatory No. 3 and all other Interrogatories pursuant to Fed. R. Civ. P. 26(e), as well as based on the express Instructions set forth in the Interrogatories.

[5] By propounding this RFP, Plaintiffs are not waiving their position that Mariner is under a continuing duty to supplement its responses to prior Requests for Production, including Plaintiffs' RFPs 1 and 140, which the parties narrowed and tailored during the meet and confer process for data sampling and analysis based upon the agreement that Mariner would produce further responsive data upon request of Plaintiffs.

Date: October 14, 2026

**FOR THE STATE OF WASHINGTON, on behalf of all Plaintiffs**

NICHOLAS W. BROWN,
Attorney General

*/s/ Madeline Davis Rigsby*
HEIDI C. ANDERSON, WSBA #37603
MATTHEW GEYMAN, WSBA #17544
MADELINE DAVIS RIGSBY, WSBA #51261
LOGAN STARR, WSBA #55944
ASHLEY GOMEZ, WSBA #52093
ROSE STERN, WSBA #54282
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
heidi.anderson@atg.wa.gov
matt.geyman@atg.wa.gov
maddie.davisrigsby@atg.wa.gov
logan.starr@atg.wa.gov
ashley.gomez@atg.wa.gov
rose.stern@atg.wa.gov
Attorneys for Plaintiff State of Washington
Office of Attorney General, Consumer Protection Division